


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.______-Civ
**09-CIV-14314-MARTINEZ/LYNCH**

DUBAI WORLD CORPORATION, and its subsidiaries, EXOMOS, NAKHEEL and PALM MARINE

Plaintiffs,

vs.

HERVE JAUBERT, SEAHORSE SUBMARINES INTERNATIONAL INCORPORATED, and Does 1-99

Defendants.

## COMPLAINT

Plaintiffs Dubai World Corporation and its subsidiaries, Exemos, Nakheel, and Palm Marine, by and through their counsel, hereby file this Complaint for breach of contract, fraud, breach of fiduciary duty, conversion, and conspiracy to commit fraud, and sue Defendants, and in support thereof aver as follows:

## NATURE OF THE ACTION

1. This Complaint is based on a sinister plan that was orchestrated and carried out by Defendant Hervé Jaubert through, among others, the company he and his wife dominated and personally controlled, Defendant Seahorse Submarine International Incorporated ("Seahorse").

2. Seahorse is a Florida-based company owned and operated by Defendant Jaubert. Defendant Jaubert is a resident of the State of Florida.

3. Through most of the timeframe relevant to this Complaint, Defendant Jaubert was the Chief Executive Officer of Exomos, a company created for the purpose of manufacturing and

selling submarines and submersibles for recreational use. As such, Jaubert had fiduciary obligations to Exomos, which he breached and flaunted.

4. As set forth below, Defendants made material misrepresentations to Plaintiffs and, as a result, obtained valuable contracts with Plaintiffs, received funds from Plaintiffs for products that they knew that they could not deliver; overcharged Plaintiffs for goods and services through Seahorse, often marking up prices by over 100%; and charged Plaintiffs for improper personal expenses. As a result of these wrongful acts, Plaintiffs have lost tens of millions of dollars.

5. Plaintiffs conducted an internal audit that disclosed losses caused by Defendant Jaubert in excess of US $1.35 million, sustained as a result of Defendants' actions as alleged herein. When confronted with the audit, Defendant Jaubert admitted the wrongdoing and agreed to return the misappropriated funds. After Defendant Jaubert signed a document admitting the fraud, criminal charges were brought against him by the Emirate of Dubai for these wrongful acts.

6. Rather than make good on his promises of repayment, however, Defendant Jaubert chose to leave Dubai and came to the State of Florida.

7. Defendant Jaubert has made no effort to settle his outstanding debts, or otherwise to make Plaintiffs whole.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy is between citizens of a State and citizens or subjects of a foreign state and the amount in controversy exceeds the sum or value of $75,000.

9. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district. As set forth more fully below, much of the fraudulent scheme that forms the basis for this Complaint occurred within the State of Florida, and within this district.

## PARTIES

10. Plaintiff Dubai World Corporation and its subsidiaries are organized and operated under the laws of the Emirate of Dubai and those of the United Arab Emirates. Dubai World Corporation is located in Dubai, UAE. Dubai World Corporation's primary place of business is in the United Arab Emirates.

11. Plaintiff Exomos is organized and operated under the laws of the Emirate of Dubai and those of the United Arab Emirates. Exomos is located in the Dubai Port and Free Zone, Dubai, UAE. Exomos's primary place of business is in the United Arab Emirates.

12. Plaintiff Palm Marine is a corporation organized and operated under the laws of the Emirate of Dubai and those of the United Arab Emirates. Palm Marine is located in Dubai, UAE. Palm Marine's principal place of business is in the United Arab Emirates.

13. Plaintiff Nakheel is a corporation organized and operated under the laws of the Emirate of Dubai and those of the United Arab Emirates. Nakheel is located in Dubai, UAE. Nakheel's principal place of business is in the United Arab Emirates.

14. Upon information and belief, Defendant Jaubert is a domiciliary of Florida for the purposes of diversity jurisdiction, though he is also a citizen of France. On information and belief, Defendant Jaubert currently lives at 1832 NE Crabtree Lane, Jensen Beach, FL 34597.

15. Upon information and belief, Seahorse Submarines International Incorporated is a Florida corporation whose principal place of business is 2856 SE Monroe Street, Stuart, FL 34997 and whose registered agent is Hervé Jaubert, a Florida resident, whose listed address with the Florida Department of State, Division of Corporations, is 1832 NE Crabtree Lane, Jensen Beach, FL 34597. Seahorse operates, conducts, engages in, and carries on a business or business venture in the State of Florida.

16. Upon information and belief, Seahorse is an alter ego of Defendant Hervé Jaubert, who, along with his wife, wholly controls and dominates all activities of Seahorse, so that it has

no mind, will, or existence of its own. Jaubert used and uses Seahorse for improper purposes as a vehicle to carry out the massive embezzlement scheme described herein.

17. Does 1-99 are yet unknown co-conspirators with Defendants in their fraudulent scheme described herein.

## FACTUAL BACKGROUND

18. On information and belief, Defendant Jaubert and his wife are the founders and owners of Seahorse. Seahorse is a company that purports to develop submarines for recreational and other uses.

19. Sultan Ahmed Bin Sulayem, the Chairman of Dubai World Corporation, and his colleague Jim Miller, first met with Jaubert at his plant in Stuart, Florida, on or about December 2003. At that time, Jaubert made the following statements that he knew, or should have known, were false:

a) Jaubert claimed that he had designed submarines that were ready for production;

b) Jaubert claimed that the vessels he made met coast guard specifications, and that some were sold to the United States armed services;

c) Jaubert claimed that he had already sold some submarines to satisfied customers;

d) Jaubert claimed that the vessels he made were safe and were ready to be sold for recreational use; and

20. Jaubert claimed to be a naval engineer who was an expert in submarine design.

21. Reasonably relying on these misrepresentations by Defendant Jaubert, Plaintiff Dubai World Corporation Chairman, Sultan Ahmed Bin Sulayem, and Defendant Jaubert decided, in December 2003, to form a new company, Plaintiff Exomos, which would be a subsidiary of Plaintiff Dubai World Corporation for the purpose of the design, manufacture, and

sale of luxury recreational submarines. Defendant Jaubert would move to Dubai to be the CEO of this new company.

22. Based upon Defendant Jaubert's misrepresentations, set forth in paragraph 19 *supra*, Plaintiffs Dubai World, Exomos, and Palm Marine relied on Defendant Jaubert to innovate and produce leading luxury submarines for Plaintiffs to purchase.

23. Instead, Defendant Jaubert, through a pattern of repeated fraudulent acts, drove Plaintiff Exomos to incur a cumulative operating deficit in the amount of 65,418,000 AED (United Arab Emirates dirham) and capital expenditures in the amount of 51,247,000 AED, a total of 116,665,000 AED (over US $31 million).

24. Defendant Jaubert's first employment contract with Plaintiff Exomos was dated November 20, 2004. Under the terms of the November 20, 2004 contract, Defendant Jaubert became the CEO of Plaintiff Exomos.

25. Defendant Jaubert entered into a subsequent employment contract as CEO of Plaintiff Exomos on July 1, 2005. This contract was for a term of five years.

26. By signing his employment contract, Defendant Jaubert agreed to abide by company policies and to act in the company's best interests. As the CEO of Plaintiff Exomos, Defendant Jaubert also had a fiduciary duty, separate and apart from his contractual obligations, to Plaintiff Exomos, and was responsible for the company's financial and strategic business decisions.

27. The listed principal activities of Plaintiff Exomos, as declared in its 2007 financial statements, were to operate and sell boats, as well as to provide post-sale services. Under Defendant Jaubert's custody, these activities never were realized.

28. Rather than performing his fiduciary duties to Plaintiff Exomos as its CEO, Defendant Jaubert siphoned money from Plaintiffs Exomos, Palm Marine, and Dubai World. The principal vehicle that Defendant Jaubert used to steal money from Plaintiffs Exomos, Palm Marine, and Dubai World Corporation was Defendant Seahorse, the Florida company Defendant Jaubert and his wife owned.

## UNAUTHORIZED AND HIDDEN SURCHARGES

29. Up through early 2006, Defendant Jaubert wrongfully caused Plaintiff Exomos to purchase from Seahorse materials that were not necessary to produce functioning submarines amounting to 11,867,770.60 AED (over US $3 million). Furthermore, in violation of Exomos's company policy, Defendant Jaubert caused all purchases from Seahorse to be paid in advance.

30. Defendants Jaubert and Seahorse secretly added an undisclosed mark-up of ten percent on all purchased materials. These mark-ups were not listed as a separate line item; rather, they were concealed, quietly padding the final purchase prices even though Defendant Jaubert owed Plaintiff Exomos a duty of loyalty as the company's CEO.

31. During an audit organized by Plaintiff Dubai World Corporation and its subsidiaries, it became evident that Defendant Seahorse, acting upon the instruction of Defendant Jaubert, charged Plaintiff Exomos as much as 135% more than Defendant Seahorse paid its vendors for the materials. Defendant Jaubert committed fraud and breached his fiduciary duties to plaintiff Exomos by engineering these fraudulently padded purchases.

32. The internal audit also revealed Defendant Jaubert's overt non-compliance with the policies of Plaintiff Exomos, all of which was known to its CEO, Defendant Jaubert. For example, the designated "Submarine test pilot" was not certified to operate submarines, and the employee hired as a "Commercial submarine pilot" only had experience operating boats, and was unable to produce any relevant certificates or licenses. Defendant Jaubert caused all of these material violations of Plaintiff Exomos' policies.

33. Another internal audit carried out by Dubai World Corporation revealed additional fraud in Defendant Jaubert's purchases on behalf of Plaintiff Exomos from Defendant Seahorse.

34. The internal audit organized by Dubai World Corporation revealed some irregularities regarding Plaintiffs' purchases from Seahorse. As a result, Plaintiff Exomos was

instructed by the Exomos Purchasing Controller to disclose the ten percent charges, and Plaintiff Exomos was instructed to stop all purchasing from Seahorse. Defendant Jaubert claimed that the practice had ended. At least six transactions, however, amounting to 387,294.64 AED (approximately US $100,000), were found to have been placed by Plaintiff Exomos with Defendant Seahorse, following the auditors' instructions, up through February 2006. As with the earlier purchases from Seahorse, these invoices contained unauthorized and concealed mark-ups.

**SEAHORSE'S SALES TO EXOMOS OF UNUSABLE AND ALREADY SOLD SUBMARINES**

35. During the course of their relationship with Defendants Jaubert and Seahorse, Plaintiffs Nakheel and Palm Marine ordered three submarines from Seahorse. With respect to each order, Plaintiffs made a substantial down payment and Defendants Jaubert and Seahorse made assurances that the submarines were ready, or nearly ready, for use. That was not true.

36. On February 17, 2004, Plaintiff Nakheel, a subsidiary of Dubai World Corporation, entered into a written agreement with Defendant Seahorse to purchase the vessel model 2004 Goby Submarine. Defendant Jaubert signed the contract on behalf of Seahorse. The contract stated that the vessel "shall be constructed by [Seahorse] in a first class fashion using highest grade materials" and enumerated the myriad features the submarine was required to possess. Fifty percent of the purchase price of 214,268 AED (approximately US $57 thousand) was paid to Seahorse. Although the submarine's appearance made it seem complete, further inspection by outside consultants eventually revealed that the vessel was unsafe, poorly engineered, and not functional. The problems with the vessel were never corrected, nor has the deposit been returned.

37. The first time the 2004 Goby Submarine was deployed, it caught on fire and was damaged.

38. On June 12, 2004, Plaintiff Palm Marine entered into a written agreement with Seahorse to purchase the vessel model Stingray Duo Submarine. Again, the contract was signed

by Defendant Jaubert on behalf of Seahorse. The contract stated that the vessel "shall be constructed by [Seahorse] in a first class fashion using highest grade materials" and enumerated the myriad features the submarine was required to possess. Fifty percent of the purchase price or 277,611 AED (approximately US $73 thousand) was paid in advance. Although the submarine's appearance made it seem complete, further inspection by outside consultants eventually revealed that the vessel was unsafe, poorly engineered, and not functional. The problems with the vessel were never corrected, nor has the deposit been returned.

39. Also on June 12 2004, Plaintiff Palm Marine entered into a written agreement with Defendant Seahorse, again signed by Defendant Jaubert, to purchase the vessel model Discovery Submarine. Under the terms of the contract the purchase price was to be paid in three installments. The first payment for 1,545,622 AED (approximately US $410 thousand) was paid in advance. Although the submarine's appearance made it seem complete, further inspection by outside consultants eventually revealed that the vessel was unsafe, poorly engineered, and not functional. The problems with the vessel were never corrected, nor has the deposit been returned.

40. In May 2007, Defendant Jaubert, as CEO of Defendant Seahorse, admitted that after lengthy delays he had decided to abandon construction of the Discovery and Stingray submarines. He admitted that the submarines were "not functional" and nonetheless refused to refund the advances paid to him.

41. Defendant Jaubert also sold a submarine, model Discovery, to Plaintiff Palm Marine even though it had already been sold to a third party. As a result, neither Plaintiff Palm Marine, nor the third party, received the vessel in functioning order, though both thought they had purchased it.

42. Concerned about the safety, integrity, and construction of the submarines, Plaintiffs hired outside submarine experts who confirmed the serious problems: "[V]arious basic design details do not conform to the rules of certification [organizations]"; flawed design resulted in "two hydrogen explosions in the battery compartment" within six months; a ballast adjustment

pump frequently failed "because it is not seawater resistant"; "the amount of airflow for the diver is not sufficient to keep him alive for ... more than 18 minutes"; the employed electrical equipment was "not made for under water use (no longitudinal water tight cables, no underwater switches, connectors ..." Bert de Wijs and Lorenz Kruger, *Exomos Submersible Product Report*, March 22, 2007.

43. A second report, also created by a third-party submarine expert, similarly addressed serious and dangerous problems in the submarines such as: The use of corrosive-parts; the potential for explosions as a result of the integrated electrical circuitry; and a general lack of technical support and documentation for the submersibles. Daniel Isbérie, *Fiabilisation et Amelioration des Produits Exomos* (*Increasing Reliability and Improvement of Exomos Products*), April 23, 2007.

44. As a result of the wrongful acts committed by Defendants Jaubert and Seahorse, alleged above, Plaintiffs instituted an audit that was not completed until 2007. At that time, Jaubert was presented with the report and its findings that he had been misappropriating Exomos funds and overcharging for purchases. Jaubert was given an opportunity to explain each of the charges.

45. Jaubert admitted many of the facts and findings, and signed a document to that effect on May 20, 2007. In that document Jaubert agreed to repay certain obligations including his personal legal fees and vehicle expenses amounting to 110,252 AED (approximately US $30 thousand). Jaubert recognized that he owed more and agreed to pay a certain amount of what he had embezzled, submitting a check for 140,011 AED (approximately US $38 thousand) as a partial payment.

46. Moreover, the agreed-upon outstanding amount from Seahorse was 2,206,560 AED (over US $600 thousand), and the challenged amount owed by Seahorse was 2,751,210 AED (approximately US $750 thousand).

47. The total amount addressed of unaccounted for funds in this audit exceeded US $1.38 million, or about 5,000,000 AED.

48. Negotiations ensued and in 2008, Defendant Jaubert, with his counsel from Al-Matrooshi Law Firm, agreed with Plaintiffs' internal audit group, represented by the Galadari Law Firm to pay 3,000,000 AED (approximately US $817 thousand), reducing the amount that Defendant Jaubert was to pay Plaintiffs by forty percent. Both parties prepared and agreed to this compromise, but following these talks, on March 8, 2008, Defendant Jaubert disappeared and clearly had decided not to satisfy his obligations.

49. Due in part to the issues highlighted above, indicating severe mismanagement and fraud on the part of Plaintiff Exomos's CEO, Hervé Jaubert, a criminal action was filed against him in February 2008 at the local Jabel Ali Police Station.

50. As required in the United Arab Emirates in such circumstances, an independent audit of Exomos was ordered by the court. The conclusions of that audit support Plaintiffs' internal findings.

51. For the entire duration of Defendant Jaubert's tenure as CEO of Exomos, and despite Plaintiffs' numerous significant expenditures discussed above, Defendant Jaubert did not generate one penny of revenue for Exomos.

52. All conditions precedent for the filing of the claims sued upon have been met or have been excused or waived.

**COUNT I**

**(Breach of Contract)**
**(Against Defendants Jaubert and Seahorse)**

53. Paragraphs 1 through 52 are incorporated by reference as if fully set forth herein.

54. As described above, Defendant Jaubert breached his contractual obligations.

55. At all times, Plaintiffs have honored their contractual obligations.

56. As a result of Defendants' breaches of contract, Plaintiffs have been damaged in an amount to be proven at trial.

57. Plaintiffs seek recovery for their attorneys' fees and costs incurred in bringing the instant action.

WHEREFORE, Plaintiffs pray for judgment as follows:

A. For compensatory damages in the amount according to proof, to be determined at trial, to compensate for the wrongful conduct committed by Defendants up to the present time;

B. For attorneys' fees and costs;

C. For prejudgment interest at the legal rate; and

D. For such other and further relief as the Court deems just and proper.

**COUNT II**

**(Fraudulent Inducement)**
**(Against Defendants Jaubert and Seahorse)**

58. Paragraphs 1 through 52 are incorporated by reference as if fully set forth herein.

59. Jaubert made numerous false misrepresentations on his behalf and on behalf of Seahorse as its agent, as identified above including, but not limited to, describing himself as a highly qualified naval engineer with a deep knowledge of submarine design, that submarines he had manufactured had been sea tested and in some cases approved for use by the United States Coast Guard, that his submarines were safe and commercially usable, and that he sold some submarines to satisfied owners.

60. The representations were material and false. When submerged, the submarines became intolerably hot and prone to water leaks and fires among other serious problems.

61. Defendants knew that their representations were false.

62. Jaubert made these representations in order to induce reliance thereon by Plaintiffs.

63. Plaintiffs reasonably did rely on the correctness and truth of Jaubert's representations, to their detriment.

64. As a result of Defendants' fraudulent misrepresentations, Plaintiffs have been damaged in an amount to be proven at trial.

65. Plaintiffs seek recovery for their attorneys' fees and costs incurred in bringing the instant action.

WHEREFORE, Plaintiffs pray for judgment as follows:

A. For compensatory damages in the amount according to proof, to be determined at trial, to compensate for the wrongful conduct committed by Defendants up to the present time;

B. For punitive damages to be proven at trial

C. For prejudgment interest at the legal rate; and

D. For such other and further relief as the Court deems just and proper.

**COUNT III**

**(Negligent Misrepresentation)**
**(Against Defendants Jaubert and Seahorse)**

66. Paragraphs 1 through 52 are incorporated by reference as if fully set forth herein.

67. Jaubert made numerous false misrepresentations on his behalf and on behalf of Seahorse as its agent, as identified above including, but not limited to, describing himself as a highly qualified naval engineer with a deep knowledge of submarine design, that submarines he had manufactured had been sea tested and in some cases approved for use by the United States Coast Guard, that his submarines were safe and commercially usable, and that he sold some submarines to satisfied owners.

68. Defendants should have known that these representations were material and false. When submerged, the submarines became intolerably hot and prone to water leaks and fires among other serious problems.

69. Jaubert made these representations in order to induce reliance thereon by Plaintiffs.

70. Plaintiffs reasonably did rely on the correctness and truth of Jaubert's representations, to their detriment.

71. As a result of Defendants' fraudulent misrepresentations, Plaintiffs have been damaged in an amount to be proven at trial.

72. Plaintiffs seek recovery for their attorneys' fees and costs incurred in bringing the instant action.

WHEREFORE, Plaintiffs pray for judgment as follows:

A. For compensatory damages in the amount according to proof, to be determined at trial, to compensate for the wrongful conduct committed by Defendants up to the present time;

B. For punitive damages to be proven at trial

C. For prejudgment interest at the legal rate; and

D. For such other and further relief as the Court deems just and proper.

**COUNT IV**

**(Breach of Fiduciary Duty)**
**(Against Defendant Jaubert)**

73. Paragraphs 1 through 52 are incorporated by reference as if fully set forth herein.

74. Jaubert was an officer of Plaintiff Exomos. As such he was a fiduciary to the company owing it the utmost duty of loyalty.

75. Jaubert continuously ignored and breached that duty to the detriment of his employers and the company.

76. Plaintiffs have been damaged in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment as follows:

A. For compensatory damages in the amount according to proof, to be determined at trial, to compensate for the wrongful conduct committed by Defendants up to the present time;

B. For prejudgment interest at the legal rate; and

C. For such other and further relief as the Court deems just and proper.

**COUNT V**

**(Conversion)**
**(Against Defendants Jaubert and Seahorse)**

77. Paragraphs 1 through 52 are incorporated by reference as if fully set forth herein.

78. As detailed above Defendants charged Plaintiffs for goods which were never delivered in working order, added unauthorized charges to invoices and converted company property. Furthermore, Defendants took money that was the property of Plaintiffs and converted for their own use.

WHEREFORE, Plaintiffs pray for judgment as follows:

A. For compensatory damages in the amount according to proof, to be determined at trial, to compensate for the wrongful conduct committed by Defendants up to the present time; Plaintiffs also reserve the right to seek punitive damages;

B. For prejudgment interest at the legal rate; and

D. For such other and further relief as the Court deems just and proper.

## COUNT VI

**(Conspiracy to Commit Fraud)**
**(All Defendants)**

79. Paragraphs 1 through 52 are incorporated by reference as if fully set forth herein.

80. As detailed above, Defendants Jaubert and Seahorse knew, or should have known, that their representations were false.

81. Defendants Jaubert and Seahorse, working in concert with currently unknown individuals, designated Does 1-99, conspired to induce reliance on the misrepresentations described herein. Defendants Jaubert and Seahorse made these representations in order to induce reliance thereon by Plaintiffs.

82. Plaintiffs reasonably did rely on the correctness and truth of Jaubert's and Seahorse's representations, to their detriment.

83. The overt acts taken by the Defendants Jaubert and Seahorse and other co-conspirators in furtherance of the fraud included, but were not limited to, the misrepresentations and concealments described in paragraph herein.

84. The acts of the Defendants were willful, wanton, and malicious.

85. As a direct and proximate result of the Defendants' fraud, Plaintiffs have been injured in their business suffering damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment as follows:

A. For compensatory damages in the amount according to proof, to be determined at trial, to compensate for the wrongful conduct committed by Defendants up to the present time;

B. For punitive damages to be proven at trial

C. For prejudgment interest at the legal rate; and

D. For such other and further relief as the Court deems just and proper.

**Demand for Jury Trial**

Plaintiffs demand trial by jury as to all issues so triable as a matter of right.

Dated: September 14, 2009

Respectfully submitted,

By: Edward M. Mullins, Fla. Bar No. 863920
E-mail: emullins@astidavis.com
Annette C. Escobar, Fla. Bar No. 369380
ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.
701 Brickell Ave., 16th Floor
Miami, Florida 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202

and

Faith E. Gay, Fla. Bar No. 129593
E-mail: faithgay@quinnemanuel.com
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
A. William Urquhart*
E-mail: billurquhart@quinnemanuel.com
Laith D. Mosely*
E-mail: laithmosely@quinnemanuel.com
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

ATTORNEYS FOR DEFENDANTS DUBAI WORLD CORPORATION, EXEMOS, AND PALM MARINE

* Pro hac vice application to be filed.

FILED by GM D.C.
ELECTRONIC
September 14, 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

JS 44 (Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
DUBAI WORLD CORPORATION, EXEMOS and PALM MARINE

**DEFENDANTS**
HERVE JAUBERT, SEAHORSE SUBMARINES INTERNATIONAL INCORPORATED

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF:
Dubai

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT :
Martin County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY=S (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Edward M. Mullins
Astigarraga Davis Mullins & Grossman, P.A.
701 Brickell Avenue, 16th Floor
Miami, FL 33131 (305) 372-8282

ATTORNEYS (IF KNOWN)

(d) CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, PALM BEACH, (MARTIN), ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN AX@ IN ONE BOX ONLY)

Q 1 U.S. Government Plaintiff
Q 3 Federal Question (U.S. Government Not a Party)
Q 2 U.S. Government Defendant
X 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN AX@ IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | X 1 | Incorporated or Principal Place of Business in This State | Q 4 | X 4 |
| Citizen of Another State | Q 2 | Q 2 | Incorporated *and* Principal Place of Business in Another State | Q 5 | Q 5 |
| Citizen or Subject of a Foreign Country | X 3 | Q 3 | Foreign Nation | Q 6 | Q 6 |

09cv 14314 - MARTINEZ/LYNCH

**IV. ORIGIN** *(PLACE AN AX@ IN ONE BOX ONLY)*

(Q 1 Original Proceeding) Q 2 Removed from State Court Q 3 Remanded from Appellate Court Q 4 Reinstated or Reopened Q 5 Transferred from another district (specify) Q 6 Multidistrict Litigation Q7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** *(PLACE AN AX@ IN ONE BOX ONLY)*

**A CONTRACT**
Q 110 Insurance
Q 120 Marine
Q 130 Miller Act
Q 140 Negotiable Instrument
Q 150 Recovery of Overpayment & Enforcement of Judgment
Q 151 Medicare Act
BQ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
BQ 153 Recovery of Overpayment of Veteran's Benefits
Q 160 Stockholders Suits
X 190 Other Contract — Other contract

**A REAL PROPERTY**
Q 210 Land Condemnation
BQ 220 Foreclosure
Q 230 Rent Lease & Ejectment
Q 240 Torts to Land
Q 245 Tort Product Liability
Q 290 All Other Real Property

**A TORTS**
PERSONAL INJURY
Q 310 Airplane
Q 315 Airplane Product Liability
Q 320 Assault Libel & Slander
Q 330 Federal Employers Liability
Q 340 Marine
Q 345 Marine Product Liability
Q 350 Motor Vehicle
Q 355 Motor Vehicle Product Liability
Q 360 Other Personal Injury

PERSONAL INJURY
Q 362 Personal Injury - Med. Malpractice
Q 365 Personal Injury - Product Liability
Q 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
Q 370 Other Fraud
Q 371 Truth in Lending
Q 380 Other Personal Property Damage
Q 385 Property Damage Product Liability

**A CIVIL RIGHTS**
Q 441 Voting
Q 442 Employment
Q 443 Housing/ Accommodations
Q 444 Welfare
Q 440 Other Civil Rights

**PRISONER PETITIONS**
BQ 510 Motions to Vacate Sentence
HABEAS CORPUS:
BQ 530 General
AQ 535 Death Penalty
BQ 540 Mandamus & Other
BQ 550 Civil Rights
BQ 555 Prison Condition

**FORFEITURE/PENALTY**
BQ 610 Agriculture
BQ 620 Other Food & Drug
BQ 625 Drug Related Seizure of Property 21 USC 881
BQ 630 Liquor Laws
BQ 640 R.R. & Truck
BQ 650 Airline Regs.
BQ 660 Occupational Safety/Health
BQ 690 Other

**A LABOR**
Q 710 Fair Labor Standards Act
Q 720 Labor/Mgmt Relations
Q 730 Labor/Mgmt Reporting & Disclosure Act
Q 740 Railway Labor Act
Q 790 Other Labor Litigation
AQ 791 Empl. Ret. Inc. Security Act

**A BANKRUPTCY**
Q 422 Appeal 28 USC 158
Q 423 Withdrawal 28 USC 157

**A PROPERTY RIGHTS**
Q 820 Copyrights
Q 830 Patent
Q 840 Trademark

**B SOCIAL SECURITY**
Q 861 HIA (1395ff)
Q 862 Black Lung (923)
Q 863 DIWC/DIWW (405(g))
Q 864 SSID Title XVI
Q 865 RSI (405(g))

**FEDERAL TAX SUITS**
AQ 870 Taxes (U.S. Plaintiff or Defendant)
AQ 871 IRS - Third Party 26 USC 7609

**A OTHER STATUTES**
Q 400 State Reapportionment
Q 410 Antitrust
Q 430 Banks and Banking
BQ 450 Commerce/ICC Rates/etc.
Q 460 Deportation
Q 470 Racketeer Influenced and Corrupt Organizations
Q 810 Selective Service
Q 850 Securities/Commodities/ Exchange
Q 875 Customer Challenge 12 USC 3410
Q 891 Agricultural Acts
Q 892 Economic Stabilization Act
Q 893 Environmental Matters
Q 894 Energy Allocation Act
Q 895 Freedom of Information Act
Q 900 Appeal of Fee Determination Under Equal Access to Justice
Q 950 Constitutionality of State Statutes
Q 890 Other Statutory Actions
A or B

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 USC 1332

LENGTH OF TRIAL
Via__7____days estimated (for both sides to try entire case)

**VI. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION **DEMAND** $ over 75,000 CHECK YES only if demanded in complaint: **JURY DEMAND:** X Yes No

**VII. RELATED CASE(S)** (See instructions): **IF ANY** JUDGE ______ DOCKET NUMBER ______

DATE Sept. 14, 2009 SIGNATURE OF ATTORNEY OF RECORD [signature] counsel for PLAINTIFFS

$350.00 1008350 9/14/09