UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.2:09-CV-14314-MARTINEZ/LYNCH

DUBAI WORLD CORPORATION, and
its subsidiaries, EXOMOS, NAKHEEL,
and PALM MARINE,

    plaintiffs,
v.

HERVE JAUBERT and SEAHORSE
SUBMARINES INTERNATIONAL
INCORPORATED, and Does 1-99,

    defendants.
_____/

## COUNTERLAIM PLAINTIFF HERVE JAUBERT'S OPPOSITION PAPERS IN RESPONSE TO DUBAI WORLD CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S CLAIMS

    Counterclaim Plaintiff Herve Jaubert ("Mr. Jaubert"), pursuant to Federal Rules of Civil Procedure 56 and Local Rule 7.5, hereby submits his opposition papers opposing Dubai World Corporation's ("Dubai World") Motion for Summary Judgment ("Motion") on Mr. Jaubert's counterclaims as follows:

### Statements of Material Facts in Opposition to the Motion for Summary Judgment

    Pursuant to Local Rule 7(c), the below paragraphs correspond with the order and with the paragraph numbering scheme used by the movants.

### Fraud

1.    Mr. Jaubert agrees with paragraph 1 although the term 'joint venture' and 'profit sharing' were both used in promises by Dubai World representatives. Neither Mr. James Miller nor Mr. Jaubert are attorneys regarding the label uses at various times but the intent was to allow Mr.

Jaubert to profit from his involvement in the new organization in Dubai. Affidavit of Herve Jaubert, Attached hereto as Exhibit "A".

2.      These joint venture and profit sharing promises were made both before Mr. Jaubert relocated to Dubai as well as while he was in Dubai. Composite Exhibit "B" hereto, consisting of emails from Dubai World's agent James Miller to Mr. Jaubert confirming these representations ("…It can be 50/50 or 75/25… whatever suits you"), March 1, 2004. These representations of a share of the profits were made by a businessman to a businessman. The representations of profit sharing for 20% of the net profits was continuously made to Mr. Jaubert over the next few years, the last as late as November 3, 2005, in order to keep Mr. Jaubert in Dubai and at Exomos.

3.      Dubai World Corporation and its Chairman, Sultan Ahmed bin Sulayem, and Dubai World's representatives (Jim Miller, Hamed Kazim, and James Dalessio, D. Russ Hymas) continued to make these representations to Mr. Jaubert in emails, conversations, and in a memorandum. Affidavit of Herve Jaubert, Exhibit "A" hereto; Composite Exhibit "B" hereto, Exhibit "C" hereto, and Deposition of Sultan Ahmed bin Sulayem at 30-37, Exhibit "D" hereto.

4.      Mr. Jaubert did not agree to participate in losses of Exomos.

5.      Mr. Jaubert confirms that Dubai World representatives offered him a joint venture/profit sharing agreement both prior to his move to Dubai and while he was there. This is supported by Affidavit of Herve Jaubert, Exhibit "A" hereto; Composite Exhibit "B" hereto, Exhibit "C" hereto, and Deposition of Sultan Ahmed bin Sulayem at 30-37, Exhibit "D" hereto.

6.      In the March 1, 2004 email from James Miller to Mr. Jaubert, James Miller advised Mr. Jaubert that the Middle East market would keep him producing for a very long time. Composite

Exhibit "B" hereto. Mr. Miller acted as Dubai World's agent. Deposition of Sultan Ahmed Bin Sulayem at 30-37, Exhibit "D" hereto.

7. Mr. Jaubert relied upon these representations to move himself, his family, and his business and his engineering skills to Dubai. Affidavit of Herve Jaubert, Exhibit "A" hereto.

8. Mr. Jaubert did become a Dubai World subsidiary employee after his arrival in Dubai.

9. Although Mr. Jaubert does not dispute that he moved to Dubai in November, 2004, and later signed an employment contract in February, 2005, he disputes the characterization of the offer of profit sharing (the details of which were to be provided separately, as expressly stated in that agreement), was not what was offered to him when he was in Florida before he moved to Dubai and referred to as a joint venture. Affidavit of Herve Jaubert, Exhibit "A" hereto and Composite Exhibit "B" hereto. Mr. Jaubert understood that he would receive a percentage of the profits of the venture. Composite Exhibit "B", number 3 hereto.

10. Mr. Jaubert does not dispute that he renegotiated an employment contract with a Dubai World subsidiary in July 2005 but he understood that representation of profit sharing was the same representation that was offered to him when he was in Florida, before he moved to Dubai. Affidavit of Herve Jaubert, Exhibit "A" hereto; Composite Exhibit "B", number 3 hereto.

11. Mr. Jaubert does not dispute that a memorandum from Exomos' outside counsel provided Mr. Jaubert with a document that describes various accounting methods to determine profit sharing; however, Mr. Jaubert understood before he left the U.S. for Dubai on the representations of Mr. James Miller, Dubai World's agent, and Sultan Ahmed bin Sulayem, Chairman of Dubai World, that he would be receiving a portion of the profits of Exomos. The memorandum of Ross, Dixon & Bell states, " [i]t is our understanding that Mr. Jaubert and Sultan Ahmed bin

3

Sulayem, the Chairman of the Port, have generally discussed the terms of Mr. Jaubert's "profit sharing" in Exomos." Exhibit "C" hereto.

12. Mr. Jaubert does not dispute that Exomos did not make a profit but he does dispute that it was due to his actions as CEO of Exomos; rather, it was due to Dubai World's lack of financial ability to continue to fund Exomos when Exomos was on the brink of success.

13. Mr. Jaubert disputes the characterization that Exomos had 'net losses' from 2004 through 2006; Exomos made *capital expenditures* and planned such capital expenditures, with no expectation of income until 2008 and with no expectation of any net profits until 2010. Exomos Financial Plan, October 2006, Exhibit "E" hereto.

14. It is not disputed that Mr. Jaubert recognized in August 2006 that the representation of profit sharing made to Mr. Jaubert by Dubai World had not been memorialized and was again requesting a document that would reflect the represenations made to him.

15. The Expert Opinion, which has not been authenticated by Dubai World via affidavit, also states that, "This is not to suggest that oral agreements are invalid or will not be recognised, mainly to prove employment matters, but this is limited," at page 8; and, an email from Randa Thomas to Hussein Ramadan (Dubai World Audit Manager/Group Internal Audit) dated March 14, 2007 states, "On item 2, I had top management approve verbally at the time. I often deal with them on these basis;" both of the foregoing allow the inference that an oral agreement can be valid, recognized, and the business practice of Dubai World. Exhibit "F" hereto.

16. Mr. Jaubert was damaged due to his reliance upon the representations made to him by Dubai World. Affidavit of Herve Jaubert, Exhibit "A" hereto.

16 a. Additionally, it is undisputed that James Miller was acting as Dubai World's agent and representative in its dealings with Mr. Jaubert, that neither Mr. Miller nor Mr. Jaubert are

attorneys but more accurately businessmen, that Mr. Jaubert is a French citizen, that Mr. Miller offered Mr. Jaubert "50/50 or 75/25...*whatever suits you*," that this statement and others were made to Mr. Jaubert when he was in Florida to induce Mr. Jaubert to move his business and submarine engineering acumen to Dubai to manufacture submarines, that Mr. Jaubert acted and relied upon the numerous statements and emails representing and continuing to represent the profit sharing representations that were made by Dubai World to him, that Mr. Jaubert would receive more than just a salary but a share of the profits (whether a portion of the net profits or similarly rewarding compensation), and that Mr. Jaubert suffered damages. Deposition of Sultan Ahmed bin Sulayem at 30-37, Exhibit "D" hereto; Emails and other writings, Composite Exhibit "B" hereto; Affidavit of Herve Jaubert, Exhibit "A" hereto; Exhibit "C" hereto, and Exhibits 2 and 3 to Plaintiffs Motion for Summary Judgment on Defendant's Claims (unverified).

16b. Additionally, the Statement of Crister Thomas Turner[1], former Director, Head of Risk and Asset Management of Istithmar and former Dubai World employee, states that in his reasoned judgment that Sultan Ahmed bin Sulayem made such representations to Mr. Jaubert and allowed such representations to be made to Mr. Jaubert on behalf of Dubai World, knowing that such representations could be withdrawn after Mr. Jaubert was in Dubai if the venture became profitable. Statement of Crister Thomas Turner, attached hereto as Exhibit "T". That the venture never became profitable, due to Dubai World's difficulties, is irrelevant.

16c. Mr. Jaubert attests that he realized in August, 2006 and then again in October, 2006, when the Financial Plan of Exomos was prepared that did not provide any such profit sharing to him, that the representations made to him regarding profit sharing were false. Mr. Jaubert further attests that he was ordered to fire an employee (Mr. Paul Rodig) to avoid Dubai World's having

---

[1] Mr. Turner's affidavit could not be notarized in time to file concurrently with this filing and as such is submitted as a statement; undersigned counsel (Ms. Heathcock) did speak with Mr. Turner who advised that he would attest to the statements contained in his statement.

5

to pay Mr. Rodig his end of contract benefits, thus demonstrating the bad faith of Dubai World in their operations.  Affidavit of Herve Jaubert, Exhibit "A" hereto.

Disputed Facts Regarding the Abuse of Process Claim

17.     Mr. Jaubert agrees with paragraph 17.

18.     It is disputed that the Public Prosecutor of Dubai ever required that an independent, court appointed chartered accountant submit a report regarding Mr. Jaubert's alleged financial improprieties; the unverified document submitted in support of this claim by Dubai World is in Arabic and no certified translation has been provided regarding this document; it is also disputed that there was ever a "ground up" review of Exomos by an independent chartered accountant as the testimony of the alleged chartered accountant confirmed that he based his audit upon the documents provided to him by Dubai World and that he did not discuss any alleged improprieties with Mr. Jaubert.  Tarek Ahmed deposition at page 57, Exhibit "H" hereto.

18a.    It is disputed that Dubai World had nothing further to do after process issued against Mr. Jaubert regarding his alleged embezzlement from Exomos in February, 2008.  The Affidavit of Herve Jaubert, the Affidavit of Helen Jaubert, and the Affidavit of Charles Wilcox (retired FBI agent) all confirm that Mr. Jaubert was threatened with imprisonment and confiscation of his property subsequent to the process being issued against him.  Affidavit of Herve Jaubert, Exhibit "A" hereto; Affidavit of Helen Jaubert, Exhibit "I" hereto; and Affidavit of Charles Wilcox, Exhibit "J" hereto; Email from Herve Jaubert to Sultan Bin Sulayem dated March 24, 2008, Exhibit "K" hereto ("Upon payment of the AED2,000,000.00 Dubai World will release my contracts and/or liens on my apartments").

19.     Mr. Jaubert agrees that he attempted to import bullets based upon an email advising it was allowed; Composite Exhibit "G," number 5 hereto, email from Sanil Subair, Project

Manager, Palm Marine. It is disputed that Dubai World auditors only learned about the bullets in April 2007. Composite Exhibit "G," number 5 hereto and Affidavit of Herve Jaubert, Exhibit "A" hereto.

20. It is disputed that Dubai World had no further role in the proceedings against Mr. Jaubert after the April, 2007 process was initiated against Mr. Jaubert regarding the case against him involving his importation of bullets. Composite Exhibit "G" hereto, including email from Mr. Jaubert to Sultan Bin Sulayem, dated April 24, 2007, attached hereto as Composite Exhibit "G," number 1 ("I need to recover my passport"); email from Yousuf Kazim to Herve Jaubert dated June 28, 2007, attached hereto as Composite Exhibit "G", number 2 ("Dear Herve, I had a meeting with AbdulQader, your passport is tied up with GIA [Group Internal Audit], sorry I can't help."); Email from AbdulQader Obaid Ali to Chris O'Donnell dated July 2, 2007 attached hereto as Composite Exhibit "G," number 6 ("I request you to put a lien on behalf of Dubai World on Mr. Herve Jaubert's property at the Palm or any other Nakheel property"); Deposition of Sultan Bin Sulayem at 156, Exhibit "D" hereto at page 156; and Deposition of AbdulQader Ali Obaid, at pages 66-67, 70-83, 138-151, Exhibit "L" hereto.

21. Mr. Jaubert agrees that Sultan Bin Sulayem testified regarding this statement and that AbdulQader Obaid Ali also testified regarding this matter; however, the credibility of each in making such statements is questioned by Mr. Jaubert.

## Disputed Facts regarding the Defamation Claim

22. Mr. AbdulQader Obaid Ali confirmed that he made the statement at his deposition. Exhibit "L" hereto. Additionally, Mr. Jaubert hereby provides a copy of *The Washington Post* August 10, 2009 article, Exhibit "M" hereto and requests the Court take judicial notice of this

article; AbdulQader Obaid Ali deposition at pages 12, 13, Exhibit "L" (confirming the statement was made).

23.     Exhibit 16 to the Motion is not an excerpt from the Cowden deposition. Mr. Jaubert does have a website promoting his book but Dubai World has not provided authenticated support that this website or other alleged on-line forums were in existence at the time Mr. Ali made his statement.

24.     The book *Escape from Dubai* by Mr. Jaubert and the website speak for themselves.

25.     The Stingray and the Goby and other submarines worked and Mr. AbdulQader Obaid Ali knew that they did. This is supported by the Affidavit of Herve Jaubert, Exhibit "P" hereto, the Affidavit of Paul Rodig, Exhibit "N" hereto; DVD of the Goby and the Stingray submarines working in Dubai, Exhibit "DVD" hereto (filed conventionally); numerous press articles, Composite Exhibit "O" hereto; deposition of Khurram Nagaria/DW0008519-24 & Exhibit "Q" hereto that included the exhibit to that deposition, BMT Surveys, LLC's Pre-Risk Survey/Exhibit 1 (documenting that the Adventurer, Discovery I, SDV-II, Stingray I and II were all operational); email from Herve Jaubert to AbdulQader Obaid Ali on September 23, 2007 (…"the submarine is working as designed…"), Exhibit "R" hereto; the Goby was destroyed by incompetent workers as supported by the Affidavit of Mr. Jaubert, Exhibit "P" hereto.

26.     Mr. Jaubert agrees that he made this statement at his deposition.

27.     Exhibit 16 to the Motion is not an excerpt from the Cowden deposition; Mr. Jaubert has self-published a book that was published *after* the defamatory statement by Mr. AbdulQader Obaid Ali. Nor has Dubai World provided any verified support for this statement.

28.     The statement made by Mr. AbdulQader Obaid Ali was not true at the time he made it and Mr. AbdulQader Obaid Ali knew that his statement was not true at the time he made it.

Exhibits 19, 20, 21, and 22 to the Motion have not been authenticated by anyone from Dubai World.  Exhibit 2 of the Ahmed deposition is an assortment of documents, many in Arabic, that seem to be mixed in with various invoices and alleged employment contracts and purchase order summaries and cannot confirm that his statements were premised upon authenticated documents.

28a.    The statement of AbdulQader Obaid Ali regarding the submarines not working are addressed above, in paragraph 25.

28b.    Regarding AbdulQader Obaid Ali's defamatory statement that 'auditors uncovered fraud involving overbilling for equipment purchases,' AbdulQader Obaid Ali knew this statement was false and untrue when he made it.

28c.    AbdulQader Obaid Ali knew the 10% 'secret' markups were not secret and had been approved by the Chairman of the Board of Dubai World; he knew that Exomos' ordering through Seahorse Submarines was fully approved by the Chairman of the Board of Dubai World; and he knew that any 'missing inventory' was fully accounted for by Mr. Jaubert.  Mr. AbdulQader Ali OBaid knew all of the foregoing and was fully apprised of such by Mr. Jaubert; moreover, an Audit Inquiry Response performed by Ross, Dixon & Bell, LLP showed no issues as to its Exomos' operational matters.  Exhibit "S" hereto.

28d.    That AbdulQader knew of the foregoing is supported by the deposition testimony of Sultan Ahmed Bin Sulayem, Exhibit "D" hereto at 11, 13, 29, 30 108-120, 124- 127-131, 134- 135, 155 and exhibits 2 -11 of that deposition; the deposition testimony of Khurram Nagaria, Exomos' Financial Controller at pages 23-26 and 34-41, 49 and 54, Exhibit "Q" hereto (when he became aware of service charges he, "… reported the matter to internal audit"); email from Herve Jaubert to AbdulQader Obaid Ali dated May 9, 2007, verified by the Affidavit of Herve Jaubert attached hereto as Exhibit "A"; the Statement of Crister Thomas Turner, Exhibit "T"

hereto, and the Affidavit of Paul Rodig, Exhibit "N" hereto, regarding the strenuous, critical, and thorough process of review of all requests for payment that had to be approved by Dubai World for any payment.

29.     The Exomos Submersible Product Report has not been authenticated by anyone from Dubai World; the date on this alleged report is March 2007, well after delivery of many working submarines to Dubai World.  See Mr. Jaubert's response, above at paragraph 25, which confirms that Mr. AbdulQader Ali Obaid knew that the submarines worked.

30.     The internal audits and subsequent governmental audit relied upon by AbdulQader Obaid Ali in making his statements were those instituted and controlled by AbdulQader Obaid Ali himself as Chief of Group Internal Audit; he had abundant documentation that these audits were not based upon complete and accurate information, as set forth above in paragraph 28.

31.     The Stingray was fully operational as of December, 2004.  Affidavit of Herve Jaubert, Exhibit "P" hereto, and Affidavit of Paul Rodig, Exhibit "N" hereto.

31.     The Adventurer submersible was operational: BMT Surveys, LLC's Pre-Risk Survey/Exhibit 1 to deposition of Khurram Nagaria/DW0008519-24 & Exhibit "Q" hereto (documenting that the Adventurer I & II were both operational);  Affidavit of Herve Jaubert, Exhibit "P" hereto and Affidavit of Paul Rodig, Exhibit "N" hereto.

Dated: August 4, 2010

/s William T. Hess
William T. Hess, Fla. Bar No. 801224
Hess & Heathcock, P.A.
40 SE Osceola St.
Stuart, FL   34994
E-mail: whess@hhfirm.com
Telephone: 772.223.0209
Facsimile: 772.220.9727
Counsel for Defendant/Counterclaimant

Case 2:09-cv-14314-JEM   Document 111   Entered on FLSD Docket 08/04/2010   Page 11 of 11

Herve Jaubert and Defendant Seahorse
Submarines International Incorporated

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 4, 2010, I filed this document with the Clerk electronically through the CM/ECF system which caused all counsel of record to be served by electronic means.

s/ William T. Hess
William T. Hess