UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.2:09-CV-14314-MARTINEZ/LYNCH

DUBAI WORLD CORPORATION, and
its subsidiaries, EXOMOS, NAKHEEL,
and PALM MARINE,

     plaintiffs,
v.

HERVE JAUBERT and SEAHORSE
SUBMARINES INTERNATIONAL
INCORPORATED, and Does 1-99,

     defendants.
_____/

### COUNTERLAIM PLAINTIFF HERVE JAUBERT'S MEMORANDUM OF LAW IN OPPOSITION TO DUBAI WORLD CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S CLAIMS

Counterclaim Plaintiff Herve Jaubert ("Mr. Jaubert"), pursuant to Federal Rules of Civil Procedure 56 and Local Rule 7.5, hereby submits his Memorandum of Law opposing Dubai World Corporation's ("Dubai World") Motion for Summary Judgment ("Motion") on Mr. Jaubert's counterclaims as follows:

A genuine issue exists when a rational factfinder, considering the evidence in the summary judgment record, can find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A fact is material if it might affect the outcome of the case. *Id.* Dubai World has the burden of persuasion and must make a prima facie showing that summary judgment is appropriate under Rule 56.

In ruling on plaintiff's motion for summary judgment, the Court is not tasked with weighing the evidence or finding the facts; the Court is to assess the threshold issue of whether a

genuine issue exists as to material facts requiring a trial. The evidence of Mr. Jaubert, as the non-moving party, is to believed as true, all doubts should be resolved against Dubai World, all evidence is to be construed in the light most favorable to Mr. Jaubert, and all reasonable inferences should be drawn in favor of Mr. Jaubert. *Pelt v. Utah*, 539 F.3d 1271 (10th Cir. 2008).

To be considered, the facts contained in the materials supplementing the motion must be admissible or usable at trial; documents, even if obtained through discovery, do not automatically become part of a summary judgment record merely because they are cited in a supporting memorandum; documents submitted with summary judgment motions should be attached to a Rule 56(e) affidavit that, upon personal knowledge, has identified and authenticated each document. Documents that fail to satisfy this affidavit authentication requirement may be properly disregarded by the Court when analyzing the pending motions. *Stuart v. General Motos Corp.*, 217 F.3d 621 (8th Cir. 2000).

### As to the Fraud Count

Fraud allegations are ordinarily not suitable for summary disposition because determining fraud generally requires a full explanation of the facts and circumstances of the alleged wrong. *Nessim v. DeLoache*, 384 So.2d 1341, 1344 (Fla. 3d DCA 1980). In fraud cases, summary judgment is rarely proper as the issue so frequently turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge. *Cohen v. Kravit Estate Buyers, Inc.*, 843 So.2d 989, 991 (Fla. 4th DCA 2003); *see also Robinson v. Kalmanson*, 882 So.2d 1086 (Fla. 5th DCA 2004).

In an action alleging fraud, Mr. Jaubert must provide materials that show a genuine issue of material fact that: 1) a false statement was made concerning a material fact, 2) knowledge by the person making the statement that the representation is false, 3) intent by the person making

2

the statement that the representation will induce another to act upon it; and 4) reliance on the representation to the injury of the other party. *Lance v. Wade*, 457 So.2d 1008 (Fla. 1984).

Mr. Jaubert has provided abundant support that presents a genuine issue of material fact that James Miller, confirmed agent and representative of Dubai World, and Sultan Ahmed bin Sulayem, Dubai World's Chairman, that Mr. Jaubert was offered a joint venture or "whatever suits you." Mr. bin Sulayem agreed that profit sharing was discussed and there are numerous documents that provide support that these representations were made to Mr. Jaubert regarding profit sharing; Mr. Jaubert was kept interested in Exomos because of these initial and repeated inducements by Dubai World, both before he left the U.S. and after he arrived in Dubai.

Mr. Jaubert is not a lawyer, nor is Mr. Miller, Dubai World's agent. Mr. Jaubert has attested to his understanding that whether he was offered a joint venture or a share in the profits, he understood it to mean the same thing to him: a chance to make significant monies beyond any salary by moving to Dubai to manufacture cutting edge submarines in a state-of-the-art facility. And, in February, 2004 Mr. Jaubert documented his understanding of what he believed was being offered to him, "What do i get to let 50% of the *profit* on the Intruder's go? ... i can have plants anywhere without giving away any percentage on the profit," [shown as written].

That Dubai World's Chairman and its agents knew the representations of a percentage of the profits of the venture were false is evidenced by the Statement of Crister Thomas Turner, former Director, Head of Risk and Asset Management of a Dubai World subsidiary and former Dubai World employee: Mr. Turner has stated that in his reasoned opinion, Dubai World Chairman Sultan Ahmed bin Sulayem knew that whatever was offered to Mr. Jaubert, regardless of the term used, that once Mr. Jaubert arrived in Dubai, Dubai World would be able to evade and avoid any such promise. Mr. Turner has stated that Mr. bin Sulayem knew that an

3

agreement would have to be drawn up, UAE law would apply, and that Dubai World could then break such promise without any ramifications. This is also borne out by the fact that Mr. Jaubert was continuously promised a share in the profits of the venture, from before he left the United States and ongoing through August, 2006, when he wrote that, "profit sharing arrangements" would be provided at a later date, which later date never arrived.

Mr. Jaubert has provided support for the element of the fraud claim that Dubai World intended that the representation of a share in the endeavor would induce Mr. Jaubert to act upon it: Mr. Miller, in response to Mr. Jaubert's concerns that he could build anywhere, responded, "the middle east -- that can keep you producing for a very long time." And, "I think it will be a lot clearer after a few days in Dubai... I look at this upcoming trip as a way to ...work out the details of business venture with the Chairman that will allow you to operate the way you want to in 2004...contracts can be signed and monies transferred quickly if agreements can be spelled out."

Mr. Jaubert certainly relied upon the representations to his detriment: he moved himself and his family to Dubai and gave up his own business; Mr. Jaubert has attested to this in his affidavit and at his deposition.

Mr. Jaubert's claim is not barred by the statute of limitations; Mr. Jaubert has attested that he realized he would not be receiving a share of the profits when the 2006 Exomos Financial Plan was presented that failed to reflect any profit sharing to him as CEO. The statute cited by Dubai World states that the claim for fraud must be brought within four years of the time the facts giving rise to the cause of action were discovered or *should have been discovered* with the exercise of due diligence. As Mr. Jaubert has attested to realizing that he realized in October, 2006, when the Exomos Financial Plan was presented, that he was never going to see any profit

sharing (after years of being told that and agreement confirming this promise was forthcoming), and as he filed suit in September, 2009, Mr. Jaubert's claim is not barred by the statute of limitations.

Mr. Jaubert's claim is not barred by the statute of frauds: this is not a breach of contract claim but a fraud claim. A false statement of fact, to be a ground for fraud, must be of a past or existing fact *unless* the promise is made without any intention of performing or unless it is made with the positive intention not to perform. *Vance v. Indian Hammock Hunt & Riding Club, Ltd.,* 403 So.2d 1367 (Fla. 4th DCA 1981). Under certain circumstances, a promise may be actionable as fraud where it can be shown that the promisor had a specific intent not to perform the promise at the time the promise was made and the other elements of fraud are established. *Alexander/Davis Properties, Inc. v. Graham,* 397 So.2d 699 (Fla. 4th DCA 1981).

In this case, Mr. Jaubert has shown a genuine issue of material fact as to whether Dubai World's agents made their promises to Mr. Jaubert without any intention of performing. Mr. Turner's statement certainly calls into question the intent of Mr. bin Sulayem with respect to this intention and states that Mr. bin Sulayem knew that any offer of profit sharing or similar would not be formalized (as it was not) once Mr. Jaubert arrived in Dubai.

Moreover, the representations were in writing: there were numerous emails from Mr. Miller that made these representations, followed by emails sent after Mr. Jaubert arrived in Dubai, references to profit sharing in his employment agreements, and the memorandum from Ross & Dixon & Bell, Dubai World attorneys. These representations continued to be made once Mr. Jaubert arrived in Dubai, but Dubai World never seemed to get around to finalizing the offer, despite its 50,000 employees and an in-house legal department. This pattern of behavior only

confirms that Dubai World made the representations and knew it never intended to fulfill them when they made them.

Mr. Jaubert is can establish justifiable reliance. As set forth above, once he was in Dubai, Mr. Jaubert was provided with several documents that represented he would be provided 20% of the net profit. Mr. Jaubert's employment contracts do not, in fact, expressly contradict the representations made but actually support that the representations were made; these employment contracts both expressly stated that profit sharing details would be "provided separately." Mr. Jaubert relied upon these representations to his detriment and, when Dubai World's financial picture became untenable, Mr. Jaubert was forced to flee after being threatened with imprisonment and funds were extorted from him and other extortions were made and he was threatened with torture and imprisonment.

Mr. Jaubert has established a genuine issue of material fact as to the damages he suffered as a result of the false representations made to him by Dubai World. He moved to Dubai and was, while there, forced to reimburse Dubai World years later for payments Dubai World's Chairman had approved: shipping of a vehicle and attorney's fees for Seahorse litigation. Had Mr. Jaubert not gone to Dubai on the fraudulent representations of Dubai World, Mr. Jaubert would not have lost months of his life trying to avoid imprisonment based upon false claims of embezzlement; he would not have risked his life in escaping under cover of darkness by dinghy and then sailboat through dangerous waters to reach India.

Mr. Jaubert left his business to achieve a personal dream based upon the false representations made to him by Dubai World; when Dubai World needed a scapegoat to blame for its $31,000,000.00 expenditure in a submarine manufacturing facility, it blamed him and caused him to lose his vocation. But for the false representations of Dubai World to share in a

portion of profits in the proposed enterprise, Mr. Jaubert would have stayed in Florida. That he did not, and relied to his detriment upon false representations by Dubai World, caused him much more in damages than mere business opportunity: it cost him a significant portion of his life that he will never get back as well as time in his profession subsequent to his being fired from Exomos.

As such, there are genuine issues of material fact regarding Mr. Jaubert's fraud claim that he has presented with the materials in opposition to Dubai World's Motion. As the issue of fraud presented herein turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge, summary judgment should not be granted on this count. *Cohen v. Kravit Estate Buyers, Inc.,* 843 So.2d 989, 991 (Fla. 4th DCA 2003); *see also Robinson v. Kalmanson,* 882 So.2d 1086 (Fla. 5th DCA 2004)

<u>Abuse of Process</u>

Abuse of process involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed. For the cause of action to exist, there must be a use of the process for an immediate purpose other than that for which it was designed. The usual case of abuse of process involves some form of extortion. *Bothmann v. Harrington,* 458 So.2d 1163 (Fla. 3d DCA 1984). The improper purpose usually takes the form of coercion to obtain a collateral advantage, such as the surrender of property or the payment of money, by the use of the process as a threat or club. It is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of the process, itself, which constitutes the tort. W. Prosser, *Handbook of the Law of Torts* §121 (4th ed. 1971).

In the present case, Mr. Jaubert has provided abundant support that there is a material issue of fact as to the abuse of process by Dubai World's agent and representative against Mr. Jaubert subsequent to his being served with process regarding the alleged illegal importation of bullets: after he was served process, AbdulQader Ali Obaid maintained his passport at the Group Internal Audit, as supported by the emails attached to Mr. Jaubert's Statement of Disputed Facts; his property was the subject of an illegal lien by this same person as confirmed by Dubai World's agent. Mr. Jaubert also has attested to his being threatened with imprisonment, which attestation has been supported by the Affidavit of Helen Jaubert (Mr. Jaubert's wife) and the Affidavit of Charles Wilcox, a retired Special Agent with the FBI.

Additionally, Mr. Jaubert, Mrs. Jaubert and Mr. Wilcox have attested to the abuse of process against Mr. Jaubert after he was served with process in February, 2008; Mr. Jaubert has attested to telephone conferences with AbdulQader Obaid Ali prior to his departure from Dubai when that agent of Dubai World threatened him with imprisonment if Mr. Jaubert did not pay monies to Dubai Worlds and maintained Mr. Jaubert's passport that has never been returned, as confirmed in Mr. Jaubert's email to Sultan Ahmed bin Sulayem.As there is a genuine issue of material fact regarding Dubai World's abuse of process against Mr. Jaubert, summary judgment cannot be granted.

The abuse of process committed against Mr. Jaubert by AbdulQader Ali Obaid was not undertaken, moreover, by the Emirate of Dubai in its sovereign capacity in its own territory. The documents Mr. Jaubert has presented in opposition to the Motion demonstrate that AbdulQader Ali Obaid was acting for the Group Internal Audit of Dubai World Corporation, not the Emirate of Dubai.

## Defamation

The elements of a cause of action for defamation are: (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff. *Bass v. Rivera,* 826 So.2d 534 (Fla. 2nd DCA 2002). Under Florida law, a publication is libelous *per* se when it imputes to another conduct, characteristics, or conditions incompatible with the proper exercise of one's lawful business, trade, profession, or office. *Drennen v. Westinghouse Electric Corporation,* 328 So.2d 52 (Fla. 1st DCA 1976). When the words published concerning a person tend to degrade him, bring him into ill repute, destroy confidence in his integrity, or cause other like injury, such language is actionable *per se. Axelrod v. Califano,* 357 So.2d 1048 (Fla. 1st DCA 1978).

If a qualified business privilege exists, it may be asserted as a defense to defamation. The elements essential to the finding of a conditionally privileged communication are 1) good faith; 2) an interest to be upheld; 3) a statement limited in its scope to this purpose; 4) a proper occasion; and 5) publication in a proper manner. *Leonard v. Wilson*, 150 Fla. 503, 8 So.2d 12 (Fla. 1942). To be qualifiedly privileged, the communication must be made by a person having a duty or interest in the subject matter, to another having a corresponding duty or interest.

With respect to the qualified privilege founded on business matters, the otherwise slanderous publication must be in regard to the business, made by one having an interest in the business and solely to others having an interest in the business. *Arison Shipping Company v. Smith*, 311 So.2d 739 (Fla. 3d DCA 1975); and *Frank Coulson, Inc. Buick v. Trumbull*, 328 So.2d 271 (Fla. 4th DCA 1976).

Additionally, depending upon whether the person is a public figure making a statement on a public issue, the standard of proof is much higher than if the statement is made by a private

9

figure regarding an essentially private matter. In cases involving public figures, the injured party must prove actual malice, 'that is, with knowledge that it was false or with reckless disregard of whether it was false or not.' *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 US 749 (1985).

It is undisputed that Dubai World published a statement: The copy of the *Washington Post* article where the defamatory statement was printed and published is attached to Mr. Jaubert's Opposition Papers in Response to Dubai World's Motion for Summary Judgment and that Abdulqadar Ali Obaid made that statement.

That the statement was made about Mr. Jaubert is not disputed as the *Washington Post* article specifically named Mr. Jaubert.

That the statement was made to a third party (indeed, to any reader of *The Washington Post)* is not disputed.

That the statement caused injury to Mr. Jaubert is not disputed. When a defamatory statement is *per se* actionable as here (as the statement published concerning Mr. Jaubert tended to degrade him, bring him into ill repute, destroy confidence in his integrity, or cause other like injury), damages are presumed. *Leavitt v. Cole,* 291 F.Supp.2d 1338 (M.D. Fla. 2003), *Commander v. Pedersen,* 156 So.2d 337 (Fla. 1934), *overruled in part on other grounds.*

The question of whether Dubai World's representative is able to assert a business privilege in making the statement, does not present a material issue of fact. Although Dubai World claims that it had a business privilege defense, it is clear that Dubai World's representative made a statement to a reporter who had no interest in the business of Dubai World, Exomos, or Mr. Jaubert. *See, Arison Shipping Company v. Smith*, 311 So.2d 739 (Fla. 3d DCA 1975); and *Frank Coulson, Inc. Buick v. Trumbull*, 328 So.2d 271 (Fla. 4th DCA 1976).

The existence of a qualified privilege vanishes if the statement is made with malice, or to too wide an audience. *Glynn v. City of Kissimmee,* 383 So.2d 774 (5th DCA 1980), at 776. Here, Dubai World's representative made a statement to a reporter of an internationally recognized newspaper. Certainly, as the statement was made to the entire world, any claimed privilege vanished.

Given the foregoing, there remain two issues with respect to the defamation count brought by Mr. Jaubert against Dubai World: the question of the falsity of the statement and the standard of proof that must be presented.

It is disputed that Mr. Jaubert is a limited public figure, as asserted by Dubai World. In *Della-Donna v. Gore Newspapers Co.,* 489 So.2d 72 (Fla. 4DCA 1986), the Court provided a thorough analysis of this issue. The Court reviewed the Supreme Court case of *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 US 749 (1985) which indicated that the pivotal question of whether speech addresses a matter of public concern must be determined by the expressions, content, form, and context as revealed by the entire record.

In *Dun & Bradstreet, Inc.,* the US Supreme Court reiterated the holding in *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964) that found that when there is an issue that concerns matters involving a public question, there was a need to allow freedom of expression so that debate on public issued could be uninhibited, robust, and wide open. In defamation cases involving matters of public concern, therefore, a plaintiff must show actual malice: that the statement was made with knowledge that it was false or was made with reckless disregard of whether it was false or not. *Id., at 280.* This ensures that only such malicious statements are deemed defamatory and ensures uninhibited, robust, and wide open debate on matters involving public interest.

The Court in *Dun & Bradstreet, Inc., supra,* determined that defamatory statements involving speech on matters of purely private concerns is less of First Amendment concern:

> The role of the Constitution in regulating state libel law is far more limited when the concerns that activated *New York Times* and *Gertz* are absent. In such a case, there is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas concerning self-government; and there is no threat of liability causing a reaction of self-censorship by the press.

*Id. at 759-60.*

In *Della-Donna, supra,* the Fourth District Court of Appeal determined the standard of proof required to prove defamation was based upon whether the victim is a public official, public figure, or limited public figure or private person this issue. The Court set out a two-step process:

> We must first identify a 'public controversy' and secondly inquire into the nature and extent of the plaintiff's participation in that controversy.
>
> ... a public controversy has been defined as 'any topic upon which sizeable segments of society have different, strongly held views.' Attracting the public's interest is not enough. Thus, an essentially private dispute such as divorce, regardless of the public's interest, is not a public controversy. *Citations omitted.*

*Id. at 76.*

In <u>*Waldbaum v. Fairchild Publications,* 627 F.2d 1287, 1297 (D.C.Cir.1980)</u>, *cert. denied,* <u>449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980)</u>, the court articulated a test for the determination of a public controversy. The court stated:

> A general concern or interest will not suffice.... [The court] should ask whether a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution. If the issue was being debated publicly and if it had foreseeable and substantial ramifications for non-participants, it was a public controversy [footnotes omitted].

12

In this case, Dubai World argues that the defamatory statement involved a "public issue" and as such the standard that must be met by Mr. Jaubert is that the statement was made by Dubai World with actual malice or reckless disregard of whether it was false or not. The statement made by Dubai World's representative, however, was that Mr. Jaubert's submarines did not work and that there was evidence by Dubai World of Mr. Jaubert's fraud in overbilling for equipment purchases.

Looking at the content, form, and context of the statement made by Dubai World, there can be no finding that a public issue or controversy was involved. The statement was made solely in the interest of Dubai World and its specific business audience; there is no credible argument that this type of statement requires special protection to ensure that debate on public issues will be uninhibited, robust, and wide-open. Moreover, there has been no evidentiary support provided by Dubai World that documents the public issue it alleges exists.

Mr. Jaubert's alleged fraud in overbilling is not a public issue; nor is the question of his submarines working one that is being debated publicly or a matter that had foreseeable and substantial ramifications for non-participants. Certainly, Dubai World cannot prove that the topic of the submarines not working or the topic of Mr. Jaubert's alleged fraud are ones that 'sizeable segments of society have different, strongly held views.' As the Court held in *Della-Donna*, 'Attracting the public's interest is not enough.' *Id., at 76.* Mr. Jaubert is no longer in the business of manufacturing submarines since his flight from Dubai.

In the case at bar, although the facts are compelling in that they set out allegations that involve 1) a retired covert intelligence officer who 2) is a submarine and submersible manufacturer 3) who moved to Dubai to manufacture submarines and 4) who later escaped after being accused of embezzlement and fraud and was threatened with imprisonment and torture,

they do not meet the test for public controversy. The allegations are interesting; however, a reasonable person would not expect persons beyond Mr. Jaubert and Dubai World to feel the impact of the resolution of the issues in this case. The case is not being debated publicly, despite the interesting facts, and it hardly has substantial ramifications for non-participants. As such, it cannot be designated a public controversy and Mr. Jaubert did not become a limited public figure.

Regardless of the foregoing analysis, "Malice may be presumed ... by the actionable *per se* nature of the alleged publication. *Axelrod v. Califano,* 357 So.2d 1048 (Fla. 1st DCA 1978). In cases, however, where a qualified privilege exists, the element of malice may not be imputed but the plaintiff must prove express malice or malice in fact. Dubai World cannot claim a qualified privilege. As set forth above, Dubai World's representative made statements regarding Mr. Jaubert to a reporter that caused any privilege to vanish. As such, malice by Dubai World is presumed.

And, in Florida, express malice sufficient to overcome the presumption of good faith exists where the primary motive for the statement is shown to be an intention to injure the plaintiff. *Bass v. Rivera,* 826 So.2d 534 (Fla. 2d DCA 2002), quoting *Thomas v. Tampa Bay Downs, Inc.,* 761 So.2d 401, 404 (Fla. 2d DCA 2000)(finding that a fact issue remained as to the defendant's motive in making the alleged statements and that the trial court erred in granting summary judgment on the defamation count). Mr. AbdulQader Ali Obaid, as is evident from numerous emails, his demand to place an illegal lien against Mr. Jaubert's properties, his threat to imprison Mr. Jaubert, and his confiscation of and maintaining of Mr. Jaubert's passport, had every intent to injure Mr. Jaubert; together with the other evidence provided herein with respect to the abuse of process claim, above, the motivation of Mr. AbdulQader Ali Obaid is obvious.

Even if, as Dubai World claims, Mr. Jaubert must provide evidence that Dubai World's statement was made with "actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false or not," Mr. Jaubert has provided sufficient support for this element to overcome Dubai World's motion for summary judgment.

As to Mr. AbdulQader Ali Obaid's statement that the submarines 'didn't work,' Mr. Jaubert has provided substantial support that Mr. AbdulQader Ali Obaid knew, in fact that the submarines did work: numerous articles that appeared in the press regarding Exomos and the submersibles, together with photographs of the Chairman of the Board of Dubai World and Sheikh Mohammed al Makhtoum (Ruler of Dubai) at the Dubai Boat Show looking at the submarines in the water, the BMT Surveys, LLC's Pre-Risk Suvey that documented the submarines were operational, the email from Mr. Jaubert to AbdulQader Ali Obaid that advised him that 'the submarine was working as designed,' and the Affidavits of Mr. Jaubert and Paul Rodig, that confirm that the submarines worked and that Mr. AbdulQader Ali Obaid made the statement knowing it was false.

As to Mr. AbdulQader Ali Obaid's statement that 'auditors uncovered evidence of fraud involving overbilling for equipment purchases,' again, Mr. AbdulQader Ali Obaid knew that this was a false statement when he made it. This is based upon his own testimony initially that, 'we could not find any kind of an agreement or evidence to verify that [10% added] then later agreed that Dubai World's Chairman of the Board had approved this 10% charge. This was also confirmed by Dubai World's Chairman of the Board at his deposition and, most significantly, by the Exomos Financial Controller who testified that he inquired about these service charges and 'I have reported the matter to internal audit to do further investigation [in 2005] and 'I reported the matter to audit and audit investigated.'

Additionally, Mr. Jaubert's affidavit sets out that he had numerous meetings with Mr. AbdulQader Ali Obaid; in these meetings, Mr. Jaubert has attested that he advised Mr. Obaid repeatedly that handling charges that were paid to Seahorse Submarines International Incorporated had been approved by the Chairman of the Board of Dubai World (for years) as well as explaining legitimate and limited inventory issues and the lack of a qualified inventory auditor who was able to perform the audit at Exomos. Mr. AbdulQader Ali Obaid repeatedly ignored Mr. Jaubert's offer of proof of the foregoing; instead, Mr. AbdulQader Ali Obaid threatened Mr. Jaubert with imprisonment.

As such, there is sufficient question of material fact to determine, even under the strictest standard of proof required of a public figure involved in a public controversy, that Dubai World's representative made the defamatory statement with reckless disregard of whether it was false or not. Dubai World's representative knew of the vehement denial by Mr. Jaubert regarding the alleged overbilling; Dubai World's representative, who is the Group Internal Audit Chief, certainly knew that these charges had been approved by the Chairman of Dubai World; and Dubai World's representative knew that the submarines worked and had knowledge of this yet he made this defamatory statement regardless, and with actual malice.

There are certainly sufficient materials and evidence presented herein to overcome Dubai World's motion for summary judgment regarding Mr. Jaubert's defamation count.

Dated: August 4, 2010

/s William T. Hess
William T. Hess, Fla. Bar No. 801224
Hess & Heathcock, P.A.
40 SE Osceola St.
Stuart, FL  34994
E-mail: whess@hhfirm.com
Telephone: 772.223.0209

              Facsimile: 772.220.9727
              Counsel for Defendant/Counterclaimant
              Herve Jaubert and Defendant Seahorse
              Submarines International Incorporated

<u>CERTIFICATE OF SERVICE</u>

 I HEREBY CERTIFY that on August 4, 2010, I filed this document with the Clerk electronically through the CM/ECF system which caused all counsel of record to be served by electronic means.

              <u>s/ William T. Hess</u>
              William T. Hess