# EXHIBIT "C"
## ROSS, DIXON & BELL MEMO
## DATED 11/03/2005



# Memorandum

**To:** Mr. Hervé Jaubert
Mr. James Miller
Mr. Mohammed Amin
Exomos

**From:** James J. Dalessio, Esq.
D. Russ Hymas, Esq.

**Date:** November 3, 2005

**Re:** <u>Executive Compensation for Hervé Jaubert, CEO of Exomos</u>

As requested, we are providing Exomos with some preliminary guidance as it and its parent, the Ports, Customs & Free Zone Corporation (the "Port"), attempt to negotiate the remaining terms of the executive compensation package of Exomos' Chief Executive Officer, Hervé Jaubert. Mr. Jaubert's November 20, 2004 employment agreement with the Port (a copy of which is attached to this Memorandum) includes a provision titled "Profit Sharing," which states: "Details [of the 'Profit Sharing'] will be provided separately." We have been asked to prepare some "negotiation points" for Exomos to consider as it negotiates this item of compensation with Mr. Jaubert.

It is our understanding that Mr. Jaubert and Sultan Ahmed bin Sulayem, the Chairman of the Port, have generally discussed the terms of Mr. Jaubert's "profit sharing" in Exomos, and that Mr. Jaubert now desires to memorialize those discussions and create an enforceable agreement.[1] It is our further understanding that the parties have discussed compensating Mr. Jaubert in an amount equal to 20% (twenty percent) of the "net profits" of Exomos, although the parties have not specifically defined the terms and conditions when such "net profits" would be paid, if at all.

Below we briefly discuss some of the points the parties should consider in the negotiation. Before the parties finalize any proposed agreement, we strongly recommend that legal counsel for the Port and the Port's accountants review the proposed agreement to ensure it fully complies with the laws of Dubai and the UAE.

- <u>Definition of Net Profits</u>: The starting point of the parties' discussions should focus on how the "net profits" of Exomos will be defined for purposes of any proposed agreement between Exomos and the Port, on the one hand, and Mr. Jaubert, on the other. Admittedly, this term is generally understood by most businesspersons, and refers to the actual revenue (or income) generated by a company after deducting all expenses for a given period. However, for purposes of

---

[1] We have not analyzed whether, under Dubai law or the laws of the United Arab Emirates, Mr. Jaubert could enforce the "Profit Sharing" provision, which appears at best to be an "agreement to agree" in the future to negotiate this item of compensation, or whether or not the alleged discussions between Mr. Jaubert and Sultan bin Sulayem resulted in a valid, enforceable agreement. We would be more than happy to research these issues if instructed to do so.

632686 v 2

DW 0047566



the proposed agreement with Mr. Jaubert, the parties should clearly identify what items will be included in determining the "net profits" of Exomos. Below are a few methods that may be used to define the term "net profits":

- *General Accounting Standards.* One option is have the net profits determined under the applicable accounting standards, which will set forth the items that are required (or permitted) to be included and excluded as part of a company's net profits. In the U.S., all financial reporting is governed by the U.S. Generally Accepted Accounting Principles ("GAAP"). Other countries adhere to the International GAAP, or the International Financial Reporting Standards ("IFRS"). We have not been asked to determine whether Dubai and/or the UAE customarily use any of the above-mentioned accountancy standards, or whether one standard (and its accompanying treatment of "net profits") would be preferable to the Port over another accountancy standard. Please let us know if you would like us to answer these questions, as clearly they are an important to the proposed profit sharing agreement.

- *Consistent with Exomos' Practices.* Another alternative is to define "net profits" for purposes of the agreement the same way that term is used by Exomos and/or the Port in other aspects of its business. Here, you could include language such as "…consistent with the practices of the Chief Financial Officer in determining the net profits of the company." Further, Exomos would retain a significant amount of latitude by utilizing language such as "…as determined in the sole judgment of the Chief Financial Officer of the company."

- *Specific Items to be Included/Excluded.* A third option is to express in the proposed agreement the items that will be included as income or deducted as expenses in determining net profits. This option may be utilized either: (a) in conjunction with one of the options mentioned above in order to limit the discretion of the Company and/or resolve ambiguities under the accounting standards (*e.g.*, "…as determined in the sole judgment of the Chief Financial Officer, but specifically excluding any income resulting from Company investments in other business entities"); or (b) to set forth *all* the items to be included in determining the Company's net profits. The advantage of the latter, of course, is that each of the parties will have a clear understanding of how the Company's net profits will be calculated. Nevertheless, it does impose a burden on the parties to ensure all appropriate items are accounted for, and could be particularly onerous if, subsequent to signing any proposed agreement, the Company took on a new expense or generated a new type of income that should be included in the net profit calculation (since the agreement with Mr. Jaubert would need to be amended to account for such).

**RDB**

Page 3

- o   *Period of Time.* Regardless of the method used to calculate net profits, the parties should set forth the period of time over which the net profits will be determined (*e.g.*, calendar year, fiscal year, etc.), as well as the time period within which Exomos will have to deliver the compensation owed to Mr. Jaubert after such determination (*e.g.*, "within 60 days after the end of the fiscal year").

- o   *Profits from Operation vs. Sale.* Finally, the parties may also wish to consider whether Mr. Jaubert will be entitled only to a portion of the net profits earned by Exomos in connection with its operations over a specified period of time, or whether he might also be entitled to a portion of the net profits should Exomos sell all, or a substantial portion, of its assets and/or shares to a third party.

- Percentages. As noted, it is our understanding that the parties have preliminarily discussed that Mr. Jaubert will receive 20% of the net profits each year he is employed with Exomos. It is our further understanding that, after five (5) years of continuous employment with the Company, Mr. Jaubert may receive an additional 50% of the net profits on the year in which he leaves the Company. The parties may want to consider the following additional provisions as they negotiate these percentages:

  - o   Since this type of compensation is incentive-based, some agreements provide benchmarks based upon the executive's performance. For example, Mr. Jaubert could receive 15% of the net profits if the total amount of net profits exceeds $_____, 20% if the total amount of net profits exceeds $_____, and 25% if the total amount of net profits exceeds $_____. This structure would entice Mr. Jaubert to perform in such a way that Exomos meets its net profit projections for a given year, and would also reward Mr. Jaubert for exceeding those expectations.

  - o   Also, with respect to the 50% net profit payment to be made to Mr. Jaubert upon the termination of his employment with Exomos, the parties may want to include:

    - whether the Company will require Mr. Jaubert to remain with Exomos for a specified number of years before he is entitled to any such payment;

    - whether Mr. Jaubert would still be entitled to this payment if he were terminated "for cause;"

    - whether the portion of net profits received by Mr. Jaubert will be prorated should Mr. Jaubert's employment terminate before year's end; and/or



Page 4

- whether the net profits will be determined solely based on the year in which Mr. Jaubert leaves the Company (or based on an average of the Company's net profits over a specified number of years).

The foregoing are a few preliminary (albeit, key) items we wanted to bring to your attention prior to the commencement of the negotiation regarding this item of compensation for Mr. Jaubert. We would be more than happy to assist in the preparation of any proposed agreement between the Port and Mr. Jaubert, and/or to participate on behalf of the Port and Exomos in the negotiation between the parties. Should you require more specific, or additional, information please let us know.

632686 v 2