UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:09-CV-14314-MARTINEZ

DUBAI WORLD CORPORATION, and its
subsidiaries, EXOMOS, NAKHEEL and
PALM MARINE

        Plaintiffs,

vs.

HERVE JAUBERT, SEAHORSE
SUBMARINES INTERNATIONAL
INCORPORATED, and Does 1-99,

        Defendants.
_____/

**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE
MISCHARACTERIZATIONS OF SULTAN AHMED BIN SULAYEM'S NAME AND
POSITION, IRRELEVANT AND INFLAMMATORY EVIDENCE, TESTIMONY OR
CLAIMS INTENDED TO INFLAME AN ANTI-ARAB SENTIMENT, AND
ANECDOTAL EVIDENCE OF BUSINESS DIFFICULTIES IN THE UNITED ARAB
EMIRATES AND DUBAI AND ACCOMPANYING MEMORANDUM OF LAW**

    Plaintiffs Dubai World Corporation and its subsidiaries, Exomos, Nakheel and Palm Marine (collectively, "Dubai World"), move, pursuant to Federal Rules of Evidence 401, 402 and 403, to exclude mischaracterizations of Sultan Ahmed Bin Sulayem's name and position; to exclude irrelevant and inflammatory evidence, testimony, or claims intended to inflame an anti-Arab sentiment; and anecdotal evidence of business difficulties of third parties in the United Arab Emirates and Dubai. This motion should be granted for the reasons set forth in the memorandum of law below.

<b><u>MEMORANDUM OF LAW</u></b>

**A.**     <u>**General Background**</u>

    In this action, Dubai World seeks to recover the millions of dollars it lost as a result of

Defendant Herve Jaubert's ("Jaubert") wrongful conduct as CEO of Exomos, a personal luxury submarine business that Jaubert led to financial disaster. As set forth in the Complaint, Jaubert fraudulently induced Dubai World to hire him as CEO of this new business by falsely representing himself as an expert in the design and construction of submarines. He then misused his position as CEO to funnel millions of dollars in improper payments back to a company owned by him and his wife (Defendant Seahorse) and then ultimately failed to produce any viable submarines for which payment had been made.

When confronted with mounting evidence of his wrongdoing and after his arrest for, *inter alia*, wrongfully importing sniper bullets, Jaubert fled Dubai and returned to Florida. Upon his return, he began a scheme to extort money from Dubai World by seeking millions is payments to "bury" the publication of a book, *Escape from Dubai*, which would purport to be an account of his life story.[1] When the extortion scheme fell apart, Jaubert published the book anyway, and filled its pages with a derogatory and inflammatory narrative concerning Dubai World and its principals, as well as Dubai, its citizens, government, culture, religion and society.

In addition, Jaubert counterclaimed in this action and has used this lawsuit as a vehicle to harass Dubai World and its Chairman and other leaders.

**B.    Misstatements Regarding Dubai World's Chairman of Board as "Sultan of Dubai"**

Sultan Ahmed Bin Sulayem, the Chairman of the Board of Dubai World, has been referred to as "the Sultan of Dubai" on at least one occasion in this case. DE93 at 14 (magistrate order). As Mr. Sulayem has testified, however, "Sultan" is his first name; he is the Chairman of the Board of Dubai World; and there is no evidence that he holds any position, much less a

---

[1] While Dubai World learned much of this scheme during discovery, Magistrate Lynch did not permit Dubai World to obtain unredacted copies of correspondence between himself and his ghost writer who happens to be a lawyer. An appeal of this portion of the Magistrate's ruling is pending. DE102-03 (filed under seal).

preeminent position, within the government of the Emirate of Dubai. Sulayem Depo. at 5, 11. Sultan in fact is a common first name in his country.

Jaubert has not contended or produced any evidence to the contrary. In his Counterclaim, Jaubert alleges that he and Mr. Sulayem had a number of meetings and that Mr. Sulayem "acted as representative[] and agent[] of the plaintiff/counter-defendant Dubai World Corporation." See DE44 ¶¶ 96-101, 108,122. His Counterclaim does not allege that Mr. Sulayem is the "Sultan of Dubai," the ruler of the Emirate of Dubai, or a member of Dubai's government. See DE44.

C.    **Evidence of Anti-Arab Prejudice**

Jaubert extensively has expressed his anti-Arab sentiment and has attempted to impute same into this action. On his website, in which his book, *Escape from Dubai*, is publicized as his "true life story," see www.escapefromdubai.com (last visited August 25, 2010), Jaubert calls members of Dubai World "nefarious Emiratis" and accuses them of holding him hostage and engaging in coercion and extortion. Id. He also describes "the iron-clad fists of the Dubai Government and its corrupt legal system." Id.

Jaubert's book is, in fact, replete with inflammatory anti-Arab themes, presenting a very negative view of both the Emirate of Dubai and Dubai World. Jaubert Depo. at 97, Exhibit 2. Chapter 11 of *Escape from Dubai* opens with the following passage:

> Dubai, as a whole, is a bottomless pit of Emiratis who lie convincingly. They are able to entice innocent foreigners to their country, promising them a better life, only to devour them later, till they are bare to the bone. I, like many others, became part of these acquired goods. Under this unethical and tainted government, Dubai officials set out to destroy expatriates through intimidation and allegations of embezzlement. This is used to justify trial and imprisonment. Expatriates find themselves with only a snowball's chance in hell of getting out with their life and their sanity intact. I was accused of similar allegations. I could be facing life in prison for not being able to pay a fine, or death for having dared to escape and to write a book about my experience.

Id. at 219. Jaubert then dives into a laundry list of attacks on Dubai's citizens, government, legal system, culture, religion and society, including broad-based condemnations of people of Arab descent and aspects of the Islamic faith and its tenets. Jaubert writes:

- "Crimes of tortures [sic] and slavery remain undisclosed, and in the hands of these Sheikhs, are fully dismissed. 'Do as I say, not as I do,' is a motto highly practiced among the Emiratis of all levels." Id. at 220.

- "Most Emirati nationals are government employees as they cannot outperform expats in the private sector." Id. at 220-21.

- "If the foreigners were to leave the country, the UAE Emiratis would go back to the dark ages." Id. at 221.

- "Their mentality dates back to the medieval ages. In the privacy of their homes, they still sit on the floor and eat with their fingers." Id. at 222.

- "Segregation is a state policy in the UAE." Id. at 229.

- "[Emirati men] are allowed to have up to four wives. So they keep them on the side and provide for them … If by chance you see an Emirati with his wife, it is always with the newest one." Id. at 236.

- "Women visiting Dubai should not fool themselves. Emirati men consider all Western women whores." Id. at 237.

- "Civil matters in the UAE are crimes. An executive, CEO, or manager of a company can be accused of mismanagement or breach of trust by the owner and be imprisoned indefinitely without charges or evidences [sic]. This is Sharia law, applicable to everyone – including non-Muslims." Id. at 260.

- "The police know [about illegal prostitution] and just look the other way,

apparently with the permission of the government." Id. at 275.

- "But no one would dare speak out against Sheik Mo or launch an investigation. He owns the courts, the judges, and the prosecutors." Id. at 293.
- "Emiratis get away with torture and sometimes even murder." Id.
- "All of these Constitutional rights for women are outright lies. Judge for yourself – under Sharia law, oral divorce is still legal in the UAE, but only for men." Id. at 296.

Similarly, many of the questions asked of Sultan Ahmed Bin Sulayem during his deposition bear a striking resemblance to these gross generalizations. He was questioned, without any relevance, about his marital status and the number of wives he had (Sulayem Depo. at 91); the legality of extramarital affairs in Dubai (Id. at 92, 96-97); prostitution in Dubai (Id. at 93, 96-97, 105); and the legality of murder in Dubai (Id. at 96).

Jaubert continues to denigrate the sovereign emirate of Dubai and its people and culture in an apparent attempt to inflame potential anti-Arab sentiments that may be held by a jury and to cause unfair prejudice to Dubai World. His attempts should not be permitted at trial.

# ARGUMENT

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Furthermore, even if relevant, evidence still "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." U.S. v. McGee, 2010 WL 1952872 * 1 (11th Cir. 2010); Fed. R. Evid. 403.[2]

Here, the evidence and testimony Dubai World moves to exclude is irrelevant and inadmissible and, even if found to be relevant, has a probative value which is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

### A. Mischaracterization of Sultan Ahmed Bin Sulayem as "the Sultan of Dubai" Should Be Excluded As Wrong, Irrelevant, and Unfairly Prejudicial

Sultan Ahmed Bin Sulayem has been referred to as "the Sultan of Dubai." DE93 at 14 (magistrate order). As set forth above, however, Mr. Sulayem has not testified as to any position with the Dubai Government, Sulayem Depo. at 5, 11, nor does any other evidence to that effect exist. Nor does Jaubert contend or allege that Mr. Sulayem has any position with the Dubai

---

[2] In turn, motions in limine are "well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." United States v. Tokash, 282 F.3d 962, 968 (7th Cir. 2002); Walden v. Georgia-Pacific Corp., 126 F.3d 506, 518 (3d Cir. 1997) ("the motion *in limine* provides a useful tool for eliminating unnecessary trial interruptions."). "The admissibility of evidence is committed to the broad discretion of the district court, and the decision to exclude certain evidence will be reversed only upon a clear showing of abuse of discretion" Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1554 (11th Cir. 1995); see also SCNO Barge Lines, Inc. v. Anderson Clayton & Co., 745 F.2d 1188, 1192 (8th Cir. 1984) ("The district court is vested with broad discretion to determine the relevance of proffered evidence[, and] its ruling will not be overturned unless there is a clear and prejudicial abuse of discretion.").

Government, must less as "*the* Sultan of Dubai." See, e.g., DE44 ¶¶ 96-101, 108, 122.

In fact, neither Mr. Sulayem nor anyone else employed by or representing Dubai World is the "Sultan of Dubai" and this Court should exclude any such reference as baseless and irrelevant. Fed. R. Evid. 402.

Indeed, referring Sultan Ahmed Bin Sulayem's as "the Sultan of Dubai," if allowed, would significantly mislead the jury and unfairly prejudice Dubai World, particularly when, as here, one of the claims being asserted against Dubai World is that it abused the process of the Dubai Courts. References to the "the Sultan of Dubai" have no bearing here and should be excluded by this Court. Fed. R. Evid. 403.

Jaubert has indicated that he agrees that Mr. Sulayem is not "the Sultan of Dubai."

**B.  Irrelevant and Inflammatory Evidence, Testimony, or Claims Intended to Inflame Anti-Arab Sentiment Should Be Excluded Because the Danger of Unfair Prejudice, Confusion and Misleading the Jury Outweighs Any Probative Value**

It cannot be ignored that we are less than ten years from the horrific events of September 11, 2001. While Dubai World trusts that the voir dire process will eliminate jurors harboring blatant prejudices, many Americans hold, perhaps even subconsciously, deep-rooted suspicions against those of Arab descent. This risk is even higher while many are still affected by these losses, just as courts had to address similar biases against Germans, Japanese and Italians after World War II and Southeast Asians after the Vietnam War.

For these reasons, courts have held that evidence or testimony that does nothing more than impute irrelevant bias as to, as in this case, anti-Arab sentiment, is improper and should be excluded. See, e.g., Kaplan v. DaimlerChrysler, A.G., 331 F.3d 1251, 1256 n. 3 (11th Cir. 2003) (motion in limine filed in action involving German car manufacturer to exclude derogatory statements regarding Nazis and concentration camps, among other things, and citing case in

which new trial was granted after Anti-Arab bias was revealed post-trial); U.S. v. Anderson, 94 Fed. Appx. 487, 492 (9th Cir. 2004) (evidence of membership in Mormon Church was properly excluded where it was irrelevant to defense at issue in the case); U.S. v. Brown, 2008 WL 2660587 * 2, n. 5 (S.D. Ga. 2008) ("the prosecution cannot convict on the basis of the defendant's ethnic background or national origin and injecting racial or ethnic references can be unfairly prejudicial," while distinguishing between relevant and unfairly prejudicial information designed to "inflame juror passions in an effort to convict merely because a defendant is, for example, an Arab Muslim").

Accordingly, this Court should exclude any and all unnecessary evidence aimed at improperly inflaming any potential anti-Arab or anti-Muslim sentiment that Jaubert may seek to impute into the controversy pursuant to Fed. R. Evid. 403.

Indeed, as set forth more fully above, Jaubert already extensively has expressed such sentiment and has attempted to impute same into this action in, among other things, his book, *Escape from Dubai*; his website, www.escapefromdubai.com; and, even in this action, in the deposition of Mr. Sulayem. Certainly, such anti-Arab statements and sentiments espoused in Jaubert's book and website, and about which Jaubert attempted to illicit testimony from Mr. Sulayem, are irrelevant to any issue in this case and properly excluded as irrelevant. Fed. R. Evid. 402.

What is more, even if such anti-Arab statements and sentiments had some probative value, which they do not, any such relevance would be outweighed by the risk of undue prejudice under Rule 403. Evidence and testimony regarding any such racial, religious, or ethnic attacks, including, allegations of generalized corruption by the Dubai government, courts, judges or prosecutors; Emiratis, Arabs, or Muslims; Dubai's Sheikhs or men; the culture and societal

norms in Dubai, under Sharia law, or related to the Muslim religion; the alleged segregation in Dubai; the number of wives, extra-marital affairs, prostitution, or purported mistreatment of women in Dubai; the purported discrimination against non-Muslims in Dubai; and generalized allegations of torture and murder have no relevance other than to illicit an anti-Arab sentiment in members of the jury to the substantial prejudice of Dubai World. Such evidence or testimony would risk unfair prejudice to Dubai World, while bearing no probative value to any matter at issue as to Dubai World.

### C. Evidence of Anecdotal Evidence of Business Difficulties in the United Arab Emirates and Dubai

For the same reasons set forth in Part B supra, Jaubert should be prevented from presenting any anecdotal "evidence" of business difficulties that third parties to this litigation may have experienced in Dubai generally, or at Dubai World or any of its subsidiaries in particular, except as relates to Jaubert himself. The record is replete with examples of Jaubert recounting, or attempting to impute into this litigation, anecdotes about foreign businessmen or their experiences in Dubai that are wholly unrelated to any issue in this case.

Such evidence is inadmissible as irrelevant and improper character evidence. FRE 401, 404. Even if relevant, the probative value of such evidence is outweighed by the undue prejudice.

As set forth above, Jaubert states, in his book, *Escape from Dubai*, that a "CEO" can be accused and imprisoned with nothing more than bare allegations in Dubai. According to Jaubert, this occurs routinely and will be applied to natives and foreigners alike. This is improper opinion testimony, as Jaubert is not an expert in Dubai law. FRE 701.

Similarly, Jaubert has identified a number of witnesses, the purpose of whose testimony is, at best, unclear but appears to be to provide anecdotal evidence as to their own experiences in

Dubai. Such evidence is not relevant to any issue in this case. Specifically, in response to the Second Set of Interrogatories served by Dubai World on Jaubert, Jaubert identified well over ten witnesses who allegedly will testify at trial regarding their "experiences in Dubai" and their "experiences subsequent to leaving Dubai." Some of these witnesses are identified as having worked for Dubai World, while others apparently did not. See Ex. A. The only possible purpose in offering these witnesses is to create, in the minds of the jury, a defined prejudice of the treatment of businessmen by Dubai World and others in Dubai.

And, in his production in this case, Jaubert has produced news articles and e-mails relating to purported difficulties suffered by third parties in Dubai. For example, Jaubert produced documents entitled "Australian ex Army officer detained in Dubai for 'what the [expletive omitted]?'" and "Visitors are being held captive for months after passports are confiscated for minor offenses in Dubai." Various related correspondences from and to http://detainedindubai.org/ Detained_In_Dubai/Herve_Jaubert_Case.html, pertaining to an organization by the name "Detained in Dubai," to which Jaubert admitted acting as a consultant, also were produced by Jaubert. (See composite Ex. B).

As is evident, Jaubert has and no doubt will continue to interject such irrelevant anecdotal evidence into this case. Such evidence is irrelevant, has no probative value, and will serve the exclusive role of confusing the jury and prejudicing Dubai World.

## CONCLUSION

For the foregoing reasons, an Order granting this motion in limine (1) preventing defendants from mischaracterizing Sultan Ahmen Bin Sulayem's name and position and (2) excluding any attempt to inflame or rely on anti-Arab sentiment is justified.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

Pursuant to S.D. Fla. Local Rule 7.1(a)(3), undersigned counsel for Plaintiffs certifies that they conferred with counsel for Defendants regarding the relief requested herein, and that Defendants indicated that they are unable to agree at this time.

/s Annette C. Escobar
Annette C. Escobar

Dated August 30, 2010

Respectfully submitted,

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Tel.: (305)372-8282; Fax: (305) 372-8202
E-mails: emullins@astidavis.com
aescobar@astidavis.com

By: /s Annette C. Escobar
Edward M. Mullins & Annette C. Escobar
Fla. Bar Nos. 863920 & 369380
Local Counsel

and

Faith E. Gay, Fla. Bar No. 129593
& David L. Elsberg*
E-mail: faithgay@quinnemanuel.com
davidelsberg@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel.: (212) 849-7000; Fax: (212) 849-7100

A. William Urquhart* & Laith D. Mosely*
E-mails: billurquhart@quinnemanuel.com
laithmosely@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Tel.: (213) 443-3000; Fax: (213) 443-3100

ATTORNEYS FOR PLAINTIFFS

*Admitted *pro hac vice.*

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 30, 2010 I filed the foregoing document with the Clerk of the Court who will generate Notices of Electronic Filing to all counsel of record or other persons authorized to receive Notice of Electronic Filing generated by CM/ECF, including counsel for Defendants/Counterclaimant, William T. Hess, Hess & Heathcock, P.A., 40 SE Osceola St., Stuart, FL 34994.

By: /s Annette C. Escobar
Annette C. Escobar