UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:09-CV-14314-MARTINEZ

DUBAI WORLD CORPORATION, and its
subsidiaries, EXOMOS, NAKHEEL and
PALM MARINE

      Plaintiffs,

vs.

HERVE JAUBERT, SEAHORSE
SUBMARINES INTERNATIONAL
INCORPORATED, and Does 1-99,

      Defendants.
_____/

**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE USE OF AUDIO
PURPORTING TO BE RECORDING OF "INTERROGATION" OF
HERVE JAUBERT AND ACCOMPANYING MEMORANDUM OF LAW**

  Plaintiffs Dubai World Corporation and its subsidiaries, Exomos, Nakheel and Palm Marine (collectively, "Dubai World"), move, pursuant to Federal Rules of Evidence 403 and 1002, to exclude Defendants' use of audio purporting to be a recording of an alleged "interrogation" and torture of Defendant Herve Jaubert by Dubai police. Under both the general exclusion principles of unreliable and unduly prejudicial testimony under F.R.E. 401 and 403 and the "best evidence" rule of F.R.E. 1002, the audio should be excluded.

  Defendants seek to rely on this inflammatory and self-serving audio, but admit that no original of the recording exists. And, while Defendants contend the audio was "transcribed" from the original, they provide no details as to how or under which circumstances this alleged transcription was done.

  Furthermore, and more importantly, Defendants have provided no answer to the **unrebutted** testimony of Plaintiffs' expert witness, who has analyzed the audio and has opined

that it is not a genuine recording of an interrogation and has raised questions of authenticity and reliability. Under the applicable rules of evidence, Jaubert's failure to rebut this testimony alone merits the granting of Plaintiffs' motion.

## MEMORANDUM OF LAW

A.  **General Background**

In this action, Dubai World seeks to recover the millions of dollars it lost as a result of Defendant Herve Jaubert's ("Jaubert") wrongful conduct as CEO of Exomos, a personal luxury submarine business that Jaubert led to financial disaster. As set forth in the Complaint, Jaubert fraudulently induced Dubai World to hire him as CEO of this new business by falsely representing himself as an expert in the design and construction of submarines. He then misused his position as CEO to funnel millions of dollars in improper payments back to a company owned by him and his wife (Defendant Seahorse) and then ultimately failed to produce any viable submarines for which payment had been made.

When confronted with mounting evidence of his wrongdoing and after his arrest for, *inter alia*, wrongfully importing sniper bullets, Jaubert fled Dubai and returned to Florida. Upon his return, he began a scheme to extort money from Dubai World by seeking millions is payments to "bury" the publication of a book, *Escape from Dubai*, which would purport to be an account of his life story.[1] When the extortion scheme fell apart, Jaubert published the book anyway, and filled its pages with a derogatory and inflammatory narrative concerning Dubai World and its principals, as well as Dubai, its citizens, government, culture, religion and society.

In addition, Jaubert counterclaimed in this action and has used this lawsuit as a vehicle to

---

[1] While Dubai World learned much of this scheme during discovery, Magistrate Lynch did not permit Dubai World to obtain unredacted copies of correspondence between himself and his ghost writer who happens to be a lawyer. An appeal of this portion of the Magistrate's ruling is pending. D.E. 102-03 (filed under seal).

2

harass Dubai World and its Chairman and other leaders.

Part of the "evidence" Jaubert seeks to rely on in defense against Plaintiffs' claims, and in support of his own counterclaims, is an audio recording of what Jaubert contends was his "interrogation" at the hands of Dubai governmental authorities. It is this audio that Plaintiffs seek to exclude through the instant motion.

### B. The Audio Recording of Jaubert's Alleged "Interrogation"

Jaubert claims that before his "escape" from Dubai, he was subjected to interrogation by Dubai police, during which he alleges he was verbally intimidated and threatened with torture by them. (E.g., ¶ 125 of Amended Answer and Counterclaims, D.E. 44). In response to an interrogatory from Plaintiffs regarding the circumstances of the alleged interrogation and recording,[2] Jaubert stated that he was able to record the audio of one such interrogation by use of his mobile phone, which he says was on his person during the interrogation. (See Answer No. 21 to Defendants' Second Set of Interrogatories).

Conveniently, Jaubert claims that the mobile phone, model Nokia 9300, id., was lost - in particular, that the phone was "left in Dubai in April 2008 in a gas station." Id. He has provided no elaboration as to how his phone, which allegedly contained a vital recording of his "interrogation," simply was "left" at a random gas station in Dubai.

---

[2] Interrogatory no. 21 of Plaintiffs' Second Set of Interrogatories asked Jaubert to:

> Identify, to the extent applicable with reference to Bates numbers, and explain the chain of custody of the alleged recording of your claimed interrogation, including, but not limited to, the proprietary file format of the initial and subsequent recording and "copies," the names, addresses, phone numbers, and roles of each person associated with the transfer of the initial recording, both as physical evidence and in its transfer to different formats, such as audio cassette, when all such transfers occurred, the circumstances under which all such transfers occurred, and the name, address, and phone numbers of each person responsible for transferring and/or transcribing the recording.

3

Although he claims he lost his phone containing the purported interrogation recording, Jaubert contends that he "transcribed" the recording from the phone. Id. Yet, as part of that same response, he unequivocally stated that he was "never able to copy or download this recording." Id. (emphasis added). The only logical reading of this statement is that the purported audio recording was a **re-enactment** or **recreation** of the alleged interrogation, i.e., it cannot be a duplicate of the actual, original recording, as such duplication would not have been possible without the original being copied or downloaded from the phone, and Jaubert states neither occurred.

Jaubert provided no details as to how or under which circumstances he "transcribed" the audio. He likewise failed to provide any of the other details asked in Plaintiffs' interrogatory, such as the recording's chain of custody.

To the contrary, an editor who assisted Jaubert's with the writing of his book, Escape from Dubai, and whom had heard the audio testified: "I heard the recordings, and I just thought they sounded very scripted. They didn't sound like I expected them to sound, I guess you could say." Cowden Depo., at 48-49 (see Exhibit "A").

Thus, apart from the scant information provided by Jaubert as to the audio's origin or reliability, Defendants had the audio analyzed by Edward Primeau, an audio forensics expert with more than 26 years of experience and who has testified as an expert witness in numerous other cases on similar issues. Taking into account the fact that Mr. Primeau issued an expert report in which he opined, inter alia, that the audio is "not genuine" and is a "fabricated dialogue between two people who are obviously reading a script," this Court should exclude the audio tape from use as evidence at trial. (Page 1 of Primeau's Report, attached hereto as Exhibit "B").


## ARGUMENT

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Furthermore, even if relevant, evidence still "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." U.S. v. McGee, 2010 WL 1952872 * 1 (11th Cir. 2010); Fed. R. Evid. 403.[3]

Here, whatever probative value the audio might have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, in light of the questionable circumstances as to the audio's origin and reliability. There is a substantial risk that the audio would lead to unfair prejudice, confusion of the issues, or the jury being misled, as the audio purportedly contains references to physical torture and other abuses that could understandably influence the jury. At the same time, there is no evidence that the tape is reliable.

Separately, the audio also should be excluded under the "best evidence" rule of the Federal Rules of Evidence, under which the contents of a recording generally must be

---

[3] In turn, motions in limine are "well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." United States v. Tokash, 282 F.3d 962, 968 (7th Cir. 2002); Walden v. Georgia-Pacific Corp., 126 F.3d 506, 518 (3d Cir. 1997) ("the motion *in limine* provides a useful tool for eliminating unnecessary trial interruptions."). "The admissibility of evidence is committed to the broad discretion of the district court, and the decision to exclude certain evidence will be reversed only upon a clear showing of abuse of discretion" Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1554 (11th Cir. 1995); see also SCNO Barge Lines, Inc. v. Anderson Clayton & Co., 745 F.2d 1188, 1192 (8th Cir. 1984) ("The district court is vested with broad discretion to determine the relevance of proffered evidence[, and] its ruling will not be overturned unless there is a clear and prejudicial abuse of discretion.").

established through the original of the recording, or the "best evidence" of the contents. Although under certain circumstances copies of a recording may be introduced in lieu of the original, that may only be done when there is no genuine issue as to the authenticity of the copy. Here, this exception does not apply, as Plaintiffs have proffered **unrebutted** expert testimony challenging the authenticity of the audio.

Federal Rule of Evidence 1002, entitled "Requirement of Original," provides that "To prove the content of a writing, recording, or photograph, **the original writing, recording, or photograph is required**, except as otherwise provided in these rules or by Act of Congress." Id. (emphasis added).

Federal Rule of Evidence 1003 echoes the requirements of Rule 1002, but states that a "duplicate" of a recording "may be admissible to the same extent as an original, **unless** (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Id. (emphasis added).

Here, Jaubert has stated under oath that the original audio is not available, as the phone on which he allegedly recorded the audio was lost somewhere in Dubai. Supra, at 3. And, while he claims to have "transcribed" the audio from the phone (without providing any details), he also stated that he was "never" able to "copy" or "download" the audio from the phone. Thus, Jaubert would seek to use the "transcription" in lieu of the original. Whatever this "copy" consists of, it should be excluded under Rule 1002, as Plaintiffs have raised a genuine question as to the authenticity of the audio, including through the unrebutted testimony of Mr. Primeau.

The Court thus should exercise its discretion in excluding the audio. See United States v. Yevakpor, 419 F. Supp. 2d 242, 250 (N.D.N.Y. 2006) (trial court has discretion to not admit audio recordings where "circumstances surrounding it are so suspicious and make it so

untrustworthy that it should not be admitted into evidence in the first place").

Indeed, the circumstances here are not unlike those in Sissom v. Purdue University, 2006 WL 897572 (N.D. Ind. 2006). There, the court, applying the "best evidence" rule, rejected "**self-transcribed transcriptions**" submitted by plaintiff of alleged taped conversations, finding that the transcriptions were "incomplete, unreliable, and ridden with hearsay statements," and were not the best evidence of the conversations. Id. at *5 (emphasis added). The court additionally found that the plaintiff had failed to "provide the proper foundation to show that the original recording is accurate, trustworthy, and what he claims it to be," namely, "**a true, accurate, and authentic recording of the asserted conversation by the claimed parties.**" Id.; see also Garcia v. Texas Dep't. of Human Services, 2004 WL 1638240, *5 (W.D. Tex. 2004) (granting defendant's motion to exclude from evidence tapes purportedly depicting deposition and transcript of deposition, where plaintiff failed to provide "sufficient evidence to support a finding that the document purporting to be a transcript of [the] deposition and the videotapes are accurate and complete representations of the [deposition] testimony"); Molodecki v. Robertson Display, Inc., 2002 WL 34421226, *3 (M.D. Fla. 2002) (noting that Rule 1002 provides that "to prove the content of a recording, the original recording is required," that "the tape of the recorded conversation is the best evidence of the conversation," and striking affidavit relating to conversation based on Rule 1002); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 168 F. Supp. 2d 57, 61 (S.D.N.Y. 2001) (granting motion to exclude purported transcript of witness interview where party seeking to rely on transcript did not meet burden of showing it was an accurate representation of interview).

## CONCLUSION

For the foregoing reasons, an Order granting this motion in limine preventing Defendants from using the audio purporting to be a recording of Jaubert's "interrogation" is justified.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)

Pursuant to S.D. Fla. Local Rule 7.1(a)(3), undersigned counsel for Plaintiffs certifies that they conferred with counsel for Defendants regarding the relief requested herein, and that Defendants indicated that they are unable to agree at this time.

/s Annette C. Escobar
Annette C. Escobar

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 30, 2010 I filed the foregoing document with the Clerk of the Court who will generate Notices of Electronic Filing to all counsel of record or other persons authorized to receive Notice of Electronic Filing generated by CM/ECF, including counsel for Defendants/Counterclaimant, William T. Hess, Hess & Heathcock, P.A., 40 SE Osceola St., Stuart, FL 34994.

By: /s Annette C. Escobar
ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.
Edward M. Mullins & Annette C. Escobar
Fla. Bar Nos. 863920 & 369380
Local Counsel
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Tel.: (305)372–8282; Fax: (305) 372–8202
E–mail: emullins@astidavis.com

and

Faith E. Gay, Fla. Bar No. 129593 &
David L. Elsberg*
E–mails: faithgay@quinnemanuel.com
         davidelsberg@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel.: (212) 849–7000; Fax: (212) 849–7100

A. William Urquhart* & Laith D. Mosely*
E–mails:   billurquhart@quinnemanuel.com
           laithmosely@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Tel.: (213) 443–3000; Fax: (213) 443–3100

ATTORNEYS FOR PLAINTIFFS

*Admitted *pro hac vice*.