# EXHIBIT "B"

# Curriculum Vitae



Edward John Primeau, RI

501 Lockmoore Ct

Rochester Hills, Michigan 48307

248-853-4091
Studio

248-853-4098 Fax

©2010

www.primeauproductions.com

Ed@PrimeauProductions.com

Since 1984, I have concentrated on diverse set of skills acquired within the audio visual field as an audio engineer, video director and producer, and have a strong background in audio video production on various editing formats and systems.

In 1979, I began as an apprentice audio engineer and was trained to record and edit spoken word recordings such as training tapes and audio books. I remained a dialog editor using razor blade editing as the only form of audio editing available back then. I used my audio perception (not visual perception which is how audio editing is executed today) to match voice tone and levels as well as create smooth content and flow for these products.

That apprenticeship led me to becoming a full time audio engineer for nearly 8 years. In 1986 I left Ambience Recordings where I completed my apprenticeship and worked as a full time audio engineer and began to work for my part time business Primeau Productions.

I attended the University of Detroit from 1979 to 1985 with my major in communication studies and a minor in criminal justice. While at the University, I was a volunteer probation officer for the 53rd district court in Troy Michigan under judge Drewery.

Since then, I have completed dozens of audio and video evidence based cases for many courts and attorneys across the United States. I have authored several articles that have been published by LEVA, NSA, TASA, and Midwest Meetings. I authored the book "The Art of Production" as well as the E Book "The Video Revolution".

I am a member of AES, ACFE, IAI, and NSA. I earned a merit award in 1993 from the Michigan chapter of The National Academy of Television Arts and Sciences for sound restoration on an NBC show "Peter and the Wolf".

As a Registered Investigator (RI), I help courts and law enforcement agencies understand the science and technology of voice identification. We all have distinctive characteristics to our voice and words as well as how we pronounce those words. Each of us has a unique nasal cavity, larynx, teeth, tongue, and mouth. These distinct characteristics all come together and create a unique sounding voice that can be examined and analyzed using computer software and auditory perception to determine if voices in question are from the same person.

My philosophy is that forensics examination and restoration of audio/video media ideally combines art as well as science. The methods an expert uses require attention to detail and scientific principles, complemented by an appreciation for clarity and aesthetics. My techniques are derived from both formal education and application of skills gained by working in many forensics situations.

To present a few milestones: I have provided audio restoration of informant wire recordings that served as key evidence in convictions involving two Detroit area judges. In the course of my career, I have completed dozens of forensics-focused assignments for attorneys throughout the United States.

- 1979-1985: University of Detroit (Communications major, Criminal Justice minor)

- 1978-1981: Probation officer, 52nd District Court, Troy, Michigan

- 1980-1988: Ambience Recording Studio, audio engineer/national sales manager
- 1984-present: Primeau Productions, Inc., President; focusing on marketing videos for professional speakers, audio/video editing, convention/conference production
- 1996-present: TASA audio and video identification/restoration/authentication expert

- 2006-Member of International Association for Identification
- 2005 Member Audio Engineering Society
- 2006 Member American College of Forensic Examiners
- 1998-1999: National Speakers Association of Michigan, President
- 2000-present: Member of Law Enforcement/Emergency Services Video Association (LEVA)
- Certified Digital Video Expert at Pelco Global Training Institute
- Member American Society of Information

- Established expert with acetate and vinyl restoration – Primeau Productions, Inc.
- Hundreds of spoken-word recordings analyzed, clarified and/or restored using computer technology and visual examination of audio and videotape to establish critical listening skills
- Experienced in court testimony and pre-trial preparation of counsel
- Published author, audio and video forensics articles (LEVA, Homeland Security magazine of the American College of Forensic Examiners; National Speakers Association)
- Author of the book "The Art of Production"
- Resource Audio and Video Forensics for *Dateline NBC*.
- Served as voice ID expert for the Wall Street Journal
- Appointed to the Office of Drug Control Policy of the State of Michigan under State Drug Czar
- Manager of the Digital Audio and Video Forensics Group on Linked In
- April 20, 2010 approved by ACFEI as a Registered Investigator (RI)

# AUDIO FORENSIC SERVICES*

Background noise removal/sound clarification

Voice identification

Audio recording authentication

Micro cassette transfers to any format audio

Audio conversion to compact disc or any format

Courtroom Testimony

## VIDEO FORENSIC SERVICES*

Video Authentication and restoration

Video image clarification

Frame capture from video

Video conversion to DVD or any format

CD ROM and DVD design and programming

Courtroom Testimony


*Any and all formats of audio and video accepted


Retainer agreement available on request; nominal travel expenses will be quoted in advance excluding meal expenses and flat rate time for travel instead of hourly.

**The following is a partial list of cases I have worked on and/or testified in.**


1. William Richmond

   121 2nd St.

   Beckley, WV   25801

Beckley Steel Inc.

Ex-employee recorded conversations of Beckley Steel management with employee. I analyzed recordings on behalf of plaintiff Beckley Steel and was deposed via the telephone. The case never went to court.

2. DiGiacomo & Baffa

    16th Floor

    1601 Market Street

    Philadelphia, PA   19103

Fitzgerald v. Skobeloff

I represented the plaintiff with counsel DiGiacomo in a medial malpractice suit against a doctor (Skobeloff) and hospital. The case involved a phone answering machine tape erasure – accidentally erased by court reporter. I confirmed the erasure and explained the information could not be recovered. **I testified in this case in Delaware County, Pennsylvania.**

3. Camile Conway

    Pugh, Jones & Johnson

    180 N. LaSalle St.

    Suite 2910

    Chicago, IL   60601

This was the well-publicized Chicago nightclub stampede disaster that made national news. I was retained by the city attorney of Chicago to examine a nightclub's digital surveillance system.  The system had been tampered with and the original footage was not available to examine.

Several people were trampled while trying to evacuate a nightclub on Michigan Avenue. The surveillance system incorporated a digital video recorder. One of the owners was behind the accidental erasure of all video evidence.

4. Patrick Coolihan

    Coolihan, DeMeo & Beard, P.C.

    1900 Spring Rd., Suite 508

    Oak Brook, IL   60523

People of the State of Illinois v. Michael Hay:

I represented the defendant as a video expert. A CCTV video tape of a (jewelry store) robbery was provided and I captured some frames from the surveillance video and clarified them. I then made several prints of the captured video frames and sent the

prints and video files (on a CD). **I testified to my findings in the DuPage County courthouse, 1900 Spring Rd., Oak Brook, IL 60523.**

5. Mark Bendure

   Bendure & Thomas

   577 E. Larned, Suite 210

   Detroit, MI    48226

The Judicial Tenure Commission v. Ferrara

I represented the defendant, Judge Ferrara, with Counsel Mark Bendure. My responsibilities included voice identification and examining the tapes for tampering. The Executive Director, Allen Sobel, represented the JTC. I testified in this case here in Detroit in front of the Judicial Tenure Commission.

6. Jeff Ogren

   Bochetto & Lentz

   1524 Locust St.

   Philadelphia, PA   19102

   Michigan Public Service Commission

Knox v. Pathfinders

I represented the defense, Pathfinders, with Counsel Jeff Ogren. My responsibilities included determining if a third-party verification recording had been tampered with and if the caller's voice matched the defendants. **I testified in front of Judge Goldstein and the Michigan Public Service Commission.**

7. Deborah Marik

Newton Falls, Ohio, Circuit Court

Clark and Langley v. Patrick Layshock

I represented the plaintiff with Counsel Deborah Marik. My responsibilities were to determine whether the (8) audio tapes submitted to me were intercepted phone calls; determine how these calls were made; were they tapes made by anyone involved in the conversations and were the police involved in making the recordings. I was deposed in Michigan for this Ohio case.

8. Margolis Edelstein

   1500 Grant Building

   Pittsburgh, PA   15219-2203

   (412) 281-4256

David Brinker v. Municipality of Marysville

I represented the Municipality of Marysville to analyze general police department tapes for authenticity and possible alteration. I testified via deposition. I was hired by the police department in Marysville, Pennsylvania.

9. Charles McKinney

Columbus, Oh

People of Ohio v. Wendell Jackson

This is a criminal case I testified in where a CI made audio cassette recordings of a police officer during business transactions.  He tried to entrap the officer with receiving stolen merchandise.  I examined the cassette recordings, **testified in court in Columbus, Ohio** for this criminal case and determined that they could not be authenticated.  We won the case which went on to a civil case I also testified in.

10. Michael Gorte

Bay City, Michigan
989-894-670
People v. Edward Murray
In this case, I examined an answering machine recording and compared the voice of the accused with the voice on the evidence recording.  This was a parole violation matter. I examined the answering machine and recording under the supervision of the Sheriff's Department as well as the prosecuting attorney. **I testified in court 10/14/05.**

11.Ron Snyder
Columbus, Ohio
614-461-4455
State of Ohio v Wendell Jackson

This is the civil case as described above held in City Hall in Columbus Ohio. **I testified** on behalf of Wendell Jackson, the plaintiff on March 29th 2006.

12. Steven Potter
Auburn Hills Michigan
248-377-1700
(Contact Misty)
Haddad v Indiana Pacers
I was the video expert for the defense, the Indiana Pacers, during this one week trial, took the stand once to explain the video evidence I had assembled from all network sources, including ESPN, Fox Midwest and WB20. **I testified in The United States District Court, Eastern Division of Michigan**
The jury returned a not guilty verdict on behalf of the Pacers.


13. Garry Weiss
Merrillville, Indiana
219-736-5297
State of Indiana V. Wesley English
This is a criminal case in the Circuit Court of Lake County in front of Judge Thomas Stefandaker Jr. that Involving analog video tape.
I was retained by the defense to prove to the court that video evidence submitted was not reliable as video evidence and should not be used in the trial. **I testified on behalf of the defendant Wesley English.**


14. U.S. Gold and Diamonds vs. JKD Diamond Brokers.
Dianne Marx
Dayton Ohio
937-222-2500.
This case is in Federal Court in Dayton Ohio November 3rd, 2008. It involves my examination of a Integral Technologies digital video CCTV system examination and authentication of video evidence and the operational characteristics of the system itself.
The Software is version 4.0. Integral Technologies was sold to Pelco December of 07 and is now known as Pelco; Global Leaders in Security Systems.

On November 24th 2008 the jury awarded my client a total of 6.9 million dollars in loss and compensatory damages as well as legal fees.
A letter from my client reads:

Ed,


Just writing to let you know the jury came back with a very favorable verdict: $8,400 which represents the actual cost of the diamond, plus the cost of shipping ($400); $1.7 million representing the wholesale price of the diamond and $2.3 million which represents the retail value. We are entitled to treble damages

on the $2.3 million.  We couldn't have done it without you!  We, obviously, are very, very pleased, as is Mr. Stafford.  Thank you again for all your help.


Patty


*Complete article appears in the Dayton Business Journal November 25th 2008.*

*Link to article: http://dayton.bizjournals.com/dayton/stories/2008/11/24/daily21.html*



15. State of Ohio V James McClellan

Jerry McHenry

Columbus, Ohio

614-466-5394

Ohio Public Defenders Office.

I testified in this video case held in the Allen County Court of Common Pleas and helped the court understand the details about a poor quality police car video tape of a traffic stop.



16. People v Jeff Updyke

Patrick Dunn

Warren, Michigan

248-377-1700    Ex 13

I testified July 23, 2009 in a criminal matter where Jeff Updyke was accused of impersonating a police officer.  The perpetrator called and left a voice mail message claiming the family's daughter was dead behind a shopping center and had overdosed on heroin.  This was a voice identification case which included evidence recording and exemplar created by me here in our Rochester Hills location.

### Contributed to an article as voice ID expert for the Wall Street Journal:

(Letter from author of article)

Hi Ed,

Thanks again for your help with the story. Your critical ear was right; it was Pynchon. When I confronted the publisher with your findings they admitted it, so it was a great scoop for the Journal. Here's a link to the story.

-Steven Krutz

(Article in Wall Street Journal)

http://blogs.wsj.com/speakeasy/2009/08/11/pynchon-revealed/

**THE WALL STREET JOURNAL**
WSJ.com

• August 11, 2009, 12:01 PM ET

# Yup, It's Him: A Pynchon Mystery Solved



Last Tuesday, long-suffering fans of the reclusive writer Thomas Pynchon received a double gift. Pynchon's latest book, "Inherent Vice," a stoned-out detective story set in early-'70s L.A., was released by Penguin Press (read the Journal's review). And to promote it, the publisher put out a cool video trailer featuring a narrator whose slow, lazy cadence sounds suspiciously like that of Pynchon's, as evidenced by a guest appearance on "The Simpsons" and this clip from what appears to be a German TV spot. Inquiries by GalleyCat and others as to whether Pynchon is the guy channeling the novel's main character, beach bum private eye Doc Sportello, have been met with "no comment" from Penguin Press and the video's producers, Meerkat Media. And, of course, the man himself is mum (Would Pynchon fans expect anything else?).

In an effort to solve the mystery, Speakeasy did a little sleuthing and called Ed Primeau, a Michigan-based sound engineer and voice identification expert. Like handwriting analysis, voice identification is an inexact science, often used by law enforcement to rule out a suspect rather than to provide a 100% clear-cut ID. Still, people have unique vocal timbres and deliveries, especially Pynchon, who sounds like actor John Astin (i.e. Gomez Addams from the old TV show), mixed with a Midwest corn farmer, with a dollop of aging stoner.

So is it possible to rule out the man in the "Inherent Vice" trailer as being the same guy in the Simpsons episode and German TV clip? Not at all, according to Primeau. In fact, he says, based on a preliminary analysis the speech pattern and inflection is "virtually identical" in all three clips. "It's a very unique style of delivery," Primeau says. "It's very up-and-down. He'll hit these accented spots every few words. You know the TV show "Dragnet," how Joe Friday talked? It's the opposite of that."

We should point out Primeau is an unbiased witness, having never read Pynchon ("I don't know this guy but it looks like he has some history as an author," he said). Nevertheless, if he hasn't been taken by the man's work, Primeau is intrigued by his voice, which he describes as "a tobacco-driven soft rasp."

Primeau's conclusion: "Beyond a reasonable degree of professional certainty, I believe these voices were delivered by the same person." Confronted with Primeau's findings, Tracy Locke, a publicist at Penguin, came clean and admitted, "It is, in fact, Thomas Pynchon doing the narration."

Copyright 2008 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit

www.djreprints.com

**Edward John Primeau**

**Audio Video Forensic Expert**

**Certified Digital Video CCTV Expert**

**Member ACFEI, AES, IAI, NSA**

**Primeau Productions, Inc.**

**(248) 853-4091**

**(248) 853-4098 (FAX)**

**Ed@PrimeauProductions.com**

**www.VideoProductionPrimeau.com**

**www.PrimeauProductions.com**

**www.EdPrimeau.com**

# Audio Forensics: An Accurate, Arguable and
# Authentic Approach to Understanding Audio Evidence

## Ed Primeau 800-647-4281

### Ed@PrimeauProductions.com

Bell Labs was the first to discover that spoken word patterns and sounds could be identified and characteristics examined to identify the individual who made them.  This has been a very important advancement in forensic science because the potential to assist law enforcement is well worth the effort it takes to defend the proponents and practitioners.  Audio forensics is sometimes referred to as "junk science." After over 25 years of examining, editing and clarifying audio recordings, I can attest to and scientifically prove that voice identification and audio authentication comprise an exacting science that has huge benefit to the courts, law enforcement agencies and businesses.

In the following article, I will describe what works and does not work for two of the main activities of audio forensic experts: voice identification and audio authentication.  I will also review and break down the steps and processes I employ and explain why I believe audio forensics is a valuable tool in litigation.

I have been retained for dozens of court cases, as well as by corporations, to analyze and help explain various aspects of audio evidence in one form or another. Some situations required that I find the truth about the source of a threatening voice, like a bomb threat called into 911 or a sexually harassing voice mail left on a victim's phone.

Other cases involved defendants trying to validate or disqualify a pre-recorded audio confession. Evidentiary audio recordings all have one thing in common: they need an experienced audio forensic expert to review and either qualify (validate) or disqualify the evidence.  My job as an audio forensic expert is to determine the recording's authenticity or to identify the person's voice.

**Voice Identification Overview**

I have been practicing voice identification for over 25 years.  Many of my skills and principles have been learned from employment as an audio engineer. Other skills I have learned through reading, studying, and completing cases successfully.  I believe people's voices, just like fingerprints; can be identified through visual inspection of sound waves and spectrum analysis, as well as through critical listening skills. I have conducted voice identification for sexual harassment, workers compensation and employment harassment, as well as various threatening voice mail messages like bomb threats.

In our country today, we are guilty until proven innocent, the opposite of what our United States Constitution promises.  It is my job to determine the truth about voice recordings using visual, electronic and auditory inspection of both the evidence recording and an exemplar (voice sample taken for the purpose of comparison).

A typical case I would review might involve a telephoned bomb threat or harassing call that was recorded on audiotape or digital voicemail. After the police arrested a suspect, I would be retained by either the state (court) or defense to determine the truth about that audio recording.

The first step is to examine the original evidence and learn as much about the recording as possible.  How was it created?  Who created it?  What machinery was involved?

Then, with the help of the court or defense lawyer, I create an exemplar of the accused voice to compare visual, electronic and auditory characteristics.

Almost every legal case I have been engaged in has allowed my report and or testimony into evidentiary status to aid with "due process." I believe my success rate is high due to the fact that I employ the three testing platforms outlined above.

Steady advances in computer technology have had a huge impact on audio forensic voice identification. Having experience as an acoustic engineer who has listened to literally hundreds of hours of spoken word recordings, in addition to sophisticated electronic software programs, has contributed to my success with voice identification.

One case I examined involved a bomb threat. Bomb threats make up a fairly large segment of voice identification activity. The call in question was made from a pay phone outside of a convenience store to a 911 operator. This was scientifically evident when police traced the call.

The caller identified herself by name as an employee of XYZ Company. When the police arrived at XYZ Company, they found the employee with the name the caller gave the 911 operator and arrested her. The employee denied making the call.

She was charged with making a bomb threat call, guilty until proven innocent. I was retained by the defense to prove that our client did not make the bomb threat call.

**Voice Identification Procedure**

When comparing spoken word samples for the purpose of identification, I base my processes on historical information I have learned from the scientific community, state police crime labs, other forensic experts and designers and developers of electronic (especially computer) equipment and testing software programs. My process requires the visual, electronic, and auditory examination of every aspect of the words spoken, not just the pathological examination. The words themselves, the way the words flow together, the pauses between the words, the way the words are formed by the mouth and larynx can be measured using three processes. The first process is a visual examination of the sound wave, comparing the evidence and an exemplar (a voice sample of the accused). The second process is an electronic

measurement of the evidence, which is then compared to the exemplar.  The third process is perhaps the most important: critical listening skills that compare how the words are spoken and pronounced in the evidence and the exemplar.  Noise floor and electronic measurement of speech and other audible sounds in the recording must also be considered and measured.  Forensic procedure requires careful examination of all audio evidence characteristics, following procedures as outlined by the scientific community.

These scientific procedures begin with the analysis of the quality of the audio recording.  It is important to establish that the quality of the recording in question is acceptable and workable. Sometimes, it may be necessary for an audio forensic expert to apply some light equalization or other non-destructive audio processing to reduce or remove background noise that may interfere with the forensic examination.

Voice identification requires the forensic examiner to discover similarities, as well as differences, in all three areas of investigation.

Here are the step-by-step processes *I use* when conducting voice identification:

1. Visual examination of the original recording, analogue or digital.  This includes examination of the physical characteristics of the tape itself (if analogue) or analogue or digital recorder.  It is important to examine the cassette tape (standard, mini or micro) or other analogue or digital source to determine if there are visual signs of tampering or alteration.

2. Once the physical evidence has been examined, the next step is to load the recording in question into a forensic computer.  Visual examination of the sound wave, sonogram and spectrograph reveal speech characteristics and patterns of verbal delivery as well as electronic characteristics.  At this point, the recording has been digitized so forensic software can analyze and conduct various tests.

3. If possible, for authentication or voice identification, an exemplar or comparison recording should be made of the original recording to compare the original recording characteristics.  This same

forensic examination process that is applied to the evidence is also applied to the exemplar to determine that the characteristics are the same and the recording is from the same audio recorder.

4. When conducting voice identification, it is important to create an exemplar of the accused for audio comparison using conditions and equipment as close as possible to the measurements taken from the evidence as outlined above. The speech must be the same as the speech on the evidence in order for the testing to be accurate. As an audio forensic expert, I often have to coach the accused into the same energetic voice tone and inflection as the evidence recording. However, it is still possible to compare speech if the exemplar is not as close to the evidence as I would like.

5. Critical listening skills are used to examine the speech pattern, pronunciation, voice tone and inflection, accent, dialect and specific speech characteristics (like a lisp or significant "s" delivery). There is a rhythm in how an individual speaks, and even if s/he is trying to disguise his/her speech (in an attempt to fool the forensic examiner), the rhythm and speech patterns as described above still show through. The expert must pay careful attention to the rhythm of spoken word formations. I listen to single words as well as phrases and sentences. I like to compare original evidence *sections* of spoken word recordings as well as individual words. This is best accomplished by editing exemplars and original recordings back to back. It is extremely helpful to then make these sub-files of words and sentences within the section back to back with exemplars. I repeat the assembly over and over to accommodate critical listening skills with the auditory identification process. That way, your ear can experience the sounds, vowel formations and consonants without interruption.

There are many character traits that can be experienced in a spoken word recording. It is important for the audio forensic expert to become familiar with the evidence speech patterns and visual and electronic characteristics. These characteristics are evident in a person's voice even if he or she attempts to disguise it, and they are compared to the exemplar.

**Audio Authentication**

Using many of the same tools as described above, audio authentication can help determine the validity of audio evidence that is being considered as evidence in litigation.

It is important when authenticating an audio recording that the audio forensic expert pay careful attention to tone consistency of the audio recorded signal (speech), as well as the recording's noise floor.

The consistent audio-recorded signal is important because audio recordings that are not authentic are most always edited or fabricated assemblies of two or more audio recordings for the purpose of deceiving the person(s) listening to the recording. Using the tools described above, the audio forensic expert can measure the tone consistency to determine authenticity.

Those same tools can also measure the noise floor, looking for inconsistencies in the room tone or background noise of the recording. These breaks or changes in either audio- recorded signal or background noise are signs that the audio recording being considered may be counterfeit or fake.

**Critical Listening Skills**

I have been working with professional speakers and analyzing other spoken word recordings since 1980 and have developed my critical listening skills to a degree that far exceeds the average person's sound perception. When I first hear audio evidence and add exemplar recordings so I can listen to both back to back, I then apply my critical listening skills to determine the speech similarities as well as differences between the two.

In my early days as an audio engineer, I learned to edit ¼" reel to reel tape with razor blades to make a recording sound as if it were recorded start to finish without a single mistake. Some of my edits were pretty tricky. I got so good I could split words in two and even three edits to fix a problem or shorten a script. After a while, I became very familiar with speech characteristics and patterns as well as vocal tone and pronunciation.

The best way to become skilled in voice identification is to listen to hundreds of hours of forensic evidence to become familiar with the various speech pathological characteristics and develop critical listening skills.

There can sometimes be differences in speech patterns that can help identify clues.  Listen for several similarities as well as differences, such as nasal resonance differences and voice tone with regard to inflection.

**Voice Identification Conclusions**

When conducting the examination, the audio forensic expert must look for similarities as well as differences in all three testing platforms to help arrive at a conclusion.

After the investigation and testing procedures are complete, the forensic expert's report must arrive at one of the following conclusions:  positive identification, probable identification, positive elimination, possible elimination or inconclusive.

The key to successful voice identification is to develop a methodology and standard procedure that you strictly follow every time you conduct an identification and comparison.

**The Audio Forensic Report**

It is my belief that the audio forensic report should include:

1.  The introduction:  what the expert was asked to do and how the expert arrived at his/her conclusion, including all scientific fact

2.  The testing processes employed to examine the audio evidence

3.  The expert's conclusion of the tests, including the expert's opinion as to the relevant facts and concerns

4. The expert's curriculum vitae (resume) to establish credibility as an audio forensic expert and to accommodate the Federal Court's protocol for submitting an expert report

5. A published article authored by the expert concerning the kind of testing relevant to the current case

**Audio Authentication Conclusion**

Every tone change in either the audio-recorded signal or background noise must be documented and analyzed as a whole before considering the recording genuine or authentic. All forensic concerns must be documented and listed in the forensic report to prove the audio forensics findings.

*This article discusses issues of general interest and does not give any specific legal, medical, or business advice pertaining to any specific circumstances. Before acting upon any of its information, you should obtain appropriate advice from a lawyer or other qualified professional.*