UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-CV-14314-MARTINEZ/LYNCH

DUBAI WORLD CORPORATION, and
its subsidiaries, EXOMOS, NAKHEEL,
and PALM MARINE,

    plaintiffs,
v.

HERVE JAUBERT and SEAHORSE
SUBMARINES INTERNATIONAL,
INCORPORATED, and Does 1-99,

    defendants.
_____/

**DEFENDANT/COUNTERCLAIM PLAINTIFF HERVE JAUBERT'S AND DEFENDANT SEAHORSE SUBMARINES INTERNATIONAL INCORPORATED'S RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE MISCHARACTERIZATIONS OF SULTAN AHMED BIN SULAYEM'S NAME AND POSITION, IRRELEVANT AND INFLAMMATORY EVIDENCE, TESTIMONY OR CLAIMS INTENDED TO INFLAME AN ANTI-ARAB SENTIMENT, AND ANECDOTAL EVIDENCE OF BUSINESS DIFFICULTIES IN THE UAE AND DUBAI AND <u>ACCOMPANYING MEMORANDUM OF LAW</u>**

Defendant/Counterclaim Plaintiff Herve Jaubert ("Mr. Jaubert") and Defendant Seahorse Submarines International Incorporated ("Seahorse") hereby responds to Dubai World Corporation's (and its subsidiaries Exomos, Nakheel and Palm Marine)(collectively, "Dubai World") Motion in Limine to Exclude Mischaracterizations of Sultan Ahmed Bin Sulayem's Name and Position, Irrelevant and Inflammatory Evidence, Testimony or Claims Intended to Inflame an Anti-Arab Sentiment, and Anecdotal Evidence of Business Difficulties in the UAE and Dubai ("Motion in Limine") and as grounds therefor state, as follows:

<u>A. In Response to Dubai World's Version of the General Background of this Matter</u>

In its "General Background" of the Motion in Limine, Dubai World has, again, made references to Mr. Jaubert's conduct when he acted as CEO of Exomos; Mr. Jaubert will provide

evidence at trial that the expenditures by Dubai World in Exomos were planned capital expenditures which had been analyzed by multiple layers of financial and accounting personnel at Dubai World prior to such expenditures were approved by Dubai World executives. Mr. Jaubert did not lead Exomos to financial disaster: Dubai World did. Moreover, any payments for components or related inventory that were purchased, with prior approval, through Seahorse, were also agreed to before Mr. Jaubert relocated to Dubai.

Mr. Jaubert fled Dubai to avoid threatened indefinite imprisonment when Dubai World's auditors chose to use Mr. Jaubert as the reason for Exomos' failure. Dubai World, for example, created inventory and reimbursement issues regarding matters that had been personally approved by Dubai Word's Chairman years earlier. After Mr. Jaubert's wife and children had left Dubai (after first being detained for hours at the Dubai airport), Mr. Jaubert then managed to escape by implementing a plan he had taken nearly a year to see to fruition.

Mr. Jaubert subsequently author a book about his ordeal; Dubai World, having some experience with extortion as it extorted monies from Mr. Jaubert before he escaped, has now in this litigation seized upon the idea of further impugning Mr. Jaubert's character by accusing Mr. Jaubert of attempting to extort monies from Dubai World in order not to publish his book. The record will reflect otherwise: Mr. Jaubert was writing and publishing his book regardless. Under this scenario, Dubai World's also imagines that Mr. Jaubert utilized his former attorney as well as a *Bloomberg* reporter in this purported scheme.

### B. In Response to Characterizing Mr. bin Sulayem as a Sultan

Of course, Mr. Jaubert and Seahorse agree that Mr. bin Sulayem is not a sultan or the sultan of Dubai but is named Sultan.

### C. In Response to Anti-Arab Prejudice

Mr. Jaubert, given what he has alleged occurred to him during his time in Dubai, did author a book and provide his opinion therein regarding how he was treated. What Mr. Jaubert

published in his account of his ordeal and what is admissible as evidence in a court of law, however, are two entirely different matters. Mr. Jaubert and Seahorse recognize the difference.

However, it must be noted that in the Motion in Limine Dubai World claims that Mr. bin Sulayem was questioned at his deposition about his marital status and the number of wives he had, the legality of extramarital affairs in Dubai and the legality of murder in Dubai. Dubai World is concluding that there was no relevance to such questions.

This is an interesting slant on how Dubai World perceives the events that have unfolded in this litigation. For instance, Dubai World, at the deposition of an individual who was acting as a consultant to Exomos in the development of a commercial diving school and the development of a hyperbaric medical facility at Exomos, asked the deponent if Mr. Jaubert was, "having a relationship with his secretary that was distracting from his work." Deposition of Ross Saxon at page 34, line 14 – 16. (For the record, Mr. Jaubert responded, "absolutely not.")

Then, at Mr. Jaubert's first day of deposition, Mr. Jaubert was asked whether he was "devoting company time or resources to a nonprofessional relationship with [his] secretary…". Jaubert deposition of May 25, 2010 at page 69, lines 6 – 8 and 14 – 16. Dubai World then asked Mr. Jaubert if he had seen pornographic photographs that had been sent to Mr. Jaubert's Exomos e-mail account. Mr. Jaubert testified that he had not. Mr. Jaubert testified that it was against company policy to send pornographic photographs and that it could result in going to jail.

Dubai World then proceeded to ask Mr. Jaubert about 4 other exhibits, some of them composite, that were photographs of girls in bikinis, lingerie, or less and inquired if he had sent or received them at his Exomos e-mail account. The questioning was ostensibly to determine if Mr. Jaubert understood that if he had done so, it would have been against company policy and illegal in Dubai. Then Dubai World questioned Mr. Jaubert about a document showing an Israeli flag with a swastika in the middle; Mr. Jaubert testified that it was disgusting.

Dubai World continued, for 27 pages of the deposition transcript (out of 222 pages), along this line of questioning. Mr. Jaubert testified that he knew it was unprofessional and illegal to send pornographic photographs, to engage in prostitution, or to have a girlfriend in Dubai.

At Mr. bin Sulayem's deposition, as the Chairman of Dubai World to whom Mr. Jaubert reported directly, Mr. bin Sulayem was similarly asked whether he had conducted business or

3

met clients on his yacht and then whether he had employed women to participate on that vessel; the question was asked because Dubai World had implied that Mr. Jaubert conducted himself inappropriately as CEO of Exomos by having an unprofessional relationship with his secretary and because pornographic photographs had been sent to his email account. Mr. Sulayem did not answer that question or answer the question whether it was illegal to have a relationship other than with a wife. Mr. Sulayem eventually stated he was not a lawyer and could not answer that question or the question whether prostitution was legal in Dubai. Mr. bin Sulayem subsequently answered that he knew about bringing guns into Dubai because he worked at Customs. He then answered that he did not know, however, whether it was illegal to bring a prostitute into Dubai.

Just as Mr. Jaubert had been questioned for 27 pages about extramarital relationships and pornographic photographs, allegedly to determine whether Mr. Jaubert understood these matters to be against company policy and illegal in Dubai, Mr. bin Sulayem, as Chairman of Dubai World, was questioned about similar matters. Of course, Mr. Jaubert does not have Mr. bin Sulayem's computer hard drive to look at to see if Mr. bin Sulayem has pornographic photographs thereon as Dubai World has Mr. Jaubert's Exomos hard drive.

Therefore, the questioning of Mr. bin Sulayem that Dubai World has brought up in its Motion in Limine, was relevant. As Chairman of Dubai World, it is reasonable to inquire regarding such matters and Mr. Jaubert did so, in a far more limited manner; Mr. Jaubert answered all of the questions asked of him: Mr. bin Sulayem did not.

Argument

It is agreed that the characterization of Mr. bin Sulayem as "the" sultan of Dubai or a sultan is inaccurate. Mr. Jaubert and Seahorse do not intend to be inaccurate in portraying Mr. bin Sulayem as such.

Regarding Dubai World's Motion in Limine to exclude evidence or testimony that imputes irrelevant bias to anti-Arab sentiment, Mr. Jaubert and Seahorse are not exactly certain to what evidence or testimony Dubai World refers. This blanket request is so broad and general, it is difficult to determine whether there is a basis for the Motion in Limine. Indeed, in one of the cases cited by Dubai World, *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, (11th Cir. 2003), a motion in limine to exclude derogatory statements regarding Nazis, concentration camps, etc. was characterized by the appellate court as "overkill". In that case, the lower court

had entered a Rule 11 order against the movant for filing the motion in limine; the appellate court reversed the entry of the Rule 11 order.

A case that is more appropriate to the general blanket request herein is *Roberts v. Charter National Life Insurance Co.,* 105 F.R.D. 492 (S.D. Fla. 1985). In that case, the defendant moved in limine seeking a pretrial ruling on the admissibility of evidence at trial.

The court held:

> Defendant's motion in limine seeks a pre-trial ruling on the admissibility of evidence at trial. Consideration of evidentiary rulings on an item by item, piecemeal, basis is counter-productive to the effective administration of justice in a busy trial court. When these rulings are made at the time the exhibit is offered in evidence, the trial judge has the benefit of full development of all relevant facts constituting the introductory predicate for admission of the item or statement. Motions in limine rarely provide this factual background.
>
> Other factors causing the Judges of the Southern District of Florida to generally not favor motions in limine are:
>
> 1. The problem may never arise, in which event the time spent on such a hearing is wasted. For example:
>
> A. The plaintiff may elect, at trial not to offer the document.
> B. The case may be settled (92% of civil litigation in U.S. Courts settles).
> C. The attorneys may agree on admission of the document or a summary thereof.

The court in *Roberts* denied the motion in limine without prejudice to reassert at the time of trial if circumstances so warranted. *See, also, Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975)(orders in limine which exclude broad categories of evidence should rarely be employed; a better practice is to deal with questions of admissibility of evidence as they arise), *Plair v. E.J. Brach & Sons, Inc.,* 864 F.Supp. 67 (N.D. Ill. 1994)(a motion in limine to exclude evidence may be granted only if the evidence sought to be excluded is clearly inadmissible for any purpose; denial of the motion means only that outside the context of trial, the court cannot determine whether the evidence in question is admissible).

In *Hawthorne Partners v. AT&T Technologies, Inc.,* 831 F.Supp. 1398 (N.D. Ill. 1993), the court held:

This court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds. *Cf.* Luce v. United States, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984) (federal district courts have authority to make *in limine* rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. *See The* Middleby Corp. v. Hussmann Corp., No. 90 C 2744, 1993 WL 151290, at *1, 1993 U.S.Dist. LEXIS 6150, at *1-2 (N.D.Ill. May 5, 1993). *See generally* 21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* ¶¶ 5037, 5042 (1977 & Supp.1993). Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*.

## Conclusion

Dubai World has moved for a general, broad, all-encompassing motion in limine to exclude unspecified, wide categories of evidence and testimony in this matter. As set forth above, orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise. As Judge King held in *Roberts,*, *supra,* "when these rulings are made at the time the exhibit is offered in evidence, the trial judge has the benefit of full development of all relevant facts constituting the introductory predicate for admission of the item or statement. Motions in limine rarely provide this factual background."

Accordingly, Mr. Jaubert and Seahorse respectfully request that Dubai World's Motion in Limine be denied.

Dated: January 19, 2011

Respectfully submitted,

s/William T. Hess

          William T. Hess, Fla. Bar No. 801224
          Hess & Heathcock, P.A.
          40 SE Osceola St.
          Stuart, FL   34994
          E-mail: whess@hhfirm.com
          Telephone: 772.223.0209
          Facsimile: 772.220.9727
          Counsel for Defendants Seahorse
          Submarines International Incorporated and
          Herve Jaubert and Counterclaim Plaintiff
          Herve Jaubert

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on January 19, 2011, I filed this document with the Clerk electronically through the CM/ECF system which caused all counsel of record to be served by electronic means.

          s/ William T. Hess
          William T. Hess