UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 2:09-CV-14314-MARTINEZ/LYNCH

DUBAI WORLD CORPORATION, and its
subsidiaries, EXOMOS, NAKHEEL and
PALM MARINE,

        Plaintiffs,

VS.

HERVE JAUBERT, SEAHORSE
SUBMARINES INTERNATIONAL
INCORPORATED, and Does 1–99,

        Defendants.
_____/

**PLAINTIFF DUBAI WORLD CORPORATION'S REPLY IN
SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE AS TO CERTAIN
ECONOMIC DAMAGES AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**ASTIGARRAGA DAVIS MULLINS
& GROSSMAN**
EDWARD M. MULLINS
Fla. Bar No. 863920
ANNETTE C. ESCOBAR
Fla. Bar No. 0369380
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202

Defendant/Counter-Claimant Herve Jaubert's ("Jaubert") Response in Opposition to Dubai World's Motion in Limine to Exclude Evidence as to Certain Economic Damages ("Response"), DE157, is significant for what he fails to dispute or admits. Indeed, other than conclusory allegations as to the sufficiency of his "evidence," which is not corroborated by the record, none of Jaubert's arguments prevents this Court from granting Dubai World's motion in limine as to all of Jaubert's damages for the reason set forth in its Motion in Limine to Exclude Evidence as to Certain Economic Damages ("Motion in Limine as to Damages"). DE144.

As an initial matter, Jaubert has not, and cannot, point to anything in the record that allows him to prove damages for lost profits and opportunities with the sufficient degree of certainty required by Florida law. None exists. The damages sought by Jaubert as "lost opportunity" and "lost profits" are based on nothing more than conjecture, speculation, and presumptions not substantiated by record evidence.

Second, Jaubert's attempt to escape having his damages stricken for discovery violations based on purported information made known to Dubai World during the discovery process and this Court's October 6, 2010, Order fares no better, and indeed, is a red herring. No evidence exists in the record upon which Jaubert seeks to base his damages. In fact, he admits he abandoned virtually all of the so-called evidence in Dubai. And, what is more, Jaubert now has identified various categories of damages that never have been raised before in this action, which Jaubert cannot recover as a matter of law and which should be disregarded summarily.

Nor has Jaubert substantiated his claims for purported loss of earning capacity. There simply is insufficient evidence in the record, and Jaubert was unable to provide any additional information during his deposition, so as to enable a jury to establish such damages with the requisite substantial certainty.

And, Jaubert's own Response demonstrates the outlandish and absurd nature of his claims for abuse of process and defamation. In each case, Jaubert cannot, as a matter of fact and law, recover the damages he now seeks to assert.

This Court summarily should grant Dubai World's Motion in Limine as to Damages.

### ARGUMENT

Jaubert does not, and cannot, dispute that, in order to recover damages of any type, "[p]roof must show with reasonable certainty that the plaintiff suffered damages[,] []that the damages flowed as the natural and proximate result of defendant's wrongful conduct," and that "the amount of damage must be capable of proof to a reasonable certainty and not left to speculation and conjecture." Aldon Ind., Inc. v. Don Myers & Assoc., Inc., 517 F.2d 188 (5th Cir. 1975) (cited by Jaubert); DE154:11 ("Under Florida law, lost profit damages, like all damages, cannot be speculative and must be proved with reasonable certainty"). A cursory analysis of what Jaubert contends is sufficient "proof" makes it evident that Jaubert cannot, as a matter of law, satisfy this burden with respect to the bulk, if not all, of the damages he is seeking.

### I. JAUBERT'S CLAIM FOR LOST PROFITS AND LOST OPPORTUNITIES IS NOT SUPPORTED BY ANY COMPETENT ADMISSIBLE EVIDENCE

The standard by which lost future profits and opportunities must be established is undisputed. Jaubert admits that damages based on pure speculation cannot be awarded. DE154:9 (citing Travelers Indem. Co. v. Peacock Const. Co., 423 F.2d 1153, 1157 (5th Cir. 1970) (no damages would be awarded because, due to the various contributing factors shown, the amount of damages could be ascertained only through speculation and conjecture)).[1] Jaubert

---

[1] Significantly more evidence, and more reliable evidence, than that which exists here, was present in the cases Jaubert cites in support of his proposition that adequate evidence exists here to establish lost profits. See, e.g., Brown v. Alkire, 295 F.2d 411 (10th Cir. 1961) (balance sheet as to book value of business and other evidence as to actual value of inventory sufficient for jury to calculate difference between represented and actual values of business and inventory);

2

similarly admits that damages for lost future profits or opportunities are improper in the absence either of an established business or a yardstick from which damages can be calculated. DE154:11-12 (citing W.W. Gay Mechanical Contr., Inc. v. Wharfside Two, Ltd., 545 So. 2d 1348 (Fla. 1989) (expert testimony and economic studies by reputable economic analysts provided yardstick by which amount of damages could be calculated)).

Here, Jaubert purports to seek damages for lost opportunities with the National Geographic Society, a Bahamian Charter business, a purported contract with Sandtrancisco. Lost profits that he would have been entitled to had Exomos continued as a going concern and the "loss" of Seahorse. Ex. 1, at pg. 2. The standard for the recovery of lost opportunities and lost future profits cannot be satisfied for any of these.[2]

---

Hannigan v. Sears, Roebuck & Co., 410 F.2d 285, 293 (7th Cir. 1969) (evidence of gross profits actually earned by party and gross profits that would have been earned, but for tortious interference, sufficient to calculate damages when costs of brokerage services were minimal and jury reduced damages awarded by sufficient amount); Ford Motor Co. v. Webster's Auto Sales, Inc., 361 F.2d 874 (1st Cir. 1996) (evidence of past gross and net sales and profits for the business, and gross profits and number of sales for particular item at issue, formed a sufficient basis for jury's calculation of future profits in antitrust litigation); Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513 (10th Cir. 1987) (evidence of sales of other products as substitutes for alleged product to which trademark infringement applied, and showing as to reduced sales of other products in the market generally and of this product in particular sufficient to calculate damages); Twyman v. Roell, 166 So. 215 (Fla.1936) (award of profits upheld when yardstick for calculating damages existed).

[2] Jaubert contends that no expert testimony is required in order to prove his lost profits and opportunities, loss of future earnings, or damages suffered due to his reliance on Dubai World's representations because he is qualified to testify on such matters. Dubai World is not contesting that, if sufficient evidence existed for damages to be subject to calculation with reasonable certainty, an expert may be unnecessary. Significantly, however, as set forth above, no such evidence exists and the absence of an expert is just an example of the type of evidence that is lacking here.

The cases Jaubert cites are not to the contrary. In each, there either an established business or some other yardstick by which to calculate future profits existed. See, e.g., Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256 (2d Cir. 1995) (president of plaintiff, an established business for many years, was competent to testify as to loss of customers and flattening out of sales based on an examination of the company's sales over a period of years); In re Merritt Logan, Inc., 901 F.2d 349, 353, 358-60 (3d Cir. 1990) (lost profits allowed when

3

*National Geographic/Padi.* According to Jaubert, he was approached in 2002 by National Geographic for the construction of submarines in connection with the operation of a PADI franchise store, and such negotiations were ongoing through late 2003 or early 2004. During the approximate two years that Jaubert allegedly negotiated with National Geographic for this contract **with Seahorse**, however, there was "Nothing concrete. Nothing finalized," Ex.2:83, between the parties; Jaubert had not procured the necessary financing to engage in a project of the size foreseen by National Geographic; and numerous components of this "deal" were still in discussion. Ex.2:78-86. National Geographic, in fact, never did launch this project. Ex.2:92.

Negotiations such as these that are in their infancy and which, notwithstanding Jaubert's unsubstantiated conviction that the contract eventually would have been consummated, are insufficient as a matter of law for a jury to award damages for a lost opportunity.[3]

Nevertheless, Jaubert contends that he is entitled to an award of damages somewhere between $30 and $320 million dollars. The sole basis for Jaubert's "calculation" is a financial projection *pro forma* created by a potential financer during negotiations with Mr. Jaubert. Ex.2:84, 86-91. Such financial projections and *pro forma* statements predicting profits for years

---

supported by, inter alia, testimony of shareholder of grocery store that had operated for approximately 1 ½ years; sales records for store at issue; others with extensive knowledge of profits in other similar businesses; individual who had surveyed location for potential purchase; and survey and certified public accountant experts).

[3] See, e.g., Rambus Inc. v. Hynix Semiconductor Inc., 629 F. Supp. 2d 979, 1016 (N.D. Cal. 2009) (recovery for lost profits based on failed negotiations are rarely if ever granted "because there is no way of knowing what the ultimate terms of the agreement would have been or even if there would have been an ultimate agreement"); Re-Source Am., Inc. v. Corning Inc., 2009 WL 2179254, *9 (W.D.N.Y. 2009) ("lost profits" unrecoverable when based on speculation that parties would have consummated a new contract since no way to know if negotiations would have led anywhere).

into the future are, by nature "uncertain and speculative," and thus, legally insufficient to form the basis for an award of lost profits or opportunities.[4]

***Bahamian Charter Business***. Jaubert contends that, in 2004, he was approached by two gentlemen from California that were interested in starting up a tourist charter submarine business in the Bahamas and that a contract was signed, though, as with all the other contracts, he apparently left it in Dubai and it no longer is available, and that a deposit of $20,000 towards a payment of $35,000, had been made and returned by Jaubert upon his departure to Dubai. Ex.2:193-97. Jaubert further testified that, while he believed the contract called for him to build 10 submarines for $35,000 a piece, that the submarines themselves may have formed his portion of the capital contribution towards the business to be formed. Ex.2:98,102-03. In turn, Jaubert further testified that his estimate of $1,000,000 in damages for this purported lost opportunity (which he apparently can, but has refused, to take advantage of now) is based on 10 submarines, at full capacity, being chartered at $95 dollars per passenger charter, 8 times a day, for what he thought might have been three years, but does not remember. Ex.2:101-102.

The presumptions underlying this figure as to number of charters per day, labor expenses

---

[4] McMahan Securities Co. L.P. v. FB Foods, Inc., 2007 WL 704916, 3 (M.D.Fla.,2007) ("Business Plan" prepared for attracting investors constituted impermissibly speculative evidence upon which to base claim for damages due to the "uncertain and speculative nature of [the] assumptions" made therein, "particularly the five year future sales projections"); Sun Ins. Marketing Network, Inc. v. AIG Life Ins. Co., 254 F. Supp. 2d 1239, 1249 (M.D. Fla. 2003) (marketing estimates in which "profits [business] might make given certain assumptions that had not yet, and might never, come to pass" and which, in fact, did not come to pass in hindsight, are "inherently unreliable" and "it is not reasonable to rely upon its marketing plan as a projection of actual profits"); A.G. Design & Assocs., LLC v. Trainman Lantern Co., Inc., 2009 WL 1393240, 1 (W.D. Wash. 2009) ("reliance on a six-year old business plan as a primary basis for determining its lost profits is not sufficient to establish the existence of those claimed damages, particularly under the 'new business rule'"); Mostly Media, Inc. v. U.S. West Communications, 186 F.3d 864, 866 (8th Cir.1999) ("the business plans developed by Mostly Media ... were nothing more than optimistic projections for an enterprise that never got off the ground," upon which a claim for damages for lost opportunities could not be based).

5

of employees, and berthing were made by Jaubert with apparently no corroborating facts except his own presumptions. Id. In turn, Mr. Jaubert would receive a percentage as a license or franchise fee of the net profits, which percentage he does not even remember. Ex.2:102. As with National Geographic, this venture never happened. Ex.21:98. Once again, the potential of making a percentage of a business that never came into fruition is simply too speculative to form the basis for a claim of damages as a matter of law particularly when, as here, not even the percentage to be received from the net profits of that business is known.

*Sandtrancisco*. Jaubert seeks damages in the amount of $2,000,000 based on a contract that purportedly existed **between Seahorse** and this entity for the engineering of dredging equipment. Ex.2:40-41. Jaubert contends that Seahorse received steady income from Sandtrancisco but does not remember what amount that was. He thinks that, in one year that he worked with Sandtrancisco, Seahorse was paid between $100,000 and $150,000, but that such amount included funds utilized for the purchase of any materials necessary, such that it was not net income. Ex.2:42-43. Mr. Jaubert further explained that the $2,000,000 was based on an "estimate in the projection" of 10 years in license or franchise fees that would be paid only if Sandtrancisco itself made a profit. Ex.2:102-05.

Jaubert contended that he had been told, but did not remember, what type of revenues Sandtrancisco had made. Ex.2:105. No evidence of this purported contract exists in the record, or of what the contract amount was nor the amount actually paid to Seahorse, either as gross or net profits. Insufficient evidence exists in the record for the recovery of damages for this as well.

*Exomos*. On this claim, Jaubert contends that he was supposed to be a joint venture partner of Exomos, the company that Dubai World set up to run the submarine business. Jaubert contends that there is "abundant evidentiary support" for the lost profits that Exomos would have

generated but for the acts of Dubai World. DE154:12.

First, the truth is that is undisputed that Exomos lost over $31 million. It never made a penny, let alone any profit.

The only support offered by Jaubert for these supposed damages, which he claims amount to $100,000,000, are an Ernst & Young Financial Plan prepared in 2006, in which profits, costs and expenditures were projected for a six year period and claimed "massive media attention," purported "pending" contracts, distribution agreements not yet "finalized," and "legitimate and eager customers." Such "proof" is insufficient as a matter of law to establish the type of "substantial certainty" as to damages required for lost profits. See supra n. 2-3.

**Seahorse**. Jaubert's claim for lost profits that would allegedly have been made *by* **Seahorse** is wholly unfounded. In the first instance, any losses suffered by Seahorse are Seahorse damages, not Jaubert's.

In any event, as Jaubert admitted, as of 2004, when Seahorse ceased operations, Seahorse had never made a profit. Ex.2:52. In the absence thereof, and with no other yardstick by which to measure damages, a claim for lost profits fails as a matter of law. See, e.g., Sihle Ins. Group, Inc. v. Right Way Hauling, Inc., 845 So. 2d 998, 1001 (Fla. 5th DCA 2003) (lost profits unrecoverable when tax returns showed that business never had reported a profit and, as a matter of law, "[i]n most cases, an award of lost profits requires a history of past profits over a reasonable time"). In fact, the submarine business Jaubert operated prior to Seahorse, from 1996 to 2000, in Puerto Rico, similarly made minimal to no profits during its entire existence.[5]

---

[5] Much of the evidence cited in this section is from Jaubert's recent damages deposition, which Dubai World was permitted to take after the discovery deadline. This deposition provides further support to Dubai World's summary judgment motion and specifically that Jaubert suffered no damages in his claims.

7

## II. JAUBERT'S DAMAGES CLAIMS FOR ABUSE OF PROCESS AND DEFAMATION FAIL

In his response, Jaubert explains the basis for his abuse of process and defamation damages and, in so doing, shows that what these claims are really about is conviction in Dubai. That is not the claim sued upon, nor could it be legally under this Court's Order of July 9, 2010 and the "act of state" doctrine.

Jaubert writes that Dubai World's alleged abuse of process and defamation "resulted in Mr. Jaubert's *in absentia* trial and conviction in Dubai." (DE 154 at 8). Jaubert continues that his conviction in Dubai, in turn, "resulted in the Interpol notice naming Mr. Jaubert, effectively preventing Mr. Jaubert's international travel without the fear of being detained by non-US governments." Id. According to Mr. Jaubert, this conviction and the Interpol notice effectively prevented him for working in his chosen profession as the "submarine business is not a locally based business, but, instead, is one that requires travel throughout the world, customers are not individuals, but are tourist-based businesses and governments." Id.

That theory is dubious on its face -- indeed, Jaubert testified that he in fact turned down submarine work based upon this lawsuit, Ex.2:99 – but taken as true it is now clear that Jaubert cannot claim **any** of these damages. Simply put, **Jaubert has not, nor is he permitted under the law, to seek damages based upon his criminal convictions in Dubai**. Jaubert, has not, nor is he permitted to try the actions of the Dubai authorities or to have the jury award damages based upon his foreign conviction for fraud.

Indeed, it is now clear that Jaubert's damages claims for abuse of process and defamation are legally and factually unsupportable. Those claims are either barred legally as violation of the act of state doctrine, are factually inaccurate, or both.

8

A.      **The Abuse of Process Damages Are Not Recoverable**

According to Mr. Jaubert, his damages for abuse of process are both economic and emotional. None are recoverable.

**Alleged Economic Losses.** Jaubert claims for alleged economic losses on the abuse of process claim for 1) monies lost due to his purchase of a sailboat to escape his conviction, 2) other monies spent on his escape, 3) monies allegedly lost on properties, including his house, in Dubai due to his escape. Ex. 1, at pg. 4.

None of this has anything to do with Jaubert's abuse of process claim. In that claim, Jaubert has claimed only that, in May 2007, Mr. Abdul Qadar Obaid Ali, acting on behalf of Dubai World, demanded that Jaubert pay $360,000 and then and execute a false settlement of his account in exchange for his passport. (DE44¶ 126). Jaubert later claims Mr. Abdul Qadar Obaid Ali increased his demand to $800,000 in February 2008. Id. ¶ 127; see also DE91 at 3-4.

Interestingly, it is now clear that Jaubert **did not pay** these demands. According to his interrogatory response, Jaubert claims that he paid only $45,000 and claims he is allowed prejudgment interest based upon this alleged coerced statement. Ex. 2, at pg. 3.[6] That, at best, is his entire economic damages claim.

Jaubert cannot claim any of these remaining economic damages. All these alleged damages stem from his **conviction**, not any alleged threats. He claims he lost monies on properties he had to sell and other expenses due to his having to leave Dubai. He claims that this is due to the fact of his "5 year prison sentence in Dubai." (DE 154 at 6). He further contends

---

[6] Jaubert claims he was extorted, but in truth he incurred no damages. The only money Jaubert paid Dubai World was about $38,000 (not $45,000). Those funds were to reimburse Dubai World for personal legal expenses for a lawsuit against Jaubert that was filed before he joined the company. There were no payments on any alleged extortionate demands and for expenses relating to Jaubert's second Hummer in Dubai.

9

that he has been damaged by the Interpol notice. Id. All of that is not recoverable.

Not only are these alleged damages not grounded on the claims sued upon, this Court already has held that such claims would be barred by the act of state doctrine. In this Court's July 9, 2010, order denying Dubai World's motion to dismiss this count based upon, *inter alia*, the act of state doctrine, this Court specifically stated that Jaubert's "abuse of process claim does not require this Court to make a ruling regarding the validity of his arrest, interrogation, or the issuance of process against him." (DE 91 at 8). Yet, that is **exactly** what Jaubert would have this Court do here. He seeks damages that are directly related to the fact that he has been convicted in Dubai. As this Court itself recognized, it cannot inquire into the "'validity of the public acts a recognized foreign sovereign power committed within its own territory.'" Id. (citing Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 401 (1964)). Jaubert's efforts to do so here should be denied.

**Alleged Emotional Distress Losses**. For the same reason, Jaubert's emotional distress damages fail. In his supplemental interrogatory, he claimed damages for "mental anguish" for the safety of his family and his alleged "inability to travel aboard without worry and fear of being retained." Ex.2, at pg. 4. Again, any distress that Jaubert suffered was due to his conviction. The fact that he cannot travel abroad also is due to the Interpol notice due to his conviction. Again, he cannot recover these alleged damages as a matter of law.

**B.    The Defamation Damages Are Not Recoverable**

A review of Jaubert's damages claim for his defamation claim reveals that is identical to his claim for abuse of process. Again, he claims he lost business opportunities due to the alleged defamation and abuse of process due to his in absentia conviction in Dubai. (DE 154 at 8). Lest

10

there is any confusion, the "Defamation" portion of his memorandum explains that the reason he cannot work is that Interpol has placed a notice on him due to his conviction. Id.

**But, that has absolutely nothing to do with Jaubert's defamation claim.** Jaubert's defamation claim is not even based upon his conviction (of course, if it was, it would be barred by the act of state doctrine, see supra).

The defamation is based solely on a single statement made by a Dubai World representative to a journalist for *The Washington Post* in an article that appeared on August 19, 2009. That journalist, who was relying on Mr. Jaubert's representations including the recording of an alleged interrogation, quoted a Dubai World representative as saying: "Jaubert and his submarine venture ran into trouble for other reasons: His submarines didn't work, and auditors uncovered evidence of fraud involving overbilling for equipment purchases."

Not only has Jaubert not claimed that that article caused him any damages, he is now admitting that all his damages are directly related to his arrest. Those damages would have been suffered had this article appeared or not. The defamation damages should be stricken.

### III. Mr. Jaubert's Failure to Timely Supplement his "Damages" Justifies Exclusion of All Evidence of his Purported Damages

Jaubert does not dispute that, prior to his recent "supplemental" interrogatory response, he had failed to update his discovery disclosures as to damages or that he now has increased the amount of damages he seeks many times over, from US$20 million to hundreds of millions of dollars. Indeed, Jaubert admits that "[i]t is clear that Dubai World was entitled to a more detailed statement of Mr. Jaubert's damages and Mr. Jaubert does not dispute this." DE149:2. Nevertheless, Jaubert seeks to excuse his submission of his "supplemental" interrogatory response a mere month and a half prior to the commencement of trial, on New Year's Eve, based on the contention that the information upon which his new damages calculations are based "had

[] otherwise been made known to [Dubai World] during the discovery process," DE154:3 (citing Rule 26(e)(1)(A)), and this Court's October 6, 2010, Order allowing him to supplement his damages evidence. Jaubert is wrong and, in any event, several categories of new damages disclosed by Jaubert for the first time now should be stricken.[7]

As an initial matter, the alleged information upon which Jaubert's new damage calculations are based *was not* "otherwise made known" to Dubai World during the course of discovery. Jaubert's repeated mantra that Dubai World has in its possession documents to support his newly found $500 million damage claim, does not bring those documents into existence. Nor, does his admission that he left any documents that would have substantiated his

---

[7] Jaubert cites a string of cases, all from other jurisdictions, and each is inapposite. Unlike those cases, the challenged categories of damages being supplemented here previously had not been identified in a timely manner nor have the documents ever been produced. See, e.g., Creswell v. HCAL Corp., 2007 WL 628036 (S.D. Cal. 2007) (allowing plaintiff to seek emotional distress and punitive damages identified in deposition and to interpret "lost income" to include benefits since former necessarily includes latter, but requiring plaintiff to submit supplemental disclosure specifying exact components of lost income and calculations for each and allowing defendants additional time for discovery and leave to submit motion for summary judgment); Capuano v. Consolidated Graphics, Inc., 2007 WL 2688421 (N.D. Ill. 2007) (evidence as to identified category of damages allowed when based on testimony of other party's witnesses and documents); Gayle Martz, Inc. v. Sherpa Pet Group, LLC, 651 F. Supp. 2d 72, 81 (S.D.N.Y. 2009) (damages based on defendant's account system and royalty payments based solely on documents produced by defendants); Davis v. City of Springfield, 2009 WL 4065049 (C.D. Ill. 2009) (back pay allowed when based on information in City's possession, documents produced by the City and testimony of City witnesses regarding pension and police compensation); Vitek v. AIG Life Brokerage, 2008 WL 4372670 (S.D. Oh. 2008) (calculation of damages not disclosed in initial disclosures with damages claim generally substantially justified when same was based on documentation not provided by defendant until after close of discovery); Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co., 170 F.3d 985, 992-93 (10th Cir. 1999) (refusing to overturn jury verdict based on expansion of "compensatory damages" when, *inter alia*, computation was based in part on calculation provided by defendant, and disclosure and deposition occurred prior to court's ruling that ERISA preempted number of claims, causing party to modify damages theory); Phil Crowley Steel Corp. v. Macomber, Inc., 601 F.2d 342 (8th Cir. 1979) (revised method of calculation, reducing damages sought by plaintiff, allowed when based on same information as previous method). Other than a generalized statement that the documents that he needs are in Dubai World's possesstion – of which is there is evidence – Jaubert has not produced these documents. In any event, as shown above, those documents, even if existed and were found, would not support his claims anyway.

12

claims in Dubai and that they no longer exist or are accessible, substantiate what he claims those documents would have contained. In fact, as became evident during Jaubert's deposition, his newly conceived calculations of damages largely are based on his bald statements as to what those documents would have shown, unsubstantiated and inconclusive projections and negotiations, and figures that Jaubert only recently calculated based on a number of assumptions not supported by any facts in the record.

Nor did this Court's October 6, 2010, Order grant Jaubert unrestricted license to cure his admitted failure to timely supplement his interrogatory responses months after the expiration of the deadlines for expert designations, for the close of discovery, and the submission of motions for summary judgment. Rather, consistent with what had been agreed to by the parties, DE134, this Court granted Jaubert leave "to supplement the record with additional evidence regarding his damages" and granted Dubai World the right, if Jaubert did so, to "conduct additional discovery limited to the issues raised by the additional damages evidence." A supplemental interrogatory response, submitted months after the Court's Order, with a mere month and a half left before trial, definitely was not what Dubai World had in mind, and surely was not what the Court intended in allowing "additional evidence" and subsequent "additional discovery."

As set forth at length in Dubai World's Expedited Motion for Expedited Briefing on Motion in Limine to Exclude Economic Damages Evidence or for Status Conference, DE148, and Reply in Support thereof, DE158, Jaubert's "supplemental" interrogatory response at this late date is neither substantially justified[8] nor harmless, and thus should be disregarded by this

---

[8] Indeed, if, as Jaubert now contends, all the information necessary for his damages calculations has been in the record and available to both parties for months, which Dubai World contests, it is hard to conceive any justification for Jaubert waiting until this late date to supplement his interrogatory responses to include the "detail" it admits Dubai World is entitled to. No such justification exists.

Court altogether and stricken from the record. This "additional evidence" is too little too late and sanctions under Rule 37 for failure to timely supplemental discovery by barring Jaubert from presenting any evidence as to his purported economic damages at trial is proper. Furthermore, as shown in Dubai World's reply, Jaubert agreed to produce this evidence within 30 days of the Court's permission for allowing him to supplement, but he did not do so. DE158, at 2-3.

In any event, Jaubert should not be permitted to present evidence as to the following categories of damages interjected into these proceedings for the first time in Jaubert's "supplemental" interrogatory response. Indeed, Jaubert has never so much as implied that he is seeking the following damages as to the claims he now is asserting:

1. loss of deposits made on properties in Dubai;
2. loss of potential sales price obtained for sale of house in Dubai;
3. the purported reduced value for which he sold the assets of Seahorse allegedly based on Dubai World's promises of future profit-sharing in Exomos;
4. the value of hull and equipment for a submarine that was listed as part of the sale of Seahorse's assets to Dubai World;
5. non-payment for services rendered to Dubai World;
6. non-payment for balance due for 2 submarines sold by Seahorse to Dubai World; and
7. loss of consortium.

The only "evidence" in the record relating to these categories are documents showing deposits made on properties in Dubai held in the name of Jaubert's wife; the sales contract for his house in Dubai; and contracts for the purchase of Seahorse's assets, for the employment of Jaubert by Exomos, and for the sale of submarines to Dubai World by Seahorse.

Jaubert cannot recover these damages in this action in any event: Jaubert lacks standing to recover deposits made on properties held in the name of his wife; the only basis for the purported reduced sales price on his house in Dubai was only learned at his deposition, and is based on the subsequent re-sale thereof for a higher price; and the remaining categories of damages are the subjects of contracts for which Jaubert is not asserting claims for breach of

14

contract.

And, with respect to the claim for loss of consortium, Jaubert never before had alleged or claimed he was seeking such damages with respect to his claims for fraud, abuse of process, or defamation. To the contrary, he initially sought damages for "loss of consortium" in connection with his false imprisonment claim, DE17 ¶ 115, which he later dropped. DE44. Jaubert thus abandoned any such claim for loss of consortium and cannot revive that claim now.

Jaubert should be prevented from presenting any evidence as to each of these "new" categories of damages under Rule 37. See, e.g., Creswell v. HCAL Corp., 2007 WL 628036 (S.D. Cal. 2007) (cited by Jaubert) (granting motion in limine as to various categories of damages identified for the first time in the pre-trial scheduling order).

### IV.  Jaubert's Claims for Loss of Earnings as Reliance Damages Are Improper

Jaubert does not dispute that damages for loss of earning capacity are recoverable only if proven through competent substantial evidence or that such proof normally takes the form of past earning history and/or future earnings potential. DE143:13-14; DE154:14-15. He cannot.

Florida law is clear that, in order to recover damages for loss of future earnings, the party seeking such damages "must demonstrate not only reasonable certainty of injury, but must present evidence which will allow a jury to reasonably calculate lost earning capacity." Pruitt v. Perez-Gervert, 41 So. 3d 286, 289 (Fla. 2d DCA 2010) (internal quotations omitted) (trial court erred in not granting defendant's motion for directed verdict on future lost earning capacity when no evidence was presented from which the jury could have calculated the amount of that loss with reasonable certainty); see also W.R. Grace & Co.-Conn. v. Pyke, 661 So. 2d 1301, 1302 (Fla. 3d DCA 1995) ("a plaintiff must demonstrate not only reasonable certainty of injury, but must present evidence which will allow a jury to reasonably calculate lost earning capacity");

Miami-Dade County v. Cardoso, 963 So. 2d 825, 828 (Fla. 3d DCA 2007) (reversing jury award for impairment of future earning capacity because inter alia here was no evidence that his capacity to earn was diminished). "The purpose of a jury's award of damages for loss of any future earning capacity is to compensate a plaintiff *for loss of capacity to earn income* as opposed to actual loss of future earnings." W.R. Grace, 661 So.2d at 1302.

Instead, Jaubert contends that Dubai World misrepresented the law because there is no bar to Mr. Jaubert testifying as to his loss of earning capacity. DE154:14-15. Jaubert once again misses the point. Dubai World is not arguing that, given an adequate evidentiary basis, Jaubert could be qualified to testify as to his loss of earning capacity. He may or may not be.

The salient point, which Jaubert does not address, is that there are insufficient facts, documents, or other data in the record for Jaubert (or anyone) to establish what Jaubert's loss of earning capacity would be in this case with any degree of certainty, much less substantial certainty. Indeed, an analysis of relevant considerations to the determination of loss of earning capacity -- past earning history, future earnings potential, and "plaintiff's age, health, habits, occupation, surroundings, and earnings before and after the injury"[9] -- demonstrates that any attempt to quantify such damages would constitute little more than a guess.

First, with respect to his fraud claim, Jaubert seeks "loss . . . of employment and employment benefits, including salary, insurance, [and] vehicle" from Seahorse for an unspecified time period and amount. Ex1, at pg. 2. Jaubert admits that there is no documentary

---

[9] See, e.g., Cardoso, 963 So. 2d at 828; Subaqueous Servs., Inc. v. Corbin, 25 So. 3d 1260 (Fla. 1st DCA 2010) (previous tax returns); Florida Motor Lines Corp. v. Barry, 27 So. 2d 753 (Fla. 1946) (same); Loper v. Allstate Ins. Co., 616 So. 2d 1055 (Fla. 1st DCA 1993) (evidence as to earnings in position for which party was employable and qualified); Loftin v. Wilson, 67 So. 2d 185 (Fla. 1953) ("the person's health, habits, occupation, surroundings and any other elements, which in his case will be likely to operate for or against his expected length of life, as well as the fact that his earning power may diminish as his physical and mental strength decline").

16

evidence, no corporate or personal tax returns, or any other proof to substantiate his Seahorse salary and benefits between 2000 and 2004. Nevertheless, Jaubert attested that, for that period, he only remembers that he received a salary in 2003 and 2004 of $8,000 and $10,000 a month respectively. Jaubert was not able to quantify his benefits with any level of certainty either – he testified only as to what the costs of "benefits," specifically, use of a corporate vehicle and health insurance, ***probably*** were. No proof exists as to what salary Seahorse, which never made a profit, Ex. 2:52, would have paid Jaubert in future years, or even whether it would have survived the recession either. Nor does ***any*** evidence exist as to what Jaubert's future earning capacity is or whether he is wholly disabled from obtaining any employment for the rest of his life. Indeed, while Jaubert appears to contend he is perpetually unemployable, he recently was approached to participate in a venture in the Bahamas chartering submarines, his "profession," which he turned down based on this lawsuit (unjustifiably and in derogation of his duty to mitigate).[10] Based on the foregoing, it is wholly impossible for any jury to reasonably calculate, or even guess, as to what Mr. Jaubert's loss of income capacity and benefits at Seahorse would be. See Pruitt v. Perez-Gervert, 41 So. 3d 286, 289 (Fla. 2d DCA 2010) (damages disallowed when party "did not present any evidence of his post accident earning capacity or evidence that he was completely disabled from further employment"); Eagle Atlantic Corp. v. Maglio, 704 So. 2d 1104, 1105 (Fla. 4th DCA 1997) (reversing jury award for future earnings because it lacked evidentiary support).

Second, Jaubert's claim for "loss of salary to Mr. Jaubert due to his inability to be hired

---

[10] See Saleeby v. Kingsway Tankers, Inc., 531 F. Supp. 879, 891 (S.D.N.Y. 1981) (plaintiff suing for future lost earnings has "duty to mitigate by returning to work or by obtaining new work in other fields which are compatible with his ability, aptitude and general health," and plaintiff's failure to comply with duty mandated reduction in damages awarded).

17

in his profession, through his retirement age, valued at $7,500,000 and calculated based upon the salary and benefits paid to Mr. Jaubert by Dubai World," for defamation, fares no better. As an initial matter, Jaubert's sole basis for his calculation, the employment contract between himself and Exomos, had a five-year term that could be, but was not guaranteed to be renewed. In fact, it was terminated early due to Jaubert's conduct and the tens of millions of dollars of expenditures, with no profits in sight, incurred during the short period of its operations.[11] Nevertheless, Jaubert presumes that he would receive the contractual salary and benefits through his retirement, which he presumes to be the age of 70, approximately 16 years from the present. Jaubert offers no evidence as to the cost of the purported benefits, medical coverage, Jaubert claims to have received. And, again, Jaubert submitted no evidence, and none exists in the record, other than his voluntary refusal to renew negotiations purportedly commenced prior to his departure for Dubai for submarines and operation of a submarine charter business in the Bahamas, as to the extent or duration of Jaubert's purported loss of earning capacity. Any calculation of purported loss of earning capacity based on the foregoing, again, would be purely conjectural and little more than the random assignment of a figure as damages. Again, this is insufficient as a matter of law to recover loss of future earning capacity through retirement or at all.

This Court should grant Dubai World's motion in limine as to loss of earning capacity.

## CONCLUSION

For the reasons set forth more fully herein, and in Dubai World's Motion in Limine as to Economic Damages, Jaubert should be prevented from presenting any evidence on all the categories of damages that are the subject hereof.

---

[11] Jaubert also will be unable to prove causation with sufficient specificity based on this same reason. Jaubert's employment contract, for which he does not seek damages for the breach in any event, was terminated approximately a year ***before*** the allegedly defamatory article that forms the basis of his defamation claim was even published.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 20, 2011, I filed the foregoing document with the Clerk of the Court who will generate Notices of Electronic Filing to all counsel of record or other persons authorized to receive Notice of Electronic Filing generated by CM/ECF, including counsel for Defendants/Counterclaimant, William T. Hess, Esq., Hess & Heathcock, P.A., 40 Southeast Osceola Street, Stuart, Florida 34994.

Dated: January 20, 2011

Respectfully submitted,

By: /s/ Edward M. Mullins
Edward M. Mullins (Fla. Bar No. 863920)
emullins@astidavis.com
Annette C. Escobar (Fla. Bar No. 369380)
aescobar@astidavis.com
ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Telephone: (305)372-8282; Fax: (305) 372-8202

*Local Counsel*

- and -

Faith E. Gay (Fla. Bar No. 129593)
faithgay@quinnemanuel.com
David L. Elsberg*
davidelsberg@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel.: (212) 849-7000 / Fax: (212) 849-7100

A. William Urquhart*;
billurquhart@quinnemanuel.com
Laith D. Mosely*
laithmosely@quinnemanuel.com
Jon C. Cederberg**
joncederberg@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Tel.: (213) 443-3000 / Fax: (213) 443-3100
*ATTORNEYS FOR PLAINTIFFS*

*Admitted *pro hac vice*.
**Application for *pro hac vice* admission filed and pending