1               **UNITED STATES DISTRICT COURT**
               **SOUTHERN DISTRICT OF FLORIDA**
2                 **FORT PIERCE DIVISION**
               **CASE NO.  09-14314-CV-JEM**

3

4

5

6  **DUBAI WORLD CORPORATION, and its**
   **Subsidiaries, EXOMOS, NAKHEEL and**
7  **PALM MARINE,**

8               **Plaintiffs,**

9    **vs.**

10                       **Fort Pierce, Florida**
                       **February 14, 2011**
11  **HERVE JAUBERT, SEAHORSE**
   **SUBMARINES INTERNATIONAL**
12  **INCORPORATED, and Does 1-99,**

13               **Defendants.**
   _____

14

15

16            **TRANSCRIPT OF JURY TRIAL**
             **VOLUME 1 - PAGE 1-161**
       **BEFORE THE HONORABLE JOSE E. MARTINEZ**
17         **UNITED STATES DISTRICT JUDGE**

18

19

20

21

22

   **REPORTED BY:**        **DAWN M. WHITMARSH, RPR**
23               **Official Court Reporter**
               **400 N. Miami Avenue, 10S03**
24               **Miami, Florida  33128**
               **Telephone:  305-523-5598**
25

          **PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
             **TRANSCRIPT PRODUCED BY COMPUTER**

1    **APPEARANCES:**

2    **FOR THE PLAINTIFFS:**
                    *Quinn, Emanuel, Urquhart & Sullivan, LLP*
3                   **BY: JON C. CEDERBERG, ESQ.**
                    **BY:  A. WILLIAM URQUHART, ESQ.**
4                   865 South Figueroa Street
                    10th Floor
5                   Los Angeles, CA  90017

6                   *Astigarraga, Davis, Mullins & Grossman*
                    **BY:  EDWARD MULLINS, ESQ.**
7                   701 Brickell Avenue
                    16th Floor
8                   Miami, Florida 33131

9

     **FOR THE DEFENDANTS:**
10                  *Hess & Heathcock, PA*
                    **BY:  WILLIAM HESS, ESQ.**
11                  **BY:  KATHRYN A. HEATHCOCK, ESQ.**
                    40 Southeast Osceola Street
12                  Stuart,  Florida 34994

13

14

15

16

17

18

19

20

21

22

23

24

25

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2          COURTROOM DEPUTY:  Case number 09-14314-civil-Martinez,
 3   Dubai World Corporation versus Herve Jaubert, Seahorse
 4   Submarines International, Incorporated.
 5          Counsel, please state your appearance, starting with --
 6   I'm sorry, the Plaintiff.
 7          MR. CEDERBERG:  Thank you.  Good morning, Your Honor.
 8   John Cederberg and Bill Urquhart from Quinn, Emanuel, Urquhart
 9   and Sullivan.  And with us is co-counsel, Ed Mullins from the
10   Astigaragga firm.
11          THE COURT:  Good morning.
12          MR. HESS:  William Hess on behalf of the defendant
13   Seahorse Submarines International, Inc. and Herve Jaubert, as
14   well as counter-Plaintiff Herve Jaubert, along with co-counsel
15   Kathryn Heathcock from the law firm of Hess and Heathcock.
16          MR. CEDERBERG:  Your Honor, I also should introduce to
17   the court our client representative, George Dalton from Dubai
18   World.
19          THE COURT:  All right.  Anything -- are we ready to
20   proceed?  Anything we need to talk about before we call the jury
21   in?
22          MR. CEDERBERG:  There's one concern we have, Your Honor
23   and I don't know if we should do it now or if we should wait
24   until we get the jury selected, and that is we're very concerned
25   that Mr. Jaubert's counsel is going to bring up things in
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    opening statement, and even by the voir dire questions that we

2    believe are excluded by the Act of State Doctrine.  We've got a

3    brief on that.

4          But if the Court is not going to let the attorneys voir

5    dire about certain areas, we can put it off until before opening

6    statement at the Court's pleasure.

7          THE COURT:  My inclination is not, but if it comes in,

8    I would assume that, I will tell them not to and that they're

9    going to look bad in front of the jury when they get a chance to

10    -- you know, when they don't get a chance to continue talking

11    about something.

12          MR. CEDERBERG:  Our concern in opening is we're giving

13    an opening staying away from all those areas and if counsel

14    gives an opening and starts going in those areas and somehow

15    it's allowed, we're sandbagged.

16          THE COURT:  Well, if it's something that's not part of

17    the lawsuit, I will rule on it.  But I'm not -- I don't like to

18    tell people what to say.  If they say it and it's bad enough, I

19    will have sanctions.  Just depends on what it is.  I don't like

20    to prejudge things.  I like to hear it in the context in which

21    it comes.  But you know, I don't know what you're talking about

22    and I'm not, you know, going to at this point say, you know,

23    just say don't do a particular thing.  I don't know.  I'm not

24    going to rule on it at this point.  We can talk about it after

25    we select the jury before we do opening statements and you can

1    be more specific.  That would be helpful.

2         But at this point I don't really know what you're

3    talking about and I don't know how I'm going to rule.

4         MR. HESS:  Judge, may I also, if I may, the counsel for

5    Dubai World is under the impression that Your Honor constrained

6    us in our presentation of evidence at calendar call and by the

7    summary judgment.  Your Honor at calendar call said specifically

8    I'm not going to constrain them, I'm not going to tell them what

9    they can't bring in at this time.  Now they have a different

10   opinion about what Your Honor said.

11        I don't know what it is specifically, I haven't seen

12   the brief they just talked about, I don't know exactly what it

13   is they're accusing me of wanting to bring in.  I made myself

14   available at 4:00 yesterday, they never called me.  So I made

15   every effort to confer with counsel, but having said that, we

16   also have an issue on -- we believe that counsel is going to

17   attempt to elicit and bring in in the video taped deposition of

18   Mr. Jaubert inadmissible evidence that is hugely and highly

19   prejudicial to the case.  And once that cat is out of the bag,

20   it's going to be running around the courtroom for the rest of

21   the two weeks.

22        THE COURT:  If it's that prejudicial and it's not

23   admissible, then it won't be going around for two weeks because

24   we will be in a mistrial and we'll start over again some time in

25   the future.  And I suspect that will be kind of expensive.  But

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1    that's a different problem.

2            I understand what you're saying, I wish you would play

3    nice.  If you don't, I'll deal with it.  Okay?

4            MR. CEDERBERG:  Okay, Your Honor.  Thank you.

5            THE COURT:  All right.  Please bring in the jury.

6            As you know, we're having trouble with our sound

7    system.  Kind of hard to justify spending a lot of money on the

8    sound system when the new courthouse is close to being ready.

9    You know, I'm not real sure if the --

10           COURT SECURITY OFFICER:  All rise for the jury.

11           (Panel in at 9:55 a.m.)

12           THE COURT:  Please be seated.

13           Case set for trial today is that it Dubai World

14   Corporation, et al versus Herve Jaubert and Seahorse Submarines

15   International, Inc., case number 09-14314-civil-Martinez.

16           Are counsel ready to proceed?

17           MR. CEDERBERG:  Yes, Your Honor.

18           MR. HESS:  Ready, Judge.

19           THE COURT:  Okay.  Ladies and gentlemen, I want to

20   welcome you to our courtroom.  I'm District Judge Jose Martinez

21   and I will be presiding over this case.  The jury is one of our

22   most cherished rights, it is recognized, preserved and protected

23   by our constitution.  Jury service is one of the most important

24   duties that a citizen is called upon to perform.  Without you,

25   our judicial system would not function.

1    I'm aware that for some of you, this is your first call

2    to jury service and that these proceedings are totally

3    unfamiliar to you.  Please do not be apprehensive.  As we go

4    along, the attorneys and I will acquaint you with the

5    proceedings and I will instruct you as to your role and your

6    duties.  If you have any questions, hold them, I think they'll

7    all be answered during the process.

8    During the trial, you'll be working with several court

9    personnel, I would like to introduce them to you at this time.

10   Our courtroom deputy is Wanda Holston.  She's the lady that

11   brought you in.  The one that has a frog in her throat.  Ms.

12   Holston runs my courtroom calendar and she'll make sure that you

13   have everything that you need.  If she doesn't drop dead from

14   whatever it is she has in the next couple days.

15   Our court reporter is Dawn Whitmarsh, this lady sitting

16   here in front of me.  She transcribes and takes down everything

17   that is said in the courtroom, including the statements that I'm

18   now making and the questions that will be propounded to you and

19   your answers and all other matters in this case.  So please, the

20   one thing is she can't write it down if she can't hear it.  So

21   we're going to be -- we have a portable microphone and it will

22   be handed to you when it's your turn to speak.  I ask you to do

23   thing, make believe you've had a few drinks and you're at

24   karaoke night and that you really want people to hear you.  That

25   you think you sound pretty darn good and you want everybody in

8

1    the room to hear you, because that's the only way we're going to

2    get it out.  The sound system in this room is terrible and it's

3    now worse than ever.  There's something wrong with it.  For some

4    reason, it would appear that they thought that we were having

5    the Harlem Globe Trotters coming in to speak and all those

6    microphones seem to be pointing straight up at the ceiling.

7    Pull them down so they're facing -- they do bend and I don't

8    know why they have it that way.  But when you get it, you have a

9    hand-held microphone.  I ask you to please tell us your name

10   each time that you speak.  Because unfortunately we got 50 of

11   you in here.  You all walked in.  We have your names, but it's

12   really hard to put a name to a face the first time you see 50

13   people.  I don't do parlor tricks like remembering people's

14   names by pneumonic devices or some sort of thing.  Please use

15   the microphone and repeat your name and I'll remind you when you

16   ask questions.

17            We also have court security officer, Randi Ramos.

18   Randi is the lady in the blue blazer and gray flannel slacks.

19   The court security officers are kind of fungible.  She might

20   need to take a break, another one will come in an take her place

21   but there will usually be one hanging around.  Their jobs are to

22   enforce my orders and take charge of the jury.  The lady right

23   in front of me is my law clerk, Anne Forkner.

24            If you desire information concerning your personal

25   welfare, you should make your inquiries to the court security

1    officer, the court reporter, the courtroom deputy or my law

2    clerk who will arrange, if necessary, with me to hear you.

3    However, you must not question the court security officer, or

4    any of these folks concerning the case.  Because the one abiding

5    principle in this is this case must be decided only on the basis

6    of whatever happens in the courtroom.  You're not supposed to go

7    out and do your own research.

8           Our instruction list keeps getting longer and longer

9    because I don't even know all the names of the social networking

10   places that you can go and look stuff up on, but don't use any

11   of them.  We have had very bad luck with people deciding that

12   they probably could figure this out a lot better than those

13   silly lawyers and judges could tell us and they go out start

14   checking.  I had one lady in Key West that decided that my

15   definition of something, I don't remember what it was, wasn't

16   really very good and she called her expert who is her sister,

17   who is a paralegal at a local law firm and got her definition

18   then started trying to tell all the other jurors, no, the judge

19   is wrong, my sister says that means this, which of course meant

20   that we couldn't keep going.  So we had to start all over again.

21   That's not good.

22          And we've also had cases where one of the things that

23   we ask of you and we instruct you is don't make up your mind

24   until the case is over.  Keep an open mind.  Don't make up --

25   don't make your decisions yet.  And consequently, in order for

1    you to talk about the case, you have to make a decision.  You

2    have to formulate something in your mind that then becomes

3    words.  So that's a reason we ask you not to talk about the

4    case.

5         If you go home and you're asked did you get on the

6    jury?  Yes, I did.  What's it about?  I'll tell you about it

7    when it's over.  That's really the best way to deal with it.

8    Don't talk about the case, and we have had jurors that have gone

9    on Face Book saying oh, you won't believe the junky case I'm on

10    now.  This idiot says this and that and it's -- what they're

11    doing is making up their mind before all of the evidence is in.

12    And worse than that, talking about private business publicly.

13    So we ask you to please don't do that.

14         Ladies and gentlemen, the attorneys and I will be

15    asking you questions touching on your qualifications to serve as

16    jurors in this particular case.  This part of the case is known

17    as the jury selection.  This examination is for the purpose of

18    determining if your decision in this case might be effected in

19    any way by opinions you now hold or by some personal experience

20    or special knowledge you may have concerning the case to be

21    tried.  This is a civil case, but as an example, if we had a

22    case involving rape and one of the prospective jurors had been

23    the victim of one, it would be very hard to expect that person

24    to be totally unbiased about things like that and consequently,

25    probably would not be a very good juror in that type of case.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    So your personal experiences, your background, all of that is

2    information that we want to hear.

3            But please understand that this questioning is not

4    meant to pry into your affairs for personal reasons.  It's only

5    for the purpose of obtaining an impartial jury.  I was a trial

6    lawyer for 37 years before I became a judge.  I tried, I would

7    say, safely, hundreds of cases.  Selected juries in hundreds of

8    cases.  I do not remember one answer that was ever given to me

9    during a jury selection examination.  Period.  You'll see the

10   lawyers, some time later on they'll probably have a little piece

11   of paper in front of them, they'll have it sideways so they can

12   draw a chart and they'll put little boxes and put your name and

13   they might make a note here or there and after the jury has been

14   selected, they'll put it in their briefcase and probably never

15   look at it again.  And when the case is over, they'll throw it

16   out.  If something comes up about a juror during the case,

17   they'll run, get their briefcase and look it up and see, but

18   it's not something they really have a need to -- like I said,

19   it's not for personal titillation that we ask you this

20   information.

21           Not all of you will have the privilege to sit as jurors

22   in this case.  There are many reasons why a person may not be

23   selected as a juror.  There are -- each side can ask that you be

24   excused without giving a reason, or I can excuse you.  If you

25   are excused, please do not be offended or feel that your honesty

1        or integrity is being questioned.  It is not.

2               On the other hand, if you have a lawyer friend that

3        said to you this is the answer you have to give in order to get

4        out of being on this jury, don't do that.  I've been around the

5        block too many times, I recognize those answers and I promise

6        you, you will not be on the jury.  You will succeed in that.

7        However, you will be coming back every day sitting on the other

8        side of the bar in the courtroom getting a civics lesson on how

9        important jury duty is to be an American citizen.  So it isn't

10       going to get you out of anything.

11              That doesn't mean if you have a legitimate reason, talk

12       to me about it.

13              You will now be sworn.  Ms. Holston, would you please

14       administer the oath.

15              COURTROOM DEPUTY:  Yes.  All prospective jurors please

16       stand, raise your right hand.

17              (Jury panel sworn)

18              THE COURT:  Please be seated.

19              Ladies and gentlemen, you have now been sworn and you

20       are under oath.  That means that if you answer any questions

21       falsely, then you can be charged with perjury.  That's not funny

22       and that's not fun and it's not something that anybody wants to

23       do, but the reason I say this is because oh, maybe, two years

24       ago, the Miami Herald was incensed because a young juror in

25       Broward County was jailed by the judge because in about the

1  fourth or fifth day of the trial they discovered that he had

2  forgotten that he had a felony conviction.  You know, I kind of

3  feel like I would remember if I had a felony conviction.  I

4  mean, I might not remember what it was for if there were a bunch

5  of them, but I think I would probably remember.  And

6  consequently, it was a mistrial and they had to start all over

7  again.  And it was very, very troublesome and very expensive and

8  the judge was annoyed and I happen to know this judge, she's a

9  former assistant United States attorney in Miami, and I thought

10  she was right.  You can't let that the system get that way.

11       So please don't misunderstand me, I'm not threatening

12  you, I'm just telling you that "I don't know" is a perfectly

13  acceptable answer, "I don't remember" is a perfectly acceptable

14  answer.  But there are some things that you kind of have a

15  tendency to remember.  If you ever ask a parent have you ever

16  lost a child, that's not something a parent is going to forget.

17  One classic question which I asked many, many years ago, Mr. So

18  and so, isn't it true that on such and such a date you were in a

19  DC 3 that crashed in a Colombian jungle with 20,000 pounds of

20  marijuana onboard and the answer was I don't remember.  Okay.

21  Hard to believe.  But as I said, "I don't know" and "I don't

22  remember" are perfectly acceptable.  Do your very best.  That's

23  all we ask of you.  You're not expected to remember every little

24  detail about everything.

25       Ladies and gentlemen, this case is expected to last

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1   approximately two weeks.  We will be done before the end of next
2   week and the reason I promise you that is because we only have
3   the courtroom for two weeks.  There are three of us that sit up
4   here.  Judge Graham, Judge Moore and myself.  Judge Graham just
5   finished last Friday with his two weeks, I finish in two weeks
6   and Judge Moore comes down here for two weeks.  Judge Moore does
7   not share well.  If we extend, we will probably be trying this
8   case in the hallway.  But I've been assured by the parties that
9   it will be finished in two weeks.  And you will notice that I'll
10  be a little hostile to them and urge them along and I don't mean
11  anything by that, I don't mean that they're not doing their
12  best, I don't mean they're not good lawyers, I don't mean that
13  they're doing anything improper, but I think part of my job is
14  to try to move the case along and I do, I take that part very
15  seriously.  And so I will pushing them.

16         Ordinarily, our cases are two, or three days, four
17  days, sometimes as many as a week.  But two weeks is getting in
18  there as far as length is concerned, and when it is your turn to
19  speak and when I ask you questions, I hope that you will bring
20  to my attention anything that makes it difficult or impossible
21  for you to be a fair and impartial juror in this case as a
22  result of it being two weeks long.  If some of you have like a
23  doctor's appointment that you've waited months to get, let us
24  know because, you know, federal judges are not the all powerful
25  people that we think we are; however, we can usually get doctors

1    to take our calls and consequently, sometimes we can call and

2    make other arrangements, sometimes we can work with you,

3    sometimes there are things we cannot work with, but please make

4    sure you bring it to my attention so we can try to deal with it

5    and if we can't deal with it, then we'll deal with the fact that

6    we can't deal with it, we'll do whatever we need to do.

7         Does the length of the -- if the length of the case

8    presents any problems to you, when you're being questioned,

9    please do not forget, tell me about it at that time.

10        Another problem that we've had in the past few months

11   is that apparently I have intimidated some people and they're

12   afraid to say something.  I don't intend to intimidate you, I'm

13   a very unintimidating person, I like people, I like to joke

14   around, I like to be friendly to people, I'm not going to hurt

15   your feelings and you're not going to hurt my feelings if you

16   tell me you have this problem.  And the second day of a jury

17   trial, a juror approached Wanda and told her I really can't do

18   this because I have to be in New York tomorrow.  Why didn't you

19   tell the judge?  I was afraid to.  Come on.  Tell me.  If you

20   don't tell me now, it's still going to come up, it's still going

21   to be a problem.  So please bring up any issues that you have.

22        In this case, the Plaintiff, Dubai World and its

23   subsidiary companies Exomus, Nakheel and Palm Marine, those are

24   the three companies, allege that the defendants, Herve Jaubert

25   and Seahorse Submarines International, Inc., are liable for

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1    breach of contract, fraudulent inducement, negligent

2    misrepresentation and conversion, and they allege the defendant

3    Jaubert is also liable for a breach of fiduciary duty.

4         The defendants, Jaubert and Seahorse Submarines deny

5    that Plaintiffs' claims.  They claim -- they allege that

6    Plaintiff, Dubai World, is liable for abuse of process.  Dubai

7    World denies Jaubert's claim.

8         Has anyone heard anything about this case?  I'm not

9    suggesting that you should.  You have, sir.  All right.  What is

10   your name?

11        PROSPECTIVE JUROR:  William Crompton.

12        THE COURT:  William Crompton?  Okay.  You read

13   something about it in the newspaper?

14        PROSPECTIVE JUROR:  Just it involved mini subs.

15        THE COURT:  What paper was that that you read it in?

16        PROSPECTIVE JUROR:  I think it was the Stuart News.

17        THE COURT:  The Stuart News?  We'll get to talk to you

18   a little bit more about that later but thank you very much.

19        PROSPECTIVE JUROR:  Excuse me.  I also --

20        THE COURT:  Pass the microphone.  Isn't it working?  Of

21   course not.  Why would it?

22        Stand up and speak loudly.  Make believe that really

23   works.

24        PROSPECTIVE JUROR:  Hi.  I also read the article.

25   Karen Kravitz.  I read it in the Port St. Lucie news a few days

1    ago.

2             THE COURT:  Okay.  We'll deal with that, we'll talk to

3    you separately about that.  Just make a note of the names

4    please, Anne.  Back row?

5             PROSPECTIVE JUROR:  Hi.  Heidi Lemberg.  I did not read

6    an article, but my dad said there's a big case starting,

7    something Dubai.  He read the article.

8             THE COURT:  We'll ask you about it.

9             PROSPECTIVE JUROR:  William Hatch, actually I've seen

10   two articles in the Martin County paper.

11            THE COURT:  When were they?

12            PROSPECTIVE JUROR:  One was about four days ago and one

13   was about seven or eight days ago.

14            THE COURT:  Okay.  Thank you, sir.  We'll talk to you

15   about that separately.  Anybody in the audience part?  Okay.

16   Yes, ma'am.  Please tell us your name?

17            PROSPECTIVE JUROR:  Tiffany Bensley, and my dad told me

18   that there was a trial starting.  I don't really know a lot of

19   details, but he told me about Dubai and --

20            THE COURT:  Okay.  Thank you, ma'am.  All right.  Next?

21   Anybody else?  Okay.

22            If are you selected to sit on this jury, I will provide

23   you with instructions concerning the law that applies to this

24   matter.  Before I ask you the questions listed on the

25   questionnaire that was given to you, I'm going to ask the

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1   attorneys to introduce themselves and their clients starting

2   with the Plaintiff.  Please tell me if you know any of the

3   attorneys or parties.

4        MR. CEDERBERG:  Thank you, Your Honor.  Good morning.

5   My name is John Cederberg, with me next to me at counsel table

6   is Bill Urquhart and over here is Ed Mullins and at counsel

7   table also is our client representative from Dubai World, George

8   Dalton.

9        THE COURT:  Okay.

10        MR. HESS:  Good morning, everyone.  My name is William

11   Hess I'm here with my counsel Katherine Heathcock, and this is

12   Herve Jaubert who is the defendant and counterclaimant in this

13   case.

14        THE COURT:  Do any of you know any of the folks that

15   have been mentioned?  All right.  Pass the microphone please.

16   Yes, ma'am.  Tell us your name please?

17        PROSPECTIVE JUROR:  Tiffany Bensley and I've been

18   represented by Hess and Heathcock.

19        THE COURT:  Okay.  Thank you, ma'am.  Anybody else?

20   All right.

21        I'm also going to have the parties read a list of the

22   witnesses who are expected to testify at this case.  Please

23   listen carefully and tell me whether you know any of these

24   persons.

25        MR. CEDERBERG:  Jim Miller, Hussein Ramadan, AbdulQader

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1    Obaid Ali, Sultan Ahmed Bin Sulayem, George Dalton, Phil
 2    Nuytten, Dan Walsh, Ross Saxon, Herve Jaubert, Maria Yip, Ed
 3    Primeau, Yazan Saoudi, Lorenz Krueger, Leigh Cowden, Helen
 4    Jaubert, Eugene Lodrini, Tarek Ahmed, Khurram Nagaria, Laith
 5    Mosely and some custodians of records from Bank Atlantic and
 6    HSBC bank and possibly Nabil Abdelfattah or Donald W. Hanley.
 7    That's it.
 8          THE COURT:  All right.  Do any of you know any of those
 9    persons that were mentioned?  All right.
10          Counsel?  You can't find your witness list.
11          MR. HESS:  I can find my exhibit list.  I do have it
12    here.  Thank you.
13          THE COURT:  They have to share these things, so...
14          MR. HESS:  Sometimes we do share.  Thank you, ladies
15    and gentlemen.
16          Our witness list we may intend to call Herve Jaubert,
17    Helen Jaubert, Crister Turner, Fiona Turner, Marc Coute, Paul
18    Rodig, Jacques Micaleff, Vincent Forst, Charles Wilcox, Ray
19    Crump, Bert de Wisj, Paul Fuchs, George Heaslip, Marco Zeeman,
20    Ross Gielink, and then the other -- and then Greg Tosi, Durgesh
21    Thapa, Charles Staehl.  Thank you.
22          THE COURT:  Know any of those people?  All right.
23          Why don't we start with Laurie Pautenis.  Okay.  Yes,
24    ma'am.  If you could stand up, hold the microphone and face them
25    because they're the ones that matter.  They're the ones that
```

1    have a choice to make.

2              PROSPECTIVE JUROR:  Good morning, I'm Laurie Pautenis.

3              THE COURT:  What is your occupation?

4              PROSPECTIVE JUROR:  I'm a warehouse clerk.

5              THE COURT:  Where are you a warehouse clerk?

6              PROSPECTIVE JUROR:  At Jackson Drugs.

7              THE COURT:  How long have you been doing that?

8              PROSPECTIVE JUROR:  I'm in my 11th year.

9              THE COURT:  What part of the community do you live in

10   general area?

11             PROSPECTIVE JUROR:  St. Lucie, White City.

12             THE COURT:  White City.  Okay.  How long have you lived

13   in the greater, what is it, Treasure Coast area?

14             PROSPECTIVE JUROR:  I'd say 52 out of the 54 years.

15             THE COURT:  What is your marital status?

16             PROSPECTIVE JUROR:  Single.

17             THE COURT:  Do you have any children?

18             PROSPECTIVE JUROR:  No, sir.

19             THE COURT:  Have you ever served in the military?

20             PROSPECTIVE JUROR:  No.

21             THE COURT:  You ever been involved in a civil lawsuit

22   as a plaintiff, defendant or witness?

23             PROSPECTIVE JUROR:  No.

24             THE COURT:  Have any members of your immediate family

25   been involved in civil litigation?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1     PROSPECTIVE JUROR:  No.

2     THE COURT:  Do you have any physical, emotional or

3 language problems that would make it difficult for you to

4 participate as a juror?

5     PROSPECTIVE JUROR:  No, sir.

6     THE COURT:  Have you ever served on a jury before?

7     PROSPECTIVE JUROR:  Yes.

8     THE COURT:  Let me ask you this, let me define this for

9 everybody.  Right now you are not serving on a jury.  You're in

10 the jury selection process.  If you were selected one of the X

11 numbers number of jurors, and we started presenting the case to

12 you and in two days, we call you in and said thank you very

13 much, we've settled the case, good-bye, have a nice life, that's

14 not serving on a jury.

15     If the case were over and they've done the final

16 arguments and I've given you your instructions and you go back

17 into the jury room and you're in there ten minutes and I call

18 you out and say hey thanks a lot, we just settled the case,

19 that's not serving on a jury.

20     What I mean by serving on a jury for purposes of this

21 question, is selected, chosen, sit, instructed, go in the back,

22 deliberate and either have an opportunity to reach a decision

23 whether you do or you do not.  And then I'm only going to ask

24 you three or four questions about that.  What happens in the

25 jury room is your business.  It's not our business.  So all I'm

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

 1    going to ask you is number one, was it a civil case or a

 2    criminal case --

 3              PROSPECTIVE JUROR:  I believe it was a criminal.

 4              THE COURT:  Wait, let me just tell them what I'm going

 5    to ask them all.  Whether it was federal or state, whether it

 6    was criminal or civil, was the jury able to reach a verdict and

 7    were you the foreperson.  That's all we want to know.

 8              So now how many times?

 9              PROSPECTIVE JUROR:  Once.

10              THE COURT:  Was it state or federal?

11              PROSPECTIVE JUROR:  I believe it was state.

12              THE COURT:  And was it civil or criminal?

13              PROSPECTIVE JUROR:  Criminal.

14              THE COURT:  And was the jury able to reach a verdict?

15              PROSPECTIVE JUROR:  Yes, sir.

16              THE COURT:  Were you the foreperson?

17              PROSPECTIVE JUROR:  No, sir.

18              THE COURT:  Okay.  Can you think of any reason why you

19    could not sit on this jury and render a fair verdict based on

20    the evidence and the law as I will instruct you?

21              PROSPECTIVE JUROR:  No, sir.

22              THE COURT:  All right.  Thank you.  Pass the

23    microphone.  Hi.  What's your name?

24              PROSPECTIVE JUROR:  William Crompton.

25              THE COURT:  Talk to them, they're the ones that matter.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          Mr. Crompton what is your occupation?

2          PROSPECTIVE JUROR:  Marine biology ecologist.

3          THE COURT:  How long have you been doing that?

4          PROSPECTIVE JUROR:  Marine biology for 25 years.

5          THE COURT:  Okay.  And what particular job do you have

6     right now?

7          PROSPECTIVE JUROR:  Currently I'm working for an

8     ecological company monitoring a dredging project in the manatee

9     pocket.

10         THE COURT:  How long have you been doing that?

11         PROSPECTIVE JUROR:  Since August.

12         THE COURT:  What did you do before then?

13         PROSPECTIVE JUROR:  I was semi-retired, taking odd jobs

14    but the last major job I had was in aquaculture up at Harbor

15    Branch.

16         THE COURT:  What part of the community do you live in?

17         PROSPECTIVE JUROR:  Stuart.

18         THE COURT:  How long have you lived in this area?

19         PROSPECTIVE JUROR:  Since '98.

20         THE COURT:  What is your marital status?

21         PROSPECTIVE JUROR:  Divorced.

22         THE COURT:  How long you been divorced?

23         PROSPECTIVE JUROR:  Since, I think it was 2000 it was

24    finalized.

25         THE COURT:  Ten years, 11 years.  We don't care what

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

24

```
1       she does for a living then.
2               How about kids?
3               PROSPECTIVE JUROR:  one.
4               THE COURT:  How old?
5               PROSPECTIVE JUROR:  15.
6               THE COURT:  Student?
7               PROSPECTIVE JUROR:  Yes.
8               THE COURT:  You got to get them out working.
9               PROSPECTIVE JUROR:  Got to get them driving first.
10              THE COURT:  Yeah.  Maybe you can get Nike to open a
11      factory in the area or something.
12              Have you ever served in the military?
13              PROSPECTIVE JUROR:  No.
14              THE COURT:  Have you ever been involved in a civil
15      lawsuit as a plaintiff, defendant or witness?
16              PROSPECTIVE JUROR:  Yes, but it was sort of shuffled
17      off.  It was when I was much younger and had to do with a family
18      company and they tried dragging me in it and my father got me
19      out of it.
20              THE COURT:  Okay.  What was the nature of the case?
21              PROSPECTIVE JUROR:  It was a real estate transaction
22      that went bad.
23              THE COURT:  All right.  Do you have any physical,
24      emotional or language problems that would make it difficult for
25      you to participate as a juror?
```

```
 1                PROSPECTIVE JUROR:  No.

 2                THE COURT:  Have you ever served on a jury before?

 3                PROSPECTIVE JUROR:  Not to your definition.

 4                THE COURT:  Okay.  Can you think of any reason why you

 5      could not sit on this jury an render a fair verdict based on the

 6      evidence and the law as I will instruct you?

 7                PROSPECTIVE JUROR:  No.

 8                THE COURT:  All right.  We'll talk to you about your

 9      exposure a little later, okay?  Pass the microphone please.

10                Hi there.  What's your name?

11                PROSPECTIVE JUROR:  My name is Barbara Cooper.

12                THE COURT:  Ms.  Cooper what is your occupation?

13                PROSPECTIVE JUROR:  I'm not working at this moment.

14                THE COURT:  What are you not working from?  What do you

15      do when are you working?

16                PROSPECTIVE JUROR:  I used to be a presser.

17                THE COURT:  Talk into the microphone and talk to them

18      please.

19                PROSPECTIVE JUROR:  I used to be a press operator up in

20      Fort Pierce.

21                THE COURT:  How long have he been out of work?

22                PROSPECTIVE JUROR:  About almost five years.

23                THE COURT:  And what part of the community do you live

24      in?

25                PROSPECTIVE JUROR:  Stuart.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1                    THE COURT:  How long have you lived in this area?
 2                    PROSPECTIVE JUROR:  About 17, 18 years.
 3                    THE COURT:  What is your marital status?
 4                    PROSPECTIVE JUROR:  I've been married for about ten
 5          years.
 6                    THE COURT:  And does your husband work?
 7                    PROSPECTIVE JUROR:  No, he's not.  He's a roofer but
 8          he's not working now.
 9                    THE COURT:  Okay.  And how about kids?
10                    PROSPECTIVE JUROR:  Yes, I have three kids plus my
11          marriage from my husband.  I have four kids all together.
12                    THE COURT:  So you have three and a stepchild?
13                    PROSPECTIVE JUROR:  Yes.
14                    THE COURT:  Okay.  How old are they and do they work?
15                    PROSPECTIVE JUROR:  They all work.
16                    THE COURT:  What do they do?
17                    PROSPECTIVE JUROR:  Okay, I have a daughter that works
18          for Toyota here in Fort Pierce.  And I have a son that works for
19          Toyota in Fort Pierce and I have a son that works for the state.
20                    THE COURT:  Okay.  What does he do for the state?
21                    PROSPECTIVE JUROR:  All I know he works out on the
22          road.
23                    THE COURT:  Okay.  Have you ever been have you ever
24          served in the military?
25                    PROSPECTIVE JUROR:  No, I haven't.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          THE COURT:  Have you ever been involved in a civil

2     lawsuit as a plaintiff, defendant or witness?

3          PROSPECTIVE JUROR:  No, I haven't.

4          THE COURT:  Have any members of your immediate family

5     been involved in civil litigation?

6          PROSPECTIVE JUROR:  Not that I can recall at this

7     moment, sir.

8          THE COURT:  Do you have any physical, emotional or

9     language problems that would make it difficult for you to

10    participate as a juror?

11         PROSPECTIVE JUROR:  No, sir.

12         THE COURT:  Have you ever served on a jury before?

13         PROSPECTIVE JUROR:  I've been called like I'm called

14    now.

15         THE COURT:  But you have not served on a jury to

16    deliberate and decide a case?

17         PROSPECTIVE JUROR:  No, sir.

18         THE COURT:  Can you think of any reason why you could

19    not sit on this jury and render a fair verdict based on the

20    evidence and the law as I will instruct you?

21         PROSPECTIVE JUROR:  No, sir.

22         THE COURT:  All right.  Thank you.  Pass the

23    microphone.

24         Yes, sir.  Please tell us your name.

25         PROSPECTIVE JUROR:  Hassan Mowatt.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1              THE COURT:  Mr. Mowatt, what is your occupation?
 2              PROSPECTIVE JUROR:  I work as customer service
    representative at Simple Mobile, I'm also a technician at
 3
 4    Liberty Medical.
 5              THE COURT:  I didn't catch the name of the company what
 6    is the company?
 7              PROSPECTIVE JUROR:  It's actually called Old Cell Phone
 8    Company is the first one, the second one is Liberty Medical.
 9              THE COURT:  Okay.  What part of the community do you
10    live in?
11              PROSPECTIVE JUROR:  Indiantown, Florida.
12              THE COURT:  How long have you lived in the this area?
13              PROSPECTIVE JUROR:  Eight years.
14              THE COURT:  What is your marital status?
15              PROSPECTIVE JUROR:  Single.
16              THE COURT:  Any children?
17              PROSPECTIVE JUROR:  No.
18              THE COURT:  Have you ever served in the military?
19              PROSPECTIVE JUROR:  Yes.
20              THE COURT:  What branch?
21              PROSPECTIVE JUROR:  United States Air Force.
22              THE COURT:  I didn't mean a paramilitary organization
23    like the Air Force or Sears Roebuck or the postal system.  I
24    meant like the Army or the Navy.
25              When you were in the Air Force, did you serve in the
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1    air police or whatever they call it, their military police?
 2              PROSPECTIVE JUROR:  No, I was air medical evacuation.
 3              THE COURT:  Did you ever have any disciplinary action
 4    against you?
 5              PROSPECTIVE JUROR:  None.
 6              THE COURT:  Okay.  Have you ever been involved in a
 7    civil lawsuit as a plaintiff, defendant or witness?
 8              PROSPECTIVE JUROR:  None.
 9              THE COURT:  Have any members of your immediate family
10    been involved in civil litigation?
11              PROSPECTIVE JUROR:  Not that I know of.
12              THE COURT:  Do you have any physical, emotional or
13    language problems that would make it difficult for you to
14    participate as a juror?
15              PROSPECTIVE JUROR:  No.
16              THE COURT:  Have you ever served on a jury before?
17              PROSPECTIVE JUROR:  No.
18              THE COURT:  Can you think of any reason why you could
19    not sit on this jury and render a fair verdict based on the
20    evidence and the law as I will instruct you?
21              PROSPECTIVE JUROR:  None, sir.
22              THE COURT:  Thank you, sir.  Pass the microphone to
23    your left, please.
24              Yes, ma'am.  Please tell us your name.
25              PROSPECTIVE JUROR:  My name is Doris Heading.
```

1          THE COURT:  Ms. Heading what is your occupation?

2          PROSPECTIVE JUROR:  I'm retired.

3          THE COURT:  Retired from what?

4          PROSPECTIVE JUROR:  I was a bank teller.

5          THE COURT:  How long have you been retired?

6          PROSPECTIVE JUROR:  Probably 15 years.

7          THE COURT:  What part of the community do you live in?

8          PROSPECTIVE JUROR:  I live in Highlands County in

9     Sebring, Florida.

10         THE COURT:  How long have you lived in that area?

11         PROSPECTIVE JUROR:  Six years.

12         THE COURT:  Where did you come from?

13         PROSPECTIVE JUROR:  From Ohio.

14         THE COURT:  What is your marital status?

15         PROSPECTIVE JUROR:  I've been married 52 years to the

16    same man.

17         THE COURT:  You've been in love with the same man for

18    52 years and if your husband ever finds out you're in trouble?

19    Okay.  What is does your husband work?

20         PROSPECTIVE JUROR:  No my husband is disabled.

21         THE COURT:  Okay.  And how about children?

22         PROSPECTIVE JUROR:  I have four.

23         THE COURT:  How old are they?

24         PROSPECTIVE JUROR:  The oldest is 51 and the youngest

25    is 41.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1              THE COURT:  What do they do for a living?

2              PROSPECTIVE JUROR:  I have a daughter who the oldest

3       one is a daughter and she is not employed.  Her husband is a

4       minister.  And my next one is a son, he's a minister in Ohio.

5       The next one is daughter, she's an events planner in Ohio, and

6       the youngest installs these systems, these I've fallen and can't

7       get up systems, and I don't know what it's called.

8              THE COURT:  Okay.  All right.  Good.  Thank you.

9              Have you ever served in the military?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  You ever been involved in a civil lawsuit

12      as a plaintiff, defendant or witness?

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  How many times?

15             PROSPECTIVE JUROR:  Just once.

16             THE COURT:  What was the nature of it?

17             PROSPECTIVE JUROR:  It was we were building a home and

18      they installed insulation under the siding and it was vinyl

19      siding and the foil on the insulation bubble and created a

20      problem.  And I think we settled out of court.  It's been 30

21      years ago so I can't remember exactly how was settled but it was

22      settled.

23             THE COURT:  That's the only lawsuit you've been

24      involved in?

25             PROSPECTIVE JUROR:  Yes, sir.


**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1           THE COURT:  Have any members of your immediate family

2    been in solved in civil litigation?

3           PROSPECTIVE JUROR:  No.

4           THE COURT:  You have any physical, emotional or

5    language problems that would make it difficult for you to

6    participate as a juror?

7           PROSPECTIVE JUROR:  No, sir.

8           THE COURT:  Have you ever served on a jury before?

9           PROSPECTIVE JUROR:  No.

10          THE COURT:  Can you think of any reason why you could

11   not sit on this jury and render a fair verdict based on the

12   evidence and the law as I will instruct you?

13          PROSPECTIVE JUROR:  No.

14          THE COURT:  Thank you, ma'am.  Pass the microphone.

15          Yes, sir.  Please tell us your name.

16          PROSPECTIVE JUROR:  My name is Bill Payne.

17          THE COURT:  Okay.  Hold the microphone up please.

18          And tell us what is your occupation?

19          PROSPECTIVE JUROR:  I'm a realtor.

20          THE COURT:  How long have you been doing that?

21          PROSPECTIVE JUROR:  11 years.

22          THE COURT:  What part of the community do you live in?

23          PROSPECTIVE JUROR:  I live in Sebastian, Florida.

24          THE COURT:  How long have you lived in this area?

25          PROSPECTIVE JUROR:  24 years.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER**

1              THE COURT:  What is your marital status?

2              PROSPECTIVE JUROR:  I'm married.

3              THE COURT:  Does your wife work outside the home?

4              PROSPECTIVE JUROR:  Yeah, she's a teacher.

5              THE COURT:  What type of teacher?  I'm sure a very fine

6      one, but what does she teach?

7              PROSPECTIVE JUROR:  Elementary.

8              THE COURT:  What about kids do you have any?

9              PROSPECTIVE JUROR:  Yeah, we have four children.

10             THE COURT:  How old are they?

11             PROSPECTIVE JUROR:  32, 30, 29 and 18.

12             THE COURT:  And are any of them employed?

13             PROSPECTIVE JUROR:  Excuse me?

14             THE COURT:  Are they employed?

15             PROSPECTIVE JUROR:  All but the 18.  She's a student.

16             THE COURT:  All right.  Tell us what they do for a

17     living?

18             PROSPECTIVE JUROR:  One is an attorney,

19             THE COURT:  Where is he or she an attorney?

20             PROSPECTIVE JUROR:  Out in California, Oakland.

21             THE COURT:  What type of an attorney?  I'm sure she's a

22     fine one, but what type of law does she practice?

23             PROSPECTIVE JUROR:  Well, she's pushing for reform of

24     medical marijuana, that type of thing.

25             THE COURT:  Okay.  And but she works for a group that

1    does that?

2            PROSPECTIVE JUROR:  Yeah, an access group, correct.

3            THE COURT:  How about the next one?

4            PROSPECTIVE JUROR:  My daughter is a massage therapist

5    in New York City.

6            THE COURT:  And what about the third one?

7            PROSPECTIVE JUROR:  He works in a paint store and a

8    bait shop in Fort Pierce.

9            THE COURT:  And have you ever served in the military?

10           PROSPECTIVE JUROR:  No.

11           THE COURT:  Have you ever been involved in a civil

12   lawsuit as a plaintiff, defendant or witness?

13           PROSPECTIVE JUROR:  No.

14           THE COURT:  Have any members of your immediate family

15   been involved in civil litigation?

16           PROSPECTIVE JUROR:  I don't know.

17           THE COURT:  Do you have any physical, emotional or

18   language problems that would make it difficult for you to

19   participate as a juror?

20           PROSPECTIVE JUROR:  No.

21           THE COURT:  Have you ever served on a jury before?

22           PROSPECTIVE JUROR:  Yes.

23           THE COURT:  How many times?

24           PROSPECTIVE JUROR:  Twice.

25           THE COURT:  Was let's start with the longest ago one.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    Was it federal or state?

2            PROSPECTIVE JUROR:  Both of them were state.

3            THE COURT:  Okay.  And were they both civil or criminal

4    or one of each?

5            PROSPECTIVE JUROR:  Both criminal.

6            THE COURT:  And was the jury able to reach a verdict in

7    each case?

8            PROSPECTIVE JUROR:  Yes.

9            THE COURT:  Were you the foreperson in either one?

10           PROSPECTIVE JUROR:  No.

11           THE COURT:  Okay.  Thank you.  Can you think of any

12   reason why you could not sit on this jury and render a fair

13   verdict based on the evidence and the law as I will instruct

14   you?

15           PROSPECTIVE JUROR:  No.

16           THE COURT:  All right.  Thank you.  Pass the microphone

17   to Ms.  Ramos.

18           Yes, ma'am.  Please tell us your name?

19           PROSPECTIVE JUROR:  Muriel Ramos.

20           THE COURT:  Ms.  Ramos, what do you do for a living?

21           PROSPECTIVE JUROR:  I work as a server.

22           THE COURT:  Where?

23           PROSPECTIVE JUROR:  At the Disney Vero Resort.

24           THE COURT:  And how long have you been doing that?

25           PROSPECTIVE JUROR:  Ten years.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
1              THE COURT:  What part of the community do you live in?

2              PROSPECTIVE JUROR:  Sebastian.

3              THE COURT:  How long have you lived in this area?

4              PROSPECTIVE JUROR:  Almost 11 years.

5              THE COURT:  What is your marital status?

6              PROSPECTIVE JUROR:  Married.

7              THE COURT:  Does your husband work outside the home?

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  What does he do?

10             PROSPECTIVE JUROR:  He's a chef.

11             THE COURT:  And how about children?

12             PROSPECTIVE JUROR:  I have five.

13             THE COURT:  How old?

14             PROSPECTIVE JUROR:  Seven, nine, 13, 15, and 21.

15             THE COURT:  Any of them work?

16             PROSPECTIVE JUROR:  One.

17             THE COURT:  The 21 year old I hope?

18             PROSPECTIVE JUROR:  Yes.

19             THE COURT:  And what does he or she do for a living?

20             PROSPECTIVE JUROR:  He's in a program at Indian River

21     State College and he works at the New River Medical Center.

22             THE COURT:  Okay.  And how about have you ever served

23     in the military?

24             PROSPECTIVE JUROR:  No.

25             THE COURT:  You ever been involved in a civil lawsuit
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1       as a plaintiff, defendant or witness?

2               PROSPECTIVE JUROR:  No.

3               THE COURT:  Any members of your immediate family been

4       involved in civil litigation?

5               PROSPECTIVE JUROR:  No.

6               THE COURT:  Do you have any physical, emotional or

7       language problems that would make it difficult for you to

8       participate as a juror?

9               PROSPECTIVE JUROR:  No.

10              THE COURT:  Have you ever served on a jury before?

11              PROSPECTIVE JUROR:  No.

12              THE COURT:  Can you think of any reason why you could

13      not sit on this jury and render a fair verdict based on the

14      evidence and the law as I will instruct you?

15              PROSPECTIVE JUROR:  No.

16              THE COURT:  Thank you, ma'am.  Pass the microphone.

17              Yes, sir.  Please tell us your name?

18              PROSPECTIVE JUROR:  Craig Ammerman.

19              THE COURT:  Mr. Ammerman, what is your occupation?

20              PROSPECTIVE JUROR:  I'm an executive in a healthcare

21      communications company.

22              THE COURT:  How long have you been doing that?

23              PROSPECTIVE JUROR:  30 years.

24              THE COURT:  What part of the community do you live in?

25              PROSPECTIVE JUROR:  Tequesta.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1              THE COURT:  How long have you lived in this area?

 2              PROSPECTIVE JUROR:  Six years.

 3              THE COURT:  Where did you live before then?

 4              PROSPECTIVE JUROR:  Philadelphia.

 5              THE COURT:  What is your marital status?

 6              PROSPECTIVE JUROR:  Married.

 7              THE COURT:   Does your wife work outside the home?

 8              PROSPECTIVE JUROR:  No.

 9              THE COURT:  And do you have children?

10              PROSPECTIVE JUROR:  two.

11              THE COURT:  How old?

12              PROSPECTIVE JUROR:  37 and 33.

13              THE COURT:  What do they do for a living?

14              PROSPECTIVE JUROR:  The oldest is a pediatric oncology

15    nurse practitioner at Duke University Hospital, the youngest is

16    a professor at the University of Texas Health Science center.

17              THE COURT:  You've done good.  Have you ever served in

18    the military?

19              PROSPECTIVE JUROR:  No, sir.

20              THE COURT:  Have you ever been involved in a civil

21    lawsuit as a plaintiff, defendant or witness?

22              PROSPECTIVE JUROR:  Yes.

23              THE COURT:  How many times?

24              PROSPECTIVE JUROR:  One as a defendant.

25              THE COURT:  And what as the nature of the case?
```

```
 1              PROSPECTIVE JUROR:  Company I owned was in a building
 2      that burned in the middle of the night, and the landlords filed
 3      suit against the company and against me for causing the fire.
 4              THE COURT:  Okay.  And have any members of your
 5      immediate family been involved in civil litigation besides that?
 6              PROSPECTIVE JUROR:  No.
 7              THE COURT:  You have any physical, emotional or
 8      language problems that would make it difficult for you to
 9      participate as a juror?
10              PROSPECTIVE JUROR:  No.
11              THE COURT:  Have you ever served on a jury before?
12              PROSPECTIVE JUROR:  No.
13              THE COURT:  Can you think of any reason why you could
14      not sit on the jury and render a fair verdict based on the
15      evidence and the law as I will instruct you?
16              PROSPECTIVE JUROR:  No, but...
17              THE COURT:  Sounds like a hesitation.  Tell me.
18              PROSPECTIVE JUROR:  I have an issue that where I need
19      to be in Salt Lake City this week, they just came up a few days
20      ago for -- I mean, if I'm on the jury won't be there but...
21              THE COURT:  What's the nature of your need to be there?
22              PROSPECTIVE JUROR:  We're having a meeting of senior
23      executives of the company to make a couple of decisions, one of
24      which I'm fairly key to.
25              THE COURT:  Okay.  All right.  Thank you, sir.  We'll
```

1    bear that in mind.

2              Hi.  What's your name please?

3              PROSPECTIVE JUROR:  Hi, my name is Pat Selmer.

4              THE COURT:  Ms.  Selmer, what do you do for a living?

5              PROSPECTIVE JUROR:  I'm assistant director of community

6    services for the city of Port St. Lucie.

7              THE COURT:  How long have you been doing that?

8              PROSPECTIVE JUROR:  Approximately 11 and a half years.

9              THE COURT:  What part of the community do you live in?

10             PROSPECTIVE JUROR:  I live in the county but just like

11   10 minutes down the road down south.

12             THE COURT:  How long have you lived in this area?

13             PROSPECTIVE JUROR:  Probably close to 20 years.

14             THE COURT:  What is your marital status?

15             PROSPECTIVE JUROR:  I'm a widow.

16             THE COURT:  And how long have you been a widow?

17             PROSPECTIVE JUROR:  2007, July 22nd.

18             THE COURT:  What did your husband do for a living?

19             PROSPECTIVE JUROR:  My husband was retired.

20             THE COURT:  Retired from what?

21             PROSPECTIVE JUROR:  He was an electrician at Harris

22   Corporation in Melbourne.

23             THE COURT:  How about children?

24             PROSPECTIVE JUROR:  I have two children in their 40s.

25             THE COURT:  What do they do for a living?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1              PROSPECTIVE JUROR:  My daughter is a disabled vet and
 2    my son is a farmer.
 3              THE COURT:  Okay.  Have you ever served in the
 4    military?
 5              PROSPECTIVE JUROR:  No, I haven't.
 6              THE COURT:  Have you ever been involved in a civil
 7    lawsuit as a plaintiff, defendant or witness?
 8              PROSPECTIVE JUROR:  I was called as a witness a lot of
 9    years ago for a title insurance company when the title insurance
10    company was being sued.
11              THE COURT:  And have any members of your immediate
12    family been involved in civil litigation?
13              PROSPECTIVE JUROR:  My son was involved in a case where
14    he was suing a nursing home for his father's death.  It was my
15    ex-husband at the time.
16              THE COURT:  Okay.  And let me ask you, in that lawsuit
17    where you were a witness, what was your involvement that you
18    were a witness?
19              PROSPECTIVE JUROR:  I was actually the one --
20              THE COURT:  I should say what did they think your
21    involvement was?
22              PROSPECTIVE JUROR:  I was the one that they came in and
23    brought a supposedly brought a letter to, but it didn't happen
24    and I had to explain that.  They didn't believe me but...
25              THE COURT:  Okay.  Other than your son, any other
```

1    members of your immediate family been involved in litigation

2    that you know of?

3            PROSPECTIVE JUROR:  The only other litigation might

4    have been with my daughter, she was in a car accident and I

5    didn't get involved in the case but she was they were suing.

6            THE COURT:  Okay.  You have any physical, emotional or

7    language problems that would make it difficult for you to

8    participate as a juror?

9            PROSPECTIVE JUROR:  No, sir.

10           THE COURT:  Have you ever served on a jury before?

11           PROSPECTIVE JUROR:  No, sir.

12           THE COURT:  Can you think of any reason why you could

13   not sit on this jury and render a fair verdict based on the

14   evidence and the law as I will instruct you?

15           PROSPECTIVE JUROR:  No, sir.

16           THE COURT:  Thank you, ma'am.  Pass the microphone.

17           Hi there.  What's your name?

18           PROSPECTIVE JUROR:  Cathy Kesselring.

19           THE COURT:  And Ms. Kesselring, what is your

20   occupation?

21           PROSPECTIVE JUROR:  I'm an over-the-road truck driver.

22           THE COURT:  How long have you been that?

23           PROSPECTIVE JUROR:  Off and on for 14 years.

24           THE COURT:  What part of the community do you live in?

25           PROSPECTIVE JUROR:  Sebring, Florida.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1              THE COURT:  How long have you live in the area?

 2              PROSPECTIVE JUROR:  40 years.

 3              THE COURT:  What is your marital status?

 4              PROSPECTIVE JUROR:  Married.

 5              THE COURT:  Does your husband work?

 6              PROSPECTIVE JUROR:  Yes.

 7              THE COURT:  What does he do?

 8              PROSPECTIVE JUROR:  He's my team member.

 9              THE COURT:  So you go together?

10              PROSPECTIVE JUROR:  Yes.

11              THE COURT:  That would be kind of nice except I don't

12    know.  I think I would get stir crazy sitting in that small a

13    space with my wife for day after day after day.

14              PROSPECTIVE JUROR:  We get along pretty good.

15              THE COURT:  We have trouble reaching Jacksonville.

16         Do you have children?

17              PROSPECTIVE JUROR:  No.

18              THE COURT:  Because you're always on the road.  You

19    know, you got to sit -- do other than sit next to each other you

20    know.  I've heard that.  I don't know.

21         Have you ever served in the military?

22              PROSPECTIVE JUROR:  No, I haven't.

23              THE COURT:  Have you ever been involved in a civil

24    lawsuit as a plaintiff, definitely or witness?

25              PROSPECTIVE JUROR:  No.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1              THE COURT:  Have any members of your immediate family
 2     been involved in litigation?
 3              PROSPECTIVE JUROR:  Do I included divorce, nasty ones?
 4              THE COURT:  You might as well tell us about it.
 5     Especially if it was really nasty and juicy, we want to hear.
 6     No, if it was really nasty it might be something that would
 7     affect you so we probably should know about it.
 8              PROSPECTIVE JUROR:  My nephews and nieces.  I have a
 9     nephew and niece that's going through a divorce right now and
10     this --
11              THE COURT:  The kind they could make a movie out of,
12     right?
13              PROSPECTIVE JUROR:  Yes, a lot of drama.
14              THE COURT:  All right.  Have you ever served on a jury
15     before?
16              PROSPECTIVE JUROR:  No, I have not.
17              THE COURT:  Can you think of any reason why you could
18     not sit on this jury and render a fair verdict based on the
19     evidence and the law as I will instruct you?
20              PROSPECTIVE JUROR:  No, but the length is bothering me
21     because if my wheels ain't rolling, I'm not making money.
22              THE COURT:  So you only make money when you're on the
23     road?
24              PROSPECTIVE JUROR:  Yes.
25              THE COURT:  And if you're not making money, you would
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1   be a little distracted and not able to concentrate?

2          PROSPECTIVE JUROR:  No.

3          THE COURT:  You do it, but it would be a burden?

4          PROSPECTIVE JUROR:  It would be a little bit of a

5   hardship because my checks won't be there to be able to make my

6   house payment and stuff like that.  So it would be just - I

7   could do it I just deal with it.

8          THE COURT:  Okay.  Well, thank you for letting us know.

9   I appreciate it.

10         Yes, ma'am.  Please tell us your name?

11         PROSPECTIVE JUROR:  Karen Kravitz.

12         THE COURT:  What do you do for a living?

13         PROSPECTIVE JUROR:  I'm an assessment and inclusion

14  specialist for the Early Learning Coalition for Indian River,

15  Martin and Okeechobee counties.

16         THE COURT:  Nobody can come up with titles like people

17  in the education business.  There are more titles than there are

18  people.  What does that mean?

19         PROSPECTIVE JUROR:  I have two jobs.  I assess

20  preschools and I also go in and do inclusion which I --

21         THE COURT:  What does that mean?

22         PROSPECTIVE JUROR:  I work with children who have

23  potential problems and work with the teacher in the classroom to

24  help them adjust with the children.  I don't actually work with

25  the children.

```
 1                 THE COURT:  What part of -- how long have you been
 2       doing that?
 3                 PROSPECTIVE JUROR:  Five and a half years.
 4                 THE COURT:  What part of the community do you live in?
 5                 PROSPECTIVE JUROR:  Port St. Lucie.
 6                 THE COURT:  How long have you lived in this area?
 7                 PROSPECTIVE JUROR:  Six years.
 8                 THE COURT:  Where did you come from?
 9                 PROSPECTIVE JUROR:  Before that I lived in Coral
10       Springs, Florida and before that Baltimore Maryland.
11                 THE COURT:  What is your marital status?
12                 PROSPECTIVE JUROR:  Married.
13                 THE COURT:  Does your husband work?
14                 PROSPECTIVE JUROR:  He's self-employed.
15                 THE COURT:  Doing what?
16                 PROSPECTIVE JUROR:  He is a knife craftsman.
17                 THE COURT:  Knife craftsman, sharpens knives?
18                 PROSPECTIVE JUROR:  He makes them, pretty knives.
19                 THE COURT:  Okay.  Do you have children?
20                 PROSPECTIVE JUROR:  Yes, three.
21                 THE COURT:  How old?
22                 PROSPECTIVE JUROR:  31, 29 and 25.
23                 THE COURT:  Tell me what they do for a living?
24                 PROSPECTIVE JUROR:  My oldest is an office manager for
25       a dental office in Orlando, my middle child, her husband is in
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    the Navy and they live in Omaha, she's not employed but she's a

2    housewife.

3              THE COURT:  What in the world is a Navy guy doing in

4    Omaha.  I've been in Omaha.  There's no water there.

5              PROSPECTIVE JUROR:  He is there for the medical

6    facility.

7              THE COURT:  All right.  What is the youngest?

8              PROSPECTIVE JUROR:  The youngest is also living in

9    Orlando and he works in production for a radio station there.

10             THE COURT:  Okay.  Have you ever served in the

11   military?

12             PROSPECTIVE JUROR:  No.

13             THE COURT:  Have you ever been involved in a civil

14   lawsuit as a plaintiff, defendant or witness?

15             PROSPECTIVE JUROR:  About 25 years ago I was involved

16   in a car accident, I was a plaintiff.  I sued the person who hit

17   me.

18             THE COURT:  Okay.  And any others?

19             PROSPECTIVE JUROR:  No.

20             THE COURT:  Any members of your immediate family been

21   involved in civil litigation?

22             PROSPECTIVE JUROR:  No.

23             THE COURT:  Do you have any physical, emotional or

24   language problems that would make it difficult for you to

25   participate as a juror?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1                    PROSPECTIVE JUROR:  No.

 2                    THE COURT:  Have you ever served on a jury before?

 3                    PROSPECTIVE JUROR:  No.

 4                    THE COURT:  Can you think of any reason why you could

 5     not sit on this jury and render a fair verdict based on the

 6     evidence and the law as I will instruct you?

 7                    PROSPECTIVE JUROR:  No, sir.

 8                    THE COURT:  Thank you.  Pass the microphone please.

 9                    Yes, sir.  Please tell us your name.

10                    PROSPECTIVE JUROR:  Richard McSweeney.

11                    THE COURT:  Mr. McSweeney, what is your occupation?

12                    PROSPECTIVE JUROR:  I'm a professional chef.

13                    THE COURT:  How long have he been doing that?

14                    PROSPECTIVE JUROR:  20 years.

15                    THE COURT:  And where are you a cook?  Where are you a

16     chef excuse me, not cook.

17                    PROSPECTIVE JUROR:  Sailfish Pointe Country Club.

18                    THE COURT:  Where is that?

19                    PROSPECTIVE JUROR:  On Hutchinson Island.

20                    THE COURT:  Okay.  Where?

21                    PROSPECTIVE JUROR:  The far south end.

22                    THE COURT:  Where?

23                    PROSPECTIVE JUROR:  It's the very --

24                    THE COURT:  That's the only part of the place I know is

25     the far south end.
```

```
 1              PROSPECTIVE JUROR:  It's in Stuart.  It's at the end of
 2      the island in Stuart.
 3              THE COURT:  Okay.  How long have you been doing that?
 4              PROSPECTIVE JUROR:  My whole life, 20 years.
 5              THE COURT:  What part of the community do you live in?
 6              PROSPECTIVE JUROR:  40 approximately.
 7              THE COURT:  How long have you lived in the area?
 8              PROSPECTIVE JUROR:  Six years.
 9              THE COURT:  What is your marital status?
10              PROSPECTIVE JUROR:  Married.
11              THE COURT:  Does your wife work outside the home?
12              PROSPECTIVE JUROR:  No.
13              THE COURT:  And do you have children?
14              PROSPECTIVE JUROR:  Two children.
15              THE COURT:  How old?
16              PROSPECTIVE JUROR:  Three and 11.
17              THE COURT:  Have you ever served in the military?
18              PROSPECTIVE JUROR:  No.
19              THE COURT:  Have you ever been involved in a civil
20      lawsuit as a plaintiff, defendant or witness?
21              PROSPECTIVE JUROR:  Once as a plaintiff about 20 years
22      ago concerning an auto burglary.
23              THE COURT:  And you sued someone?
24              PROSPECTIVE JUROR:  I sued a garage that was caring for
25      the vehicle that was burglarized.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1           THE COURT:  Okay.  That's the only lawsuit?

2           PROSPECTIVE JUROR:  That's all.

3           THE COURT:  Have any members of your immediate family

4    been involved in a lawsuit?

5           PROSPECTIVE JUROR:  No, not that I'm aware of.

6           THE COURT:  Do you have any physical, emotional or

7    language problems that would make it difficult for you to

8    participate as a juror?

9           PROSPECTIVE JUROR:  No.

10          THE COURT:  Have you ever served on a jury before?

11          PROSPECTIVE JUROR:  No.

12          THE COURT:  Can you think of any reason why you could

13   not sit on this jury and render a fair verdict based on the

14   evidence and the law as I will instruct you?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Thank you sir.  Pass the microphone.

17          Yes, sir.  Please tell us your name?

18          PROSPECTIVE JUROR:  Good morning.  My name is Domenico

19   Patti.

20          THE COURT:  Mr. Patti, what is your occupation?

21          PROSPECTIVE JUROR:  Retired logistics manager.

22          THE COURT:  What does that mean?

23          PROSPECTIVE JUROR:  Well, we move things around,

24   relocate all the corporations around the world.

25          THE COURT:  Okay.  How long have he you been retired?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1              PROSPECTIVE JUROR:  Six years.
 2              THE COURT:  And what part of the community do you live
 3    in?
 4              PROSPECTIVE JUROR:  Port St. Lucie.
 5              THE COURT:  How long have you lived in the area?
 6              PROSPECTIVE JUROR:  Four and a half years.
 7              THE COURT:  Where did you live before?
 8              PROSPECTIVE JUROR:  New Jersey.
 9              THE COURT:  What is your marital status?
10              PROSPECTIVE JUROR:  Married for 36 years.
11              THE COURT:  Does your wife work outside the home?
12              PROSPECTIVE JUROR:  She works temporarily unemployed.
13              THE COURT:  She's temporarily unemployed from what?
14              PROSPECTIVE JUROR:  She was a coordinator for a
15    hospital before she came to Florida.
16              THE COURT:  How about children, do you have some?
17              PROSPECTIVE JUROR:  Three, 35, I mean 34, 30 and 21.
18              THE COURT:  We're going to tell them you didn't know
19    how old they were.
20              What do they do for a living?
21              PROSPECTIVE JUROR:  They all in information technology.
22    Alex has got his own company plus he works as a network engineer
23    in New York.  Robert works at a hedge fund also in New York as a
24    manager of a technology information.  And Joseph goes to school
25    and also is in information technology also work full-time.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1              THE COURT:  Have you ever served in military?

 2              PROSPECTIVE JUROR:  Yes, in the Italian military.

 3              THE COURT:  What is your -- have you ever been involved

 4     in a civil lawsuit as a plaintiff, defendant or witness?

 5              PROSPECTIVE JUROR:  I sue somebody who hit me on my car

 6     about four years ago.

 7              THE COURT:  Okay.  Have any members of your immediate

 8     family been involved in litigation?

 9              PROSPECTIVE JUROR:  Nothing that I know.

10              THE COURT:  Do you have any physical, emotional or

11     language problems that would make it difficult for you to

12     participate as a juror?

13              PROSPECTIVE JUROR:  Nothing at all.

14              THE COURT:  Have you ever served on a jury before?

15              PROSPECTIVE JUROR:  No.

16              THE COURT:  Can you think of any reason why you could

17     not sit on this jury and render a fair verdict based on the

18     evidence and the law?

19              PROSPECTIVE JUROR:  No.

20              THE COURT:  Thank you, sir.  Pass the microphone

21     straight back.

22              Hi.  Tell us your name.

23              PROSPECTIVE JUROR:  Henry Doiron.

24              THE COURT:  Mr. Doiron, what is your occupation?

25              PROSPECTIVE JUROR:  I'm retired, but I work part-time
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
1    for auto dealer.

2              THE COURT:  Tell me what you're retired from?

3              PROSPECTIVE JUROR:  Stationary engineer.

4              THE COURT:  What does that mean you stand straight and

5    engineer things?

6              PROSPECTIVE JUROR:  We operate power plants.

7              THE COURT:  What does a stationary engineer mean?

8              PROSPECTIVE JUROR:  That means we don't move around the

9    world, we just stay in one place.

10             THE COURT:  Okay.  So you do stand there.  Now what do

11   you do for the car dealer?

12             PROSPECTIVE JUROR:  I deliver new cars.

13             THE COURT:  And how long have you been doing that?

14             PROSPECTIVE JUROR:  16 years.

15             THE COURT:  And what is the part of the community you

16   live in?

17             PROSPECTIVE JUROR:  Jensen Beach.

18             THE COURT:  How long have you lived in this area?

19             PROSPECTIVE JUROR:  19 years.

20             THE COURT:  What is your marital status?

21             PROSPECTIVE JUROR:  I'm married.

22             THE COURT:  Does your wife work outside the home?

23             PROSPECTIVE JUROR:  No.

24             THE COURT:  How about children?

25             PROSPECTIVE JUROR:  Two children.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1           THE COURT:  How old?

2           PROSPECTIVE JUROR:  One, 54, he's an environmental

3      clean up, operates a crew that does environmental clean up.

4           THE COURT:  I guess they've been busy lately.

5           PROSPECTIVE JUROR:  He was on the Gulf doing all that

6      good stuff.

7           THE COURT:  How about that's one?

8           PROSPECTIVE JUROR:  He's unemployed carpenter.

9           THE COURT:  Okay.  And have you ever served in the

10     military?

11          PROSPECTIVE JUROR:  Yes.

12          THE COURT:  What branch?

13          PROSPECTIVE JUROR:  United States Navy.

14          THE COURT:  See, now you're talking about a real

15     service.  Did you ever serve on the shore patrol?

16          PROSPECTIVE JUROR:  No.

17          THE COURT:  Did you ever have any disciplinary action

18     against you?

19          PROSPECTIVE JUROR:  No.  Well, let me correct that.  I

20     had a captain's mast.

21          THE COURT:  Okay.  Have you ever -- hold on a second.

22           You ever been involved in a civil lawsuit as a

23     plaintiff, defendant or witness?

24          PROSPECTIVE JUROR:  No.

25          THE COURT:  Any members of your immediate family been

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1      involved in civil litigation?

2             PROSPECTIVE JUROR:  No.

3             THE COURT:  Do you have any physical, emotional or

4      language problems that would make it difficult for you to

5      participate as a juror?

6             PROSPECTIVE JUROR:  No.

7             THE COURT:  Have you ever served on a jury before?

8             PROSPECTIVE JUROR:  No.

9             THE COURT:  Can you think of any reason why you could

10     not sit on this jury and render a fair verdict based on the

11     evidence and the law as I will instruct you?

12            PROSPECTIVE JUROR:  No.

13            THE COURT:  All right.  Pass the microphone please.

14            Yes, sir.  Please tell us your name.

15            PROSPECTIVE JUROR:  Yes, my name is George Altomaro.

16            THE COURT:  Mr. Altomaro, what is your occupation?

17            PROSPECTIVE JUROR:  Martin County Parks Department.

18            THE COURT:  What do you do for the Martin County Parks

19     Department?

20            PROSPECTIVE JUROR:  I work on Hutchinson Island on the

21     beach crew.

22            THE COURT:  How long have you been doing that?

23            PROSPECTIVE JUROR:  Eight years.

24            THE COURT:  What part of the community do you live in?

25            PROSPECTIVE JUROR:  I live in Palm City, Martin County.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          THE COURT:  How long have you lived in this area?

2          PROSPECTIVE JUROR:  23 years.

3          THE COURT:  What is your marital status?

4          PROSPECTIVE JUROR:  Single.

5          THE COURT:  What is your does your -- oh, you have any

6   children?

7          PROSPECTIVE JUROR:  No, sir.

8          THE COURT:  You ever served in the military?

9          PROSPECTIVE JUROR:  No, sir.

10          THE COURT:  You ever been involved in a civil lawsuit

11   as a plaintiff, defendant or witness?

12          PROSPECTIVE JUROR:  No.

13          THE COURT:  Have any members of your immediate family

14   been involved in civil litigation?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Do you have any physical, emotional or

17   language problems that would make it difficult for you to

18   participate as a juror?

19          PROSPECTIVE JUROR:  No, sir.

20          THE COURT:  Have you ever served on a jury before?

21          PROSPECTIVE JUROR:  No.

22          THE COURT:  Can you think of any reason why you could

23   not sit on this jury and render a fair verdict based on the

24   evidence and the law as I will instruct you?

25          PROSPECTIVE JUROR:  No, sir.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1                    THE COURT:  Thank you.  Pass the microphone please.

2                    Yes, ma'am.  Please tell us your name.

3                    PROSPECTIVE JUROR:  Charla Minson.

4                    THE COURT: Ms. Minson, what is your occupation?

5                    PROSPECTIVE JUROR:  I'm a counselor and disability

6      specialist.

7                    THE COURT:  For whom?

8                    PROSPECTIVE JUROR:  South Florida Community College.

9                    THE COURT:  How long have you been doing that?

10                   PROSPECTIVE JUROR:  About 11 years.

11                   THE COURT:  What part of the community do you live in?

12                   PROSPECTIVE JUROR:  I live in Sebring.

13                   THE COURT:  How long have you lived in the area?

14                   PROSPECTIVE JUROR:  About 11 years.

15                   THE COURT:  And what is your marital status?

16                   PROSPECTIVE JUROR:  I'm single.

17                   THE COURT:  Any children?

18                   PROSPECTIVE JUROR:  No.

19                   THE COURT:  Have you ever served in the military?

20                   PROSPECTIVE JUROR:  No, sir.

21                   THE COURT:  Have you ever been involved in a civil

22     lawsuit as a plaintiff, defendant or witness?

23                   PROSPECTIVE JUROR:  No, sir.

24                   THE COURT:  Have any members of your immediate family

25     been involved in civil litigation?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1            PROSPECTIVE JUROR:  Not to my knowledge.

2            THE COURT:  Do you have any physical, emotional or

3    language problems that would make it difficult for you to

4    participate as a juror?

5            PROSPECTIVE JUROR:  No, sir.

6            THE COURT:  Have you ever served on a jury before?

7            PROSPECTIVE JUROR:  No, I have not.

8            THE COURT:  Can you think of any reason why you could

9    not sit on this jury and render a fair verdict based on the

10   evidence and the law as I will instruct you?

11           PROSPECTIVE JUROR:  No, sir.

12           THE COURT:  Thank you.  Pass the microphone please.

13           PROSPECTIVE JUROR:  Heidi Lemberg.

14           THE COURT:  What is your occupation?

15           PROSPECTIVE JUROR:  Branch manager at TD Bank.

16           THE COURT:  How long have you been doing that?

17           PROSPECTIVE JUROR:  About ten years.

18           THE COURT:  What part of the community do you live in?

19           PROSPECTIVE JUROR:  Vero Beach.

20           THE COURT:  How long have you lived in this area?

21           PROSPECTIVE JUROR:  Ten years.

22           THE COURT:  What is your marital status?

23           PROSPECTIVE JUROR:  Married.

24           THE COURT:  Does your husband work?

25           PROSPECTIVE JUROR:  Yes.

```
 1              THE COURT:  What does he do?
 2              PROSPECTIVE JUROR:  He's a booking deputy for the St.
 3    Lucie County jail.
 4              THE COURT:  How about children?
 5              PROSPECTIVE JUROR:  One, ten year old child.
 6              THE COURT:  Still in school?
 7              PROSPECTIVE JUROR:  Yeah, she's unemployed.
 8              THE COURT:  Got to get them out working.  How about
 9    have you ever served in the military?
10              PROSPECTIVE JUROR:  No.
11              THE COURT:  Have you ever been involved in a civil
12    lawsuit as a plaintiff, defendant or witness?
13              PROSPECTIVE JUROR:  No.
14              THE COURT:  Have any members of your immediate family
15    been involved in civil litigation?
16              PROSPECTIVE JUROR:  When I was in high school my family
17    like sued each other for some inheritance.
18              THE COURT:  Those get nasty.
19              PROSPECTIVE JUROR:  My mom was against it and my great
20    grandfather was still alive but the other part of his family
21    wanted his money.
22              THE COURT:  That's the only lawsuit that you're aware
23    of?
24              PROSPECTIVE JUROR:  That's it.
25              THE COURT:  Do you have any physical, emotional or
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    language problems that would make it difficult for you to

2    participate as a juror?

3             PROSPECTIVE JUROR:  No.

4             THE COURT:  Have you ever served on a jury before?

5             PROSPECTIVE JUROR:  No.

6             THE COURT:  Can you think of any reason why you could

7    not sit on this jury and render a fair verdict based on the

8    evidence and the law as I will instruct you?

9             PROSPECTIVE JUROR:  No.

10            THE COURT:  Thank you.  Pass the microphone.

11            Hi there.  What's your name?

12            PROSPECTIVE JUROR:  My name is Dan Dimon.

13            THE COURT:  Mr. Dimon, what is your occupation?

14            PROSPECTIVE JUROR:  I'm retired.

15            THE COURT:  Retired what?

16            PROSPECTIVE JUROR:  Retired from the lighting,

17   commercial lighting business.

18            THE COURT:  Okay.  How long have you been retired?

19            PROSPECTIVE JUROR:  Since 2000.

20            THE COURT:  And what part of the community do you live

21   in?

22            PROSPECTIVE JUROR:  Sebastian.

23            THE COURT:  How long have you lived in the area?

24            PROSPECTIVE JUROR:  Nine years.

25            THE COURT:  What is your marital status?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
1              PROSPECTIVE JUROR:  Married.

2              THE COURT:  Your wife work outside the home?

3              PROSPECTIVE JUROR:  No.

4              THE COURT:  Has she ever?

5              PROSPECTIVE JUROR:  Yes.

6              THE COURT:  What does she do?

7              PROSPECTIVE JUROR:  She was a school teacher.

8              THE COURT:  Okay.  How about children?

9              PROSPECTIVE JUROR:  I have four.

10             THE COURT:  Tell me their ages.

11             PROSPECTIVE JUROR:  48 --

12             THE COURT:  You're faltering.

13             PROSPECTIVE JUROR:  45, 35, 38.

14             THE COURT:  All right.  You skipped down to 35 and back

15     up to 38.  All right.

16             Let's start with the 35-year-old.  What does he or she

17     do for a living?

18             PROSPECTIVE JUROR:  She stays at home.

19             THE COURT:  What about the 38 year old?

20             PROSPECTIVE JUROR:  Home too, girl.

21             THE COURT:  Girl?  Okay.  How about the next one?

22             PROSPECTIVE JUROR:  Unemployed pool maintenance man.

23             THE COURT:  How about the oldest one?

24             PROSPECTIVE JUROR:  Owns a pizza take-out business in

25     Boynton Beach, Florida.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          THE COURT:  Have you ever served in the military?

2          PROSPECTIVE JUROR:  No.

3          THE COURT:  Have you ever been involved in a civil

4     lawsuit as a plaintiff, defendant or witness?

5          PROSPECTIVE JUROR:  I'm not sure.  I was subpoenaed by

6     the state, I'm not sure whether it was considered civil or

7     criminal.

8          THE COURT:  It wouldn't matter, but you were a witness?

9          PROSPECTIVE JUROR:  Yes.

10          THE COURT:  How long ago was that?

11          PROSPECTIVE JUROR:  Probably early 70s.

12          THE COURT:  And you were a witness in a case.  Do you

13     know the nature of the case?

14          PROSPECTIVE JUROR:  It was the committee to reform the

15     courts was the state was against the city, the committee to

16     reform the courts which was a group of lawyers.

17          THE COURT:  And you were how did you get involved?

18          PROSPECTIVE JUROR:  I worked in a bingo parlor as a

19     caller and under the assumption -- actually I was told it was a

20     paid position and the state contended it should have been a

21     volunteer, they were going after to shut the bingo parlor down.

22          THE COURT:  You were just a witness?

23          PROSPECTIVE JUROR:  I was just a witness.

24          THE COURT:  Any members of your immediate family been

25     involved in civil litigation?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1              PROSPECTIVE JUROR:  No.

 2              THE COURT:  Do you have any physical, emotional or

 3    language problems that would make it difficult for you to

 4    participate as a juror?

 5              PROSPECTIVE JUROR:  No.

 6              THE COURT:  Have you ever served on a jury before?

 7              PROSPECTIVE JUROR:  Yes.

 8              THE COURT:  How many times?

 9              PROSPECTIVE JUROR:  Once.

10              THE COURT:  Was it state or federal?

11              PROSPECTIVE JUROR:  It was state.

12              THE COURT:  Criminal or civil?

13              PROSPECTIVE JUROR:  Criminal.

14              THE COURT:  Was the jury able to reach a verdict?

15              PROSPECTIVE JUROR:  Yes.

16              THE COURT:  Were you the foreperson?

17              PROSPECTIVE JUROR:  No.

18              THE COURT:  Can you think of any reason why you could

19    not sit on this jury and render a fair verdict based on the

20    evidence and the law as I will instruct you?

21              PROSPECTIVE JUROR:  No.

22              THE COURT:  Thank you, sir.  Pass the microphone

23    please.

24              Hi there.  What's your name?

25              PROSPECTIVE JUROR:  My name is Gay Wilhelm.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
1              THE COURT:  Ms.  Wilhelm, what's your occupation?

2              PROSPECTIVE JUROR:  I'm retired.

3              THE COURT:  Retired from what?

4              PROSPECTIVE JUROR:  I owned a travel agency in Coral

5     Gables, Florida.

6              THE COURT:  What was the name of the travel agency?

7              PROSPECTIVE JUROR:  Destinations Unlimited.

8              THE COURT:  Don't know them.  I live in Coral Gables.

9              PROSPECTIVE JUROR:  Right across from where Deel Ford

10    used to be.

11             THE COURT:  I lived on Canagua Avenue which dead-ended

12    into the showroom at Deel Ford.  I could never buy a car from

13    them.  They were a block from plea and every time I went over

14    there I would end up leaving in a rage.  I never understood how

15    they made a living.

16             How long have you been retired?

17             PROSPECTIVE JUROR:  About 12 years.

18             THE COURT:  And what is the part of the community that

19    you live in?

20             PROSPECTIVE JUROR:  Indian River Shores.

21             THE COURT:  How long have you lived in this area?

22             PROSPECTIVE JUROR:  About 14 years.

23             THE COURT:  What is your marital status?

24             PROSPECTIVE JUROR:  Married.

25             THE COURT:  Does your husband work?
```

```
 1                PROSPECTIVE JUROR:  He's retired.

 2                THE COURT:  From what?

 3                PROSPECTIVE JUROR:  Commercial air conditioning in

 4     Cleveland.

 5                THE COURT:  Okay.  And do you have children?

 6                PROSPECTIVE JUROR:  Three.

 7                THE COURT:  And what are their ages and are they

 8     working?

 9                PROSPECTIVE JUROR:  My oldest son is 49, he is software

10     engineer with Apple out in Cupertino, and I have twins that are

11     45, my boy and a girl, my son is a doctor in Tampa and my

12     daughter is a vice president of American Talent up in

13     Massachusetts.

14                THE COURT:  That's three of them.  That's it.  Okay.

15                How about you ever served in the military?

16                PROSPECTIVE JUROR:  No.

17                THE COURT:  Have you ever been involved in a civil

18     lawsuit as a plaintiff or defendant or witness?

19                PROSPECTIVE JUROR:  No, I haven't.

20                THE COURT:  Have any members of your immediate family

21     been involved in civil litigation that you know of?

22                PROSPECTIVE JUROR:  No.

23                THE COURT:  Have you do you have any physical,

24     emotional or language problems that would make it difficult for

25     you to participate as a juror?
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          PROSPECTIVE JUROR:  No, I don't.

2          THE COURT:  Have you ever served on a jury before?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  How many times?

5          PROSPECTIVE JUROR:  Once.

6          THE COURT:  Was it state or federal?

7          PROSPECTIVE JUROR:  It was a grand jury in Boston about

8     30 years ago.

9          THE COURT:  Okay.  Grand jury is different.  You served

10    on a grand jury.  That's fine.  It's important to know that but

11    it's not -- so you didn't have to reach a verdict, you reached a

12    lot of verdicts.  A lot of decisions you made.  Okay.

13         Can you think of any reason why you could not sit on

14    this jury and render a fair verdict based on the evidence and

15    the law as I will instruct you?

16         PROSPECTIVE JUROR:  No.

17         THE COURT:  Okay.  Thank you, ma'am.  Pass microphone

18    please.

19         Yes, sir.  Please tell us your name.

20         PROSPECTIVE JUROR:  William Hatch.

21         THE COURT:  Mr. Hatch, what is your occupation?

22         PROSPECTIVE JUROR:  I'm semiretired and do property

23    managing for an individual.

24         THE COURT:  And what are you semiretired from?

25         PROSPECTIVE JUROR:  I was a development officer for

1    independent schools.

2            THE COURT:  How long have you been retired?

3            PROSPECTIVE JUROR:  Six years.

4            THE COURT:  And what part of the community do you live

5    in?

6            PROSPECTIVE JUROR:  The Whitewater section of St. Lucie

7    County.

8            THE COURT:  How long have you lived in the area?

9            PROSPECTIVE JUROR:  Six years.

10           THE COURT:  Where did you come from?

11           PROSPECTIVE JUROR:  Miami.

12           THE COURT:  What is your marital status?

13           PROSPECTIVE JUROR:  Married.

14           THE COURT:  Does your wife work outside the home?

15           PROSPECTIVE JUROR:  My wife is a middle school writing

16   teacher.

17           THE COURT:  And how about kids?

18           PROSPECTIVE JUROR:  Three.  I have a daughter who is

19   42, a son who is 38, and a stepdaughter who is 39.

20           THE COURT:  Tell me about what they do for a living.

21           PROSPECTIVE JUROR:  The 42 year old has a produce

22   company in California.  The 38 year old writes software and the

23   39-year-old is in medical technology.

24           THE COURT:  All right.  You ever served in the

25   military?

```
 1                PROSPECTIVE JUROR:  No.

 2                THE COURT:  Have you ever been involved in a civil

 3      lawsuit as a plaintiff, defendant or witness?

 4                PROSPECTIVE JUROR:  No.

 5                THE COURT:  Any members of your immediate family been

 6      involved in litigation?

 7                PROSPECTIVE JUROR:  Not that I know of.

 8                THE COURT:  Do you have any physical, emotional or

 9      language problems that would make it difficult for you to

10      participate as a juror?

11                PROSPECTIVE JUROR:  No.

12                THE COURT:  Okay.  Have you ever served on a jury

13      before?

14                PROSPECTIVE JUROR:  No.

15                THE COURT:  Can you think of any reason why you could

16      not sit on this jury and render a fair verdict based on the

17      evidence and the law as the court will instruct you?

18                PROSPECTIVE JUROR:  No.  I do, however, have a concern.

19      My wife has some recently developed medical issues.  In early

20      January, she was diagnosed the breast cancer, had a mastectomy,

21      had subsequent radiation.  We're now waiting to see if she's

22      going to have chemotherapy and this past week she had developed

23      elevated liver enzymes that she had been diagnosed.

24                THE COURT:  You think you ought to be with her?

25                PROSPECTIVE JUROR:  I'm not sure how it's going to come
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    down.

2           THE COURT:  Thank you for bringing that up.  We'll take

3    that in mind.

4           All right.  The next one would be Kevin Santiago.

5           PROSPECTIVE JUROR:  Yes.

6           THE COURT:  Yes, sir.  Tell us what is your occupation.

7           PROSPECTIVE JUROR:  Pharmaceutical sales.

8           THE COURT:  How long have you been doing that?

9           PROSPECTIVE JUROR:  Eight months.

10          THE COURT:  Hold on a second.  No, you can't -- we all

11   have to be here.  I'm sorry.

12          You know what, why don't we just take a break before we

13   do the rest, but wait a second.  I want to make absolutely sure

14   you understand you're in the middle of jury selection.  Do not

15   discuss the proceedings that are going on and as soon as we

16   finish with Mr. Santiago, we will take a break.  Please remember

17   exactly where you are seated.  If you switch around, we are not

18   smart enough to put you back where you belong and we will have

19   to throw you all out and get a whole bunch of knew people and

20   start all over again so please, we'll break after Mr. Santiago

21   but I need you in 10 minutes, as soon as ten minutes from when

22   we break, I need you back in your seat ready to go.  All right?

23          Mr. Santiago, what do you do for a living?

24          PROSPECTIVE JUROR:  Pharmacy sales.

25          THE COURT:  What part of the community?  I'm sorry.

```
 1                    PROSPECTIVE JUROR:  Port St. Lucie.

 2              THE COURT:  How long have you lived in the area?

 3                    PROSPECTIVE JUROR:  Four years.

 4              THE COURT:  Where did you live before then?

 5                    PROSPECTIVE JUROR:  Coconut Creek, Florida.

 6              THE COURT:  What is your marital status?

 7                    PROSPECTIVE JUROR:  Married.

 8              THE COURT:  Does your wife work outside the home?

 9                    PROSPECTIVE JUROR:  Yes, sir.

10              THE COURT:  What does she do?

11                    PROSPECTIVE JUROR:  She's an operations manager for PNC

12       Bank.

13              THE COURT:  What about kids?

14                    PROSPECTIVE JUROR:  Two.  Four year old boy and one

15       year old girl.

16              THE COURT:  How about have you ever served in the

17       military?

18                    PROSPECTIVE JUROR:  No, sir.

19              THE COURT:  Have you ever been involved in a civil

20       lawsuit as a plaintiff, defendant or witness?

21                    PROSPECTIVE JUROR:  No, sir.

22              THE COURT:  Any members of your immediate family been

23       involved in civil litigation?

24                    PROSPECTIVE JUROR:  No, sir.

25              THE COURT:  You have any physical, emotional or
```

1    language problems that would make it difficult for you to

2    participate as a juror?

3            PROSPECTIVE JUROR:  No, sir.

4            THE COURT:  Have you ever served on a jury before?

5            PROSPECTIVE JUROR:  No, sir.

6            THE COURT:  Can you think of any reason why you could

7    not sit on this jury and render a fair verdict based on the

8    evidence and the law as I will instruct you?

9            PROSPECTIVE JUROR:  No, sir.

10           THE COURT:  All right.  Thank you.  Leave the

11   microphone right there on the seat.  And then if you all would

12   -- if you want to, go out take a break, we'll be back in 10

13   minutes.  We'll be back at 13 after.  Please come back in.

14           (Panel out at 11:02 a.m.).

15           THE COURT:  All right.  We'll be in recess until 13

16   after.  I would ask the people to wait until they come back in

17   if you have to go, then you go because there's a limited number

18   of bath rooms in this building.

19           (Brief recess)

20           THE COURT:  Be seated, please.  All right.  Let's try

21   for Ms. Companion.

22           Hi there.  What's your name?

23           PROSPECTIVE JUROR:  My name is Maria Companion.

24           THE COURT:  That doesn't sound like it's on.  Is it on?

25   It's on now.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
1              PROSPECTIVE JUROR:  Okay.  Sorry.

2              THE COURT:  What is your occupation?

3              PROSPECTIVE JUROR:  I'm an interior designer.

4              THE COURT:  How long have you been an interior

5    designer?

6              PROSPECTIVE JUROR:  About ten years.

7              THE COURT:  What part of the community do you live in?

8              PROSPECTIVE JUROR:  I live in Sebastian.

9              THE COURT:  How long have you lived in the area?

10             PROSPECTIVE JUROR:  Ten years.

11             THE COURT:  What is your marital status?

12             PROSPECTIVE JUROR:  Married.

13             THE COURT:  Does your husband work outside the house?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  What does he do?

16             PROSPECTIVE JUROR:  He's a garage door installer, so he

17   doesn't work that much lately.

18             THE COURT:  Not a lot of people building garages.

19             How about children?

20             PROSPECTIVE JUROR:  One.  She's 17.  She's a junior in

21   high school.

22             THE COURT:  All right.  How about have you ever served

23   in the military?

24             PROSPECTIVE JUROR:  No.

25             THE COURT:  Have you ever been involved in a civil
```

```
1    lawsuit as a plaintiff, defendant or witness?

2          PROSPECTIVE JUROR:  No.

3          THE COURT:  Any members of your immediate family been

4    involved in civil litigation?

5          PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Tell me.

7          PROSPECTIVE JUROR:  I'm from Vermont.  My father owns a

8    small construction company there where he builds houses for the

9    wealthy, I guess would be the way to put it, and he had one

10   particular client that wanted a lot of upgrades and in the end,

11   the guy sued him for the upgrades that he didn't have on paper

12   for contract.

13         THE COURT:  Okay.  Do you have any physical, emotional

14   or language problems that would make it difficult for you to

15   participate as a juror?

16         PROSPECTIVE JUROR:  If you hadn't call a bathroom

17   break, I would have raised the white flag.  I just had a major

18   surgery in September and I'm still recuperating and I asked for

19   six to eight months before they put me back in circulation which

20   they didn't do.  But if I don't get a break in every 20 or 30

21   minutes, I'm about ready to run out that door.

22         It is.  You can watch the cameras and see how many

23   times I've gone since I got here.  I can't believe I have to do

24   this in front of all these people.

25         THE COURT:  I promise you we don't have cameras in
```

1    there.

2           PROSPECTIVE JUROR:  It's all good.

3           THE COURT:  They don't allow us to put cameras in

4    there.

5           PROSPECTIVE JUROR:  I mean in the hallways.  So anyway,

6    I've lost three months of work between September and December

7    for the surgery, now just another two weeks being the primary

8    income source in my family this isn't a good for me.

9           THE COURT:  All right.  I'm writing myself a note.

10   Thank you.

11          Have you ever served in the jury before?

12          PROSPECTIVE JUROR:  No.

13          THE COURT:  Have you can you think of any reason, other

14   than what you mentioned, why you could not sit on a jury and

15   render a fair verdict based on the evidence and the law?

16          PROSPECTIVE JUROR:  No.

17          THE COURT:  Thank you.  Pass the microphone please.

18          Yes, ma'am.  Please tell us your name.

19          PROSPECTIVE JUROR:  Alyson Davidson.

20          THE COURT:  Ms.  Davidson, what is your occupation?

21          PROSPECTIVE JUROR:  I'm a retired bookkeeper.

22          THE COURT:  How long have you been retired?

23          PROSPECTIVE JUROR:  ten years.

24          THE COURT:  And what part of the community do you live

25   in?

```
1              PROSPECTIVE JUROR:  Stuart.

2              THE COURT:  How long have you lived in the area?

3              PROSPECTIVE JUROR:  Four and a half years.

4              THE COURT:  Where did you live before that?

5              PROSPECTIVE JUROR:  Palm Beach Gardens.

6              THE COURT:  What is your marital status?

7              PROSPECTIVE JUROR:  I'm married.

8              THE COURT:  Your husband work?

9              PROSPECTIVE JUROR:  He's retired real estate developer.

10             THE COURT:  How about children?

11             PROSPECTIVE JUROR:  I have three.

12             THE COURT:  Tell me.

13             PROSPECTIVE JUROR:  The oldest is 36, he's in

14      information technologies with 3M.  My 27 year old son is a

15      salesman for Nike Golf, my 25 year old daughter is an educator

16      in Orlando.

17             THE COURT:  Have you ever been in the military?

18             PROSPECTIVE JUROR:  No, I have not.

19             THE COURT:  Have you ever been involved in a civil

20      lawsuit as a plaintiff, defendant or witness?

21             PROSPECTIVE JUROR:  I'm not certain.  Let me explain.

22      I was an officer in our condominium association.  The

23      association was sued by a construction company.  I was not a

24      specifically name defendant.

25             THE COURT:  All right.  Have any members of your
```

1      immediate family been involved in civil litigation?

2              PROSPECTIVE JUROR:  Not that I'm aware of.

3              THE COURT:  Do you have any physical, emotional or

4      language problems that would make it difficult for you to

5      participate as a juror?

6              PROSPECTIVE JUROR:  No, I do not.

7              THE COURT:  Have you ever served on a jury before?

8              PROSPECTIVE JUROR:  Yes, I have.  It was state court

9      and I was not the foreman, we did reach a verdict.

10             THE COURT:  Was it civil or criminal?

11             PROSPECTIVE JUROR:  It was civil.

12             THE COURT:  Thank you, ma'am.  Can you think of any

13     reason why you could not sit on this jury and render a fair

14     verdict based on testified and the law?

15             PROSPECTIVE JUROR:  No.

16             THE COURT:  Thank you.  Pass the microphone.

17             Hi there.  What's your name?

18             PROSPECTIVE JUROR:  Esther De Lancer.

19             THE COURT:  Ms.  De Lancer, what is your occupation?

20             PROSPECTIVE JUROR:  Customer service rep with the city

21     of Port St. Lucie.

22             THE COURT:  How long have you been doing that?

23             PROSPECTIVE JUROR:  About a year and two months.

24             THE COURT:  What did you before that?

25             PROSPECTIVE JUROR:  I was the victim advocate with the

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1      Port St. Lucie Victim Advocate.
 2              THE COURT:  Victim advocate?  I'm sorry.  I didn't hear
 3      you.  I'm getting older and harder to hear.
 4              What part of the community do you live in?
 5              PROSPECTIVE JUROR:  Fort Pierce.
 6              THE COURT:  And how long have you lived in the Fort
 7      Pierce in this general area?
 8              PROSPECTIVE JUROR:  About six years.
 9              THE COURT:  What is your marital status?
10              PROSPECTIVE JUROR:  I'm married.
11              THE COURT:  Does your husband work?
12              PROSPECTIVE JUROR:  Yes, sir.
13              THE COURT:  What does he do?
14              PROSPECTIVE JUROR:  He's medical clerk with the VA
15      Hospital.
16              THE COURT:  And how about children?
17              PROSPECTIVE JUROR:  I have three sons.
18              THE COURT:  How old?
19              PROSPECTIVE JUROR:  36, my oldest one is 36, 30 and 23.
20              THE COURT:  And what do they do for a living?
21              PROSPECTIVE JUROR:  My oldest one, he works in -- he
22      creates applications, he lives in California.
23              THE COURT:  The next one?
24              PROSPECTIVE JUROR:  He lives in New Jersey, he works
25      human resources regional manager for --
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1                    THE COURT:  And the youngest?

 2                    PROSPECTIVE JUROR:  He just got a job, he lives in West

 3        Palm Beach.

 4                    THE COURT:  Okay.  And have you ever been involved --

 5        first of all, have you ever served in the military?

 6                    PROSPECTIVE JUROR:  No, sir.

 7                    THE COURT:  Have you ever been involved in a civil

 8        lawsuit as a plaintiff, defendant or witness?

 9                    PROSPECTIVE JUROR:  Yes.

10                    THE COURT:  Tell me.

11                    PROSPECTIVE JUROR:  Divorce and child support.

12                    THE COURT:  Okay.  Divorce and child support.  All

13        right.

14                    How about any members of your immediate family been

15        involved in civil litigation?

16                    PROSPECTIVE JUROR:  Not that I'm aware of.

17                    THE COURT:  Do you have any physical, emotional or

18        language problems that would make it difficult for you to be a

19        juror in this case?

20                    PROSPECTIVE JUROR:  No, sir.

21                    THE COURT:  Have you ever served on a jury before?

22                    PROSPECTIVE JUROR:  No, sir.

23                    THE COURT:  Can you think of any reason why you could

24        not sit on this jury and render a fair verdict based on the

25        evidence and the law as I will instruct you?
```

```
 1                    PROSPECTIVE JUROR:  No, sir.

 2                    THE COURT:  Thank you.  Pass the microphone please.

 3                    Hi.  What's your name?

 4                    PROSPECTIVE JUROR:  Lynn Banas.

 5                    THE COURT:  Ms.  Banas, what is your occupation?

 6                    PROSPECTIVE JUROR:  I'm an administrative assistant at

 7      a place that sells toner for printers.

 8                    THE COURT:  Aha.  How long have you been doing that?

 9                    PROSPECTIVE JUROR:  Two years.

10                    THE COURT:  What did you do before then?

11                    PROSPECTIVE JUROR:  Graphic designer for ten years.

12                    THE COURT:  What part of the community do you live in?

13                    PROSPECTIVE JUROR:  Hobe Sound.

14                    THE COURT:  How long have you lived in the area?

15                    PROSPECTIVE JUROR:  25 years.

16                    THE COURT:  What is your marital status?

17                    PROSPECTIVE JUROR:  Married 30 years today.

18                    THE COURT:  Good.  Happy anniversary.  Does your

19      husband work?

20                    PROSPECTIVE JUROR:  He's an engineer at Bell Cannon,

21      north Palm.

22                    THE COURT:  How about children?

23                    PROSPECTIVE JUROR:  I have three children.  One is 39,

24      he owns his own architecture firm in Houston.  The second one is

25      27 and he's flight instructor in Stuart and my daughter's 26 and
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1        she's a teacher at Jupiter Christian.

2                THE COURT:  All right.  Have you ever served in the

3        military?

4                PROSPECTIVE JUROR:  No.

5                THE COURT:  You ever been involved in a civil lawsuit

6        as a plaintiff, defendant or witness?

7                PROSPECTIVE JUROR:  No.

8                THE COURT:  Any members of your immediate family been

9        in litigation?

10               PROSPECTIVE JUROR:  No.

11               THE COURT:  Do you have any physical, emotional or

12       language problems that would make it difficult for you to

13       participate as a juror?

14               PROSPECTIVE JUROR:  No.

15               THE COURT:  Have you ever served on a jury before?

16               PROSPECTIVE JUROR:  No.

17               THE COURT:  Can you think of any reason why you could

18       not sit on this jury and render a fair verdict based on the

19       evidence and the law as I will instruct you?

20               PROSPECTIVE JUROR:  No.

21               THE COURT:  Thank you.  Pass the microphone please.

22               Yes, ma'am.  Please tell us your name.

23               PROSPECTIVE JUROR:  Marcia Pecina.

24               THE COURT:  Ms. Pecina, what is your occupation?

25               PROSPECTIVE JUROR:  I'm a retired school teacher.

1          THE COURT:  How long have you been retired?

2          PROSPECTIVE JUROR:  12 years.

3          THE COURT:  What is the part of the community you live

4     in?

5          PROSPECTIVE JUROR:  Fort Pierce.

6          THE COURT:  How long have you lived in this area?

7          PROSPECTIVE JUROR:  12 years.

8          THE COURT:  What is your marital status?

9          PROSPECTIVE JUROR:  Married.

10          THE COURT:  Does your husband work?

11          PROSPECTIVE JUROR:  No, he's retired administrator,

12     school administrator.

13          THE COURT:  Okay.  How about kids?

14          PROSPECTIVE JUROR:  Three girls.

15          THE COURT:  How old?

16          PROSPECTIVE JUROR:  43, 36 and 31.

17          THE COURT:  What do they do for a living?

18          PROSPECTIVE JUROR:  My oldest daughter now works for

19     Pfizer, my middle daughter is a manager of a dental office and

20     my younger daughter right at this moment is in Oslo Norway

21     serving as a stage manager for We Will Rock You.

22          THE COURT:  Good for her.

23          PROSPECTIVE JUROR:  She's had a great life.

24          THE COURT:  Sounds like it.

25          PROSPECTIVE JUROR:  She's been all over the world.

```
1              THE COURT:  Have you ever served in the military?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  Have you ever been involved in a civil

4     lawsuit as a plaintiff, defendant or witness?

5              PROSPECTIVE JUROR:  No, sir.

6              THE COURT:  Have any members of your immediate family

7     been involved in civil litigation?

8              PROSPECTIVE JUROR:  No, sir.

9              THE COURT:  Do you have any physical, emotional or

10    language problems that would make it difficult for you to

11    participate as a juror?

12             PROSPECTIVE JUROR:  No.

13             THE COURT:  Have you ever served on a jury before?

14             PROSPECTIVE JUROR:  No.

15             THE COURT:  Can you think of any reason why you could

16    not sit on this jury and render a fair verdict based on the

17    evidence and the law as I will instruct you?

18             PROSPECTIVE JUROR:  No.

19             THE COURT:  Thank you.  Pass the microphone please.

20             Yes, sir.  Please tell us your name.

21             PROSPECTIVE JUROR:  My name is Richard Denike.

22             THE COURT:  Mr. Denike, what is your occupation?

23             PROSPECTIVE JUROR:  I've been in retail for ten years

24    and I've currently gone into companionship with the disabled.

25             THE COURT:  How long have you been doing that?
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1               PROSPECTIVE JUROR:  That I just recently started in

 2    November of last year.

 3               THE COURT:  What part of the community do you live in?

 4               PROSPECTIVE JUROR:  I live in St. Lucie County.

 5               THE COURT:  How long have you lived in the area?

 6               PROSPECTIVE JUROR:  Six years.

 7               THE COURT:  Where did you live before then?

 8               PROSPECTIVE JUROR:  I was -- originally I was born in

 9    New York, moved to Burlington, Vermont then Palm Beach County.

10               THE COURT:  What is your marital status?

11               PROSPECTIVE JUROR:  I'm single.

12               THE COURT:  Any children?

13               PROSPECTIVE JUROR:  No.

14               THE COURT:  Have you ever served in the military?

15               PROSPECTIVE JUROR:  No.

16               THE COURT:  You ever been involved in a civil lawsuit

17    as a plaintiff, defendant or witness?

18               PROSPECTIVE JUROR:  No.

19               THE COURT:  Any members of your immediate family been

20    in litigation?

21               PROSPECTIVE JUROR:  No.

22               THE COURT:  Do you have any physical, emotional or

23    language problems that would make it difficult for you to

24    participate as a juror?

25               PROSPECTIVE JUROR:  The only thing is that I have ADHD.
```

1    Other than that -- back in high school I had a learning

2    disability.  Other than that, it takes me longer to learn things

3    and absorb thing.  Other than that --

4            THE COURT:  Have you ever served on a jury before?

5            PROSPECTIVE JUROR:  No.

6            THE COURT:  Can you think of any reason why you could

7    not sit on this jury and render a fair verdict?

8            PROSPECTIVE JUROR:  No.

9            THE COURT:  Okay.  Thank you, sir.  Pass the

10   microphone.

11           Yes, ma'am.  Please tell us your name.

12           PROSPECTIVE JUROR:  My name is Myriam Voltaire.

13           THE COURT:  Ms.  Voltaire, what is your occupation?

14           PROSPECTIVE JUROR:  I'm a dental assistant.

15           THE COURT:  How long have you been a dental assistant?

16           PROSPECTIVE JUROR:  Four years.

17           THE COURT:  What did you do before then?

18           PROSPECTIVE JUROR:  I was a student.

19           THE COURT:  What part of the community do you live in?

20           PROSPECTIVE JUROR:  Port St. Lucie.

21           The COURT:  How long have you lived in the area?

22           PROSPECTIVE JUROR:  For three years.

23           THE COURT:  Where did you live before?

24           PROSPECTIVE JUROR:  Fort Lauderdale, Florida.

25           THE COURT:  What is your marital status?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1           PROSPECTIVE JUROR:  Single.

2           THE COURT:  Any children?

3           PROSPECTIVE JUROR:  None.

4           THE COURT:  Have you ever served in the military?

5           PROSPECTIVE JUROR:  No.

6           THE COURT:  Have you ever been involved in a civil

7    lawsuit as a plaintiff, defendant or witness?

8           PROSPECTIVE JUROR:  No.

9           THE COURT:  Have any members of your immediate family

10   been involved in civil litigation?

11          PROSPECTIVE JUROR:  No.

12          THE COURT:  Do you have any physical, emotional or

13   language problems that would make it difficult for to you

14   participate as a juror?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Have you ever served on a jury before?

17          PROSPECTIVE JUROR:  No, sir.

18          THE COURT:  Can you think of any reason why you could

19   not sit on this jury and render a fair verdict based on the

20   evidence and the law as I will instruct you?

21          PROSPECTIVE JUROR:  No, sir.

22          THE COURT:  Pass the microphone please.

23          Yes, sir.  Please tell us your name.

24          PROSPECTIVE JUROR:  Michael McCarthy.

25          THE COURT:  Mr. McCarthy, what is your occupation?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1                    PROSPECTIVE JUROR:  Educator.

 2                    THE COURT:  How long have you been an educator?

 3                    PROSPECTIVE JUROR:  For 11 years.

 4                    THE COURT:  At what level do you teach?

 5                    PROSPECTIVE JUROR:  I'm currently a grants manager, I

 6       manage a federal grant we have for the after-school programs.

 7                    THE COURT:  For the administration of a district?

 8                    PROSPECTIVE JUROR:  For the district office, yes.

 9                    THE COURT:  Okay.  What part of the community do you

10       live in?

11                    PROSPECTIVE JUROR:  In Port St. Lucie.

12                    THE COURT:  How long have you lived in the area?

13                    PROSPECTIVE JUROR:  Just under three years.

14                    THE COURT:  Where did you live before?

15                    PROSPECTIVE JUROR:  Miami.

16                    THE COURT:  What is your marital status?

17                    PROSPECTIVE JUROR:  Single.

18                    THE COURT:  Any children?

19                    PROSPECTIVE JUROR:  No, sir.

20                    THE COURT:  Have you ever served in the military?

21                    PROSPECTIVE JUROR:  No.

22                    THE COURT:  You ever been involved in a civil lawsuit

23       as a plaintiff, defendant or witness?

24                    PROSPECTIVE JUROR:  I have not.

25                    THE COURT:  Any members of your immediate family been
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    involved in civil litigation?

2          PROSPECTIVE JUROR:  My father, in the mid 70s, was

3    rear-ended by a tow truck and my brother in the late 80s had a

4    dirty Band-Aid in a drink at a restaurant.

5          THE COURT:  Okay.  They sued I take it?

6          PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Okay.  Do you have any physical, emotional

8    or language problems that would make it difficult for you to

9    participate as a juror?

10         PROSPECTIVE JUROR:  No, sir.

11         THE COURT:  You ever served on a jury before?

12         PROSPECTIVE JUROR:  I have.

13         THE COURT:  How many times?

14         PROSPECTIVE JUROR:  Once.

15         THE COURT:  Was it state or federal?

16         PROSPECTIVE JUROR:  State.

17         THE COURT:  Was it civil or criminal?

18         PROSPECTIVE JUROR:  Civil.

19         THE COURT:  Was the jury able to reach a verdict?

20         PROSPECTIVE JUROR:  Yes, they were.

21         THE COURT:  Were you the foreperson?

22         PROSPECTIVE JUROR:  Yes, I was.

23         THE COURT:  Okay.  Can you think of any reason why you

24    could not sit on this jury and render a fair verdict based on

25    the evidence and the law as I will instruct you?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
1               PROSPECTIVE JUROR:  No, sir.

2               THE COURT:  Thank you.  Pass the microphone please.

3               Hi there.  What's your name?

4               PROSPECTIVE JUROR:  My name is Ann Riva.

5               THE COURT:  Ms. Riva, what is your occupation?

6               PROSPECTIVE JUROR:  I'm a retired teacher.

7               THE COURT:  How long have you been retired?

8               PROSPECTIVE JUROR:  Seven years.

9               THE COURT:  What part of the community do you live in?

10              PROSPECTIVE JUROR:  Fort Pierce.

11              THE COURT:  How long have you lived in the area?

12              PROSPECTIVE JUROR:  About five years.

13              THE COURT:  Where did you live before?

14              PROSPECTIVE JUROR:  Syracuse, New York.

15              THE COURT:  What is your marital status?

16              PROSPECTIVE JUROR:  Married.

17              THE COURT:  Does your husband work?

18              PROSPECTIVE JUROR:  He's retired also.

19              THE COURT:  What is he retired from?

20              PROSPECTIVE JUROR:  He was a tavern owner.

21              THE COURT:  How about kids?

22              PROSPECTIVE JUROR:  No kids.

23              THE COURT:  Have you ever served in the military?

24              PROSPECTIVE JUROR:  No, sir.

25              THE COURT:  Have you ever been involved in a civil
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1    lawsuit as a plaintiff, defendant or witness?

 2              PROSPECTIVE JUROR:  No.

 3              THE COURT:  Have any members of your immediate family

 4    been involve in civil litigation?

 5              PROSPECTIVE JUROR:  No.

 6              THE COURT:  Do you have any physical, emotional or

 7    language problems that would make it difficult for you to

 8    participate as a juror?

 9              PROSPECTIVE JUROR:  No.

10              THE COURT:  Have you ever served on a jury before?

11              PROSPECTIVE JUROR:  Yes.

12              THE COURT:  How many times?

13              PROSPECTIVE JUROR:  Once.

14              THE COURT:  Was it federal or state?

15              PROSPECTIVE JUROR:  State.

16              THE COURT:  Was it civil or criminal?

17              PROSPECTIVE JUROR:  Criminal.

18              THE COURT:  Was the jury able to reach a verdict?

19              PROSPECTIVE JUROR:  No.

20              THE COURT:  Were you the foreperson?

21              PROSPECTIVE JUROR:  No.

22              THE COURT:  All right.  Can you think of any reason why

23    you could not sit on this jury and render a fair verdict based

24    on the evidence and the law as I will instruct you?

25              PROSPECTIVE JUROR:  No.
```

1           THE COURT:  Thank you.  Pass the microphone please.

2           Yes, sir.  Please tell us your name.

3           PROSPECTIVE JUROR:  Robert Cook.

4           THE COURT:  Mr. Cook, what is your occupation?

5           PROSPECTIVE JUROR:  Retired pipe fitter.

6           THE COURT:  How long have you been retired?

7           PROSPECTIVE JUROR:  12 years.

8           THE COURT:  And what is the part of the community you

9     live in?

10          PROSPECTIVE JUROR:  Vero beach.

11          THE COURT:  How long have you lived in the area?

12          PROSPECTIVE JUROR:  12 years.

13          THE COURT:  What is your marital status?

14          PROSPECTIVE JUROR:  Married.

15          THE COURT:  Does your wife work?

16          PROSPECTIVE JUROR:  No, she's retired.

17          THE COURT:  From what?

18          PROSPECTIVE JUROR:  She was a receptionist.

19          THE COURT:  Do you have children?

20          PROSPECTIVE JUROR:  Yes, I got three.

21          THE COURT:  How old?

22          PROSPECTIVE JUROR:  My oldest is 40, she's a housewife.

23    My middle is 37, she's a hairdresser and my son 35 is a pipe

24    fitter.

25          THE COURT:  And have you ever served in the military?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1       PROSPECTIVE JUROR:  Yes.

2       THE COURT:  What branch?

3       PROSPECTIVE JUROR:  The Army.

4       THE COURT:  Were you ever in the military police?

5       PROSPECTIVE JUROR:  No.

6       THE COURT:  You ever have any disciplinary action taken

7   against you?

8       PROSPECTIVE JUROR:  No.

9       THE COURT:  Have you ever been involved in a civil

10  lawsuit as a plaintiff, defendant or witness?

11      PROSPECTIVE JUROR:  No, sir.

12      THE COURT:  Any members of your immediate family been

13  involved in civil litigation?

14      PROSPECTIVE JUROR:  No, sir.

15      THE COURT:  Do you have any physical, emotional or

16  language problems that would make it difficult for you to

17  participate as a juror?

18      PROSPECTIVE JUROR:  No, sir.

19      THE COURT:  You ever served on a jury before?

20      PROSPECTIVE JUROR:  No.

21      THE COURT:  Can you think of any reason why you could

22  not sit on this jury and render a fair verdict based on the

23  evidence and the law as I will instruct you?

24      PROSPECTIVE JUROR:  No, sir.

25      THE COURT:  Thank you, sir.  Pass the microphone.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
1              Hi there.  What's your name?

2              PROSPECTIVE JUROR:  Hi.  My name is Janice Brumley

3    Chesser.  He's in the middle of changing my name now.

4              THE COURT:  Okay.  And what is your occupation?

5              PROSPECTIVE JUROR:  I'm a nurse.

6              THE COURT:  And how long have you been a nurse?

7              PROSPECTIVE JUROR:  21 years.

8              THE COURT:  And what part of the community do you live

9    in?

10             PROSPECTIVE JUROR:  I live in Sebastian Florida.

11             THE COURT:  How long have you lived in the area?

12             PROSPECTIVE JUROR:  49 years.

13             THE COURT:  What is your marital status?

14             PROSPECTIVE JUROR:  I'm married.

15             THE COURT:  Does your husband work?

16             PROSPECTIVE JUROR:  Yes, he's a mechanic.

17             THE COURT:  And what kind of a mechanic?

18             PROSPECTIVE JUROR:  Heavy equipment.

19             THE COURT:  Okay.  How about children?

20             PROSPECTIVE JUROR:  I have three.

21             THE COURT:  How old?

22             PROSPECTIVE JUROR:  I have a 35 year old, a 29 and 27.

23   My 35 is a dental hygienist, my 29 is in the US Navy and my 27

24   is a nursing school.

25             THE COURT:  Okay.  And what have you ever been in the
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    military?

2         PROSPECTIVE JUROR:  No, I have not.

3         THE COURT:  Have you ever been involved in a civil

4    lawsuit as a plaintiff, defendant or witness?

5         PROSPECTIVE JUROR:  No.

6         THE COURT:  Have any members of your immediate family

7    been involved in civil litigation?

8         PROSPECTIVE JUROR:  No.

9         THE COURT:  Do you have any physical, emotional or

10   language problems that would make it difficult for you to

11   participate as a juror?

12        PROSPECTIVE JUROR:  No.

13        THE COURT:  Have you ever served on a jury before?

14        PROSPECTIVE JUROR:  No.

15        THE COURT:  Can you think of any reason why you could

16   not sit on this jury and render a fair verdict based on the

17   evidence and the law as I will instruct you?

18        PROSPECTIVE JUROR:  No.

19        THE COURT:  Thank you, ma'am.  Pass the microphone

20   straight back.

21        Hi there.  What's your name?

22        PROSPECTIVE JUROR:  My name is Lisa Ientile.

23        THE COURT:  What do you do for a living?

24        PROSPECTIVE JUROR:  I'm disabled.

25        THE COURT:  You're disabled from what?

```
 1                  PROSPECTIVE JUROR:  From --

 2                  THE COURT:  What was your occupation before?

 3                  PROSPECTIVE JUROR:  I was a manicurist and I worked in

 4        retail.

 5                  THE COURT:  What part of the community do you live in?

 6                  PROSPECTIVE JUROR:  Port St. Lucie.

 7                  THE COURT:  How long have you lived in the area?

 8                  PROSPECTIVE JUROR:  About three years.

 9                  THE COURT:  And tell me about your marital status.

10                  PROSPECTIVE JUROR:  I'm married.

11                  THE COURT:  Does your husband work?

12                  PROSPECTIVE JUROR:  Yes.

13                  THE COURT:  What does do?

14                  PROSPECTIVE JUROR:  He works for the Jupiter police

15        department.

16                  THE COURT:  And what does he do for the Jupiter police

17        department?

18                  PROSPECTIVE JUROR:  He's a code enforcement officer.

19                  THE COURT:  Okay.  What is your -- how about children?

20                  PROSPECTIVE JUROR:  I have one.

21                  THE COURT:  How old?

22                  PROSPECTIVE JUROR:  21.

23                  THE COURT:  What does he or she do for a living?

24                  PROSPECTIVE JUROR:  He's a student and he's a security

25        guard.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          THE COURT:  Okay.  What about have you ever served in

2     the military?

3          PROSPECTIVE JUROR:  No.

4          THE COURT:  Have you ever been involved in a civil

5     lawsuit as a plaintiff, defendant or witness?

6          PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Tell me about it.

8          PROSPECTIVE JUROR:  I had a couple of lawsuits from

9     several car accidents.  They didn't go to court, but we settled

10    out of court.

11         THE COURT:  You were the plaintiff?

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Okay.

14         PROSPECTIVE JUROR:  And I was also called as a witness

15    for a murder in the community that I previously lived in.

16         THE COURT:  Okay.  And is your disability as a result

17    of your litigation?

18         PROSPECTIVE JUROR:  Yes.

19         THE COURT:  Okay.  And any members of your immediate

20    family been involved in litigation?

21         PROSPECTIVE JUROR:  Yes.

22         THE COURT:  Tell me about it.

23         PROSPECTIVE JUROR:  My husband was as well for auto,

24    and my father-in-law was -- quite some time ago for -- actually

25    he lost a limb due to faulty machinery from -- he was using at

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    his company.

2           THE COURT:  Okay.  Do you have any physical, emotional

3    or language problems that would make it difficult for you to

4    participate as a juror?

5           PROSPECTIVE JUROR:  My only problem is sitting for a

6    length of time.  I see the backs of those chairs going like this

7    and I can't sit on that chair.

8           THE COURT:  You can make them stiff.  There's a lever

9    you can pull to make them stiff.

10          PROSPECTIVE JUROR:  Sometimes I need to stand up.  I

11   can't sit for hours at a time.

12          THE COURT:  If you need to stand up we can always work

13   that out.  All right.

14          Have you ever been on a jury?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Can you think of any reason why you could

17   not sit on this jury and render a fair verdict based on the

18   evidence and the law as I will instruct you?

19          PROSPECTIVE JUROR:  No.

20          THE COURT:  All right.  Thank you.  Pass the

21   microphone.

22          Hi.  What's your name?

23          PROSPECTIVE JUROR:  Tiffany Bensley.

24          THE COURT:  Ms.  Bensley, what is your occupation?

25          PROSPECTIVE JUROR:  I'm a customer service manager for

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
1     the E-commerce industry.
2              THE COURT:  Wait a second.  Your name was -- ma'am, the
3     one before?
4              PROSPECTIVE JUROR:  Lisa Ientile.
5              THE COURT:  I'm sorry.  I forgot to make a note of it.
6              Ms.  Bensley, I'm sorry.  Tell me what you do?
7              PROSPECTIVE JUROR:  Customer service manager for an
8     E-commerce company.
9              THE COURT:  How long have you been doing that?
10             PROSPECTIVE JUROR:  Five years.
11             THE COURT:  What is your part of the community you live
12    in?
13             PROSPECTIVE JUROR:  Stuart, Florida.
14             THE COURT:  And how long have you lived in the area?
15             PROSPECTIVE JUROR:  Eight years.
16             THE COURT:  What is your marital status?
17             PROSPECTIVE JUROR:  Married.
18             THE COURT:  Does your husband work?
19             PROSPECTIVE JUROR:  He does.
20             THE COURT:  What does he do?
21             PROSPECTIVE JUROR:  He does research for private
22    investigators.
23             THE COURT:  Okay.  What part of the -- I'm sorry.  You
24    already told me.  What about children?
25             PROSPECTIVE JUROR:  two.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          THE COURT:  How old?

2          PROSPECTIVE JUROR:  11 and nine.

3          THE COURT:  Have you ever served in the military?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  You ever been involved in a civil lawsuit

6      as a plaintiff, defendant or witness?

7          PROSPECTIVE JUROR:  No.

8          THE COURT:  Any members of your immediate family been

9      in litigation?

10         PROSPECTIVE JUROR:  Well, my parents divorced at like

11     seven years, then my aunt sued my mom on The People's Court.

12         THE COURT:  I meant real litigation.  Which one was

13     that?  The one with Marilyn Milian?

14         PROSPECTIVE JUROR:  It was -- yeah, it was like a

15     Spanish lady.

16         THE COURT:  There's a couple of them Spanish ladies,

17     but there's one from Miami?

18         PROSPECTIVE JUROR:  It was like in the 90s so I don't

19     really remember.  She burned the tape.

20         THE COURT:  I take it she lost?

21         PROSPECTIVE JUROR:  Yeah.

22         THE COURT:  Okay.  Do you have any physical, emotional

23     or language problems that would make it difficult for you to

24     participate as a juror?

25         PROSPECTIVE JUROR:  No.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1           THE COURT:  Have you ever served on a jury before?

2           PROSPECTIVE JUROR:  No.

3           THE COURT:  Can you think of any reason why you could

4    not sit on this jury and render a fair verdict waived based on

5    the law and the evidence as I will instruct you?

6           PROSPECTIVE JUROR:  No.  I mean, I mentioned earlier

7    that I knew Mr. Hess and Heathcock, so that's it.

8           THE COURT:  All right.  You say he represented you in

9    something?

10          PROSPECTIVE JUROR:  It was family court.

11          THE COURT:  Involving what?

12          PROSPECTIVE JUROR:  My children and custody.

13          THE COURT:  All right.  Well, that's litigation.  So

14   you were involved in that also?

15          PROSPECTIVE JUROR:  Yeah.

16          THE COURT:  Okay.  What was the nature of your suit?

17          PROSPECTIVE JUROR:  It wasn't really a lawsuit, it was

18   like -- I don't know.  It's kind of personal.

19          THE COURT:  Okay.  All right.  Well, if we need to

20   we'll talk about that later, okay?

21          PROSPECTIVE JUROR:  All right.

22          THE COURT:  Thank you.  Pass the microphone.

23          PROSPECTIVE JUROR:  Thomas Brown.

24          THE COURT:  Hi.  What do you do for a living,

25   Mr. Brown?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
1              PROSPECTIVE JUROR:  Retired construction worker.

2              THE COURT:  Retired what?

3              PROSPECTIVE JUROR:  Construction worker.

4              THE COURT:  How long have you been retired?

5              PROSPECTIVE JUROR:  About 12 years.

6              THE COURT:  What part of the community do you live in?

7              PROSPECTIVE JUROR:  Fort Pierce.

8              THE COURT:  How long have you lived in the area?

9              PROSPECTIVE JUROR:  About 55 years.

10             THE COURT:  What is your marital status?

11             PROSPECTIVE JUROR:  Single.

12             THE COURT:  Any children?

13             PROSPECTIVE JUROR:  Three.

14             THE COURT:  How old?

15             PROSPECTIVE JUROR:  22 to 39.

16             THE COURT:  Tell me, what do they do for a living?

17   Start with the youngest.

18             PROSPECTIVE JUROR:  The youngest in school.  The next

19   one, he do -- he's a cook and the oldest one, she's a nurse.

20             THE COURT:  Okay.  Did you ever serve in the military?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  What branch?

23             PROSPECTIVE JUROR:  Army.

24             THE COURT:  Were you ever in the military police?

25             PROSPECTIVE JUROR:  No.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          THE COURT:  Did you ever receive any disciplinary

2    action in the military?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  What was it?

5          PROSPECTIVE JUROR:  Article 15.

6          THE COURT:  Nonjudicial punishment?  All right.

7          Have you ever been involved in a civil lawsuit as a

8    plaintiff, defendant or witness?

9          PROSPECTIVE JUROR:  No.

10          THE COURT:  Any members of your immediate family been

11    involved?

12          PROSPECTIVE JUROR:  No.

13          THE COURT:  Do you have any physical, emotional or

14    language problems that would make it difficult for you to

15    participate as a juror?

16          PROSPECTIVE JUROR:  No.

17          THE COURT:  You ever serve on a jury before?

18          PROSPECTIVE JUROR:  No.

19          THE COURT:  Can you think of any reason why you could

20    not sit on this jury and render a fair verdict based on the

21    evidence and the law as I will instruct you?

22          PROSPECTIVE JUROR:  No.

23          THE COURT:  Thank you, sir.  Pass the microphone.

24          Hi there.  What's your name?

25          PROSPECTIVE JUROR:  Heather Hinefelt.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          THE COURT:  What is your occupation?

2          PROSPECTIVE JUROR:  I'm a stay-at-home mom.

3          THE COURT:  What about -- I take it are you married?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Okay.  Tell me what part of the community

6     you live in?

7          PROSPECTIVE JUROR:  Sebring, Florida.

8          THE COURT:  How long have you lived in the area?

9          PROSPECTIVE JUROR:  Almost seven years.

10         THE COURT:  what is your husband do for a living?

11         PROSPECTIVE JUROR:  He installs cable for Comcast.

12         THE COURT:  Okay.  And do you have children?

13         PROSPECTIVE JUROR:  I have four.

14         THE COURT:  How old?

15         PROSPECTIVE JUROR:  11, nine, four and one.

16         THE COURT:  Okay.  Have you ever served in the

17    military?

18         PROSPECTIVE JUROR:  No.

19         THE COURT:  And have you ever been involved in a civil

20    lawsuit as a plaintiff, defendant or witness?

21         PROSPECTIVE JUROR:  I'm not sure what it was.  I had a

22    doctor serve me papers for a bill, never went to court.

23         THE COURT:  You were the subject of collection lawsuit

24    of some sort.  Okay.

25         Have any members of your immediate family been involved

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    in civil litigation?

2              PROSPECTIVE JUROR:  I don't know what it's called.  My

3    husband and three other coworkers are currently in a lawsuit

4    against their former employer.

5              THE COURT:  Okay.  For what?

6              PROSPECTIVE JUROR:  It's those four versus Mastec.

7              THE COURT:  For pay?

8              PROSPECTIVE JUROR:  Failure to pay.

9              THE COURT:  Okay.  Tell me about any physical,

10   emotional or language problems that would make it difficult for

11   you to participate as a juror?

12             PROSPECTIVE JUROR:  No.

13             THE COURT:  Have you ever served on a jury before?

14             PROSPECTIVE JUROR:  No, sir.

15             THE COURT:  Can you think of any reason why you could

16   not sit on this jury and render a fair verdict based on the

17   evidence and the law as I will instruct you?

18             PROSPECTIVE JUROR:  No.  My only thing is we just

19   recently found out that my 9-year-old has ADHD.  He is possibly

20   going to fail school because of this.  Both my parents are

21   disabled, my husband works six days a week, 12 hour shifts, I'm

22   really the only one that can sit down with him after school.

23   The medicine they put him on is time released.  If I don't sit

24   down with him and get his homework done right after school, if

25   it goes into the evening it goes like right out the window.

104

1      There's no getting through to him.

2              And as of right now my husband is actually out in the

3      van with two of our youngest children waiting for me and I have

4      three of them that are actually sick too.

5              THE COURT:  He's got people waiting at home for the

6      cable to be installed, right?  I remember him stopping off on

7      the way to my house too.

8              Thank you.  Wait a second.  Okay.  Pass the microphone.

9              Hi there.  What's your name?

10             PROSPECTIVE JUROR:  My name is a Lisa Bantz.

11             THE COURT:  Ms. Bantz, what is your occupation?

12             PROSPECTIVE JUROR:  I'm a registered nurse at Indian

13     River Medical Center.

14             THE COURT:  How long have you been an RN?

15             PROSPECTIVE JUROR:  Less than a year.

16             THE COURT:  What did you do before then?

17             PROSPECTIVE JUROR:  I was a student.

18             THE COURT:  What part of the community do you live in?

19             PROSPECTIVE JUROR:  Live in north Fort Pierce.

20             THE COURT:  How long have you lived in the area?

21             PROSPECTIVE JUROR:  About nine years.  We lived in Vero

22     for three years prior.

23             THE COURT:  What part of the -- what is your marital

24     status?

25             PROSPECTIVE JUROR:  Single.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1                    THE COURT:  Any children?

 2                    PROSPECTIVE JUROR:  No.

 3                    THE COURT:  Have you ever served in the military?

 4                    PROSPECTIVE JUROR:  No.

 5                    THE COURT:  Have you ever been involved in a civil

 6       lawsuit as a plaintiff, defendant or witness?

 7                    PROSPECTIVE JUROR:  No, sir.

 8                    THE COURT:  Have any members of your immediate family

 9       been involved in litigation?

10                    PROSPECTIVE JUROR:  Not to my knowledge.

11                    THE COURT:  You have any physical, emotional or

12       language problems that would make it difficult for you to

13       participate as a juror?

14                    PROSPECTIVE JUROR:  No, sir.

15                    THE COURT:  Have you ever served on a jury before?

16                    PROSPECTIVE JUROR:  No, sir.

17                    THE COURT:  Can you think of any reason why you could

18       not sit on this jury and render a fair verdict based on the

19       evidence and the law as I will instruct you?

20                    PROSPECTIVE JUROR:  No, sir.

21                    THE COURT:  Thank you.  Pass the microphone.

22                    Yes, sir.  Please tell us your name.

23                    PROSPECTIVE JUROR:  Patrick Meehan.

24                    THE COURT:  What is your occupation, Mr. Meehan?

25                    PROSPECTIVE JUROR:  I worked as a machine mechanic for
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1      34 years.

2                THE COURT:  Are you retired now?

3                PROSPECTIVE JUROR:  Yes.

4                THE COURT:  How long have you been retired?

5                PROSPECTIVE JUROR:  About seven years.

6                THE COURT:  And what is the part of the community you

7      live in?

8                PROSPECTIVE JUROR:  Stuart.

9                THE COURT:  How long have you lived in the area?

10               PROSPECTIVE JUROR:  Ten years.

11               THE COURT:  And what is your marital status?

12               PROSPECTIVE JUROR:  Divorced.

13               THE COURT:  How long you been divorced?

14               PROSPECTIVE JUROR:  About ten years.

15               THE COURT:  We don't care then.  How about kids?

16               PROSPECTIVE JUROR:  Excuse me.

17               THE COURT:  How about kids?

18               PROSPECTIVE JUROR:  Four.

19               THE COURT:  How old?

20               PROSPECTIVE JUROR:  36, 39, 42, and 45.

21               THE COURT:  What do they do for a living?

22               PROSPECTIVE JUROR:  The youngest one works for FedEx.

23     The next one school teacher.  One works for the eye institute

24     and one works in the catering business.

25               THE COURT:  Okay.  Have you ever been involved in a

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    civil lawsuit?

2           PROSPECTIVE JUROR:  No.

3           THE COURT:  Have any of your immediate family been

4    involved in civil litigation?

5           PROSPECTIVE JUROR:  No.

6           THE COURT:  Have you ever served in the military?

7           PROSPECTIVE JUROR:  No.

8           THE COURT:  Do you have any physical, emotional or

9    language problems that would make it difficult for you to

10   participate as a juror?

11          PROSPECTIVE JUROR:  Yeah.

12          THE COURT:  What's that?

13          PROSPECTIVE JUROR:  I can't hear you.

14          THE COURT:  Okay.  That makes it hard?

15          PROSPECTIVE JUROR:  I have it amplified, that's about

16   it.  I have a bad case of emphysema, I'm under doctor's care,

17   about four different medications for that.  That's about it.

18          THE COURT:  All right, sir.  Thank you very much.  Pass

19   the microphone please.

20          Hi there.  What's your name?

21          PROSPECTIVE JUROR:  I'm Diane Hoskins.

22          THE COURT:  Ms.  Hoskins, what is your occupation?

23          PROSPECTIVE JUROR:  I'm self-employed.

24          THE COURT:  Self-employed doing what?

25          PROSPECTIVE JUROR:  Yes, I own and operate an interior

1    design business in Martin County.

2              THE COURT:  How long have you been doing that?

3              PROSPECTIVE JUROR:  Over 40 years.

4              THE COURT:  What is your part of the community you live

5    in?

6              PROSPECTIVE JUROR:  In Jensen Beach.

7              THE COURT:  How long have you live in the area?

8              PROSPECTIVE JUROR:  How long have I lived in the area?

9              THE COURT:  Yes.

10             PROSPECTIVE JUROR:  Over 30 years.

11             THE COURT:  What is your marital status?

12             PROSPECTIVE JUROR:  I'm married.

13             THE COURT:  Does your husband work?

14             PROSPECTIVE JUROR:  He's retired.

15             THE COURT:  From what?

16             PROSPECTIVE JUROR:  He's retired from the utility

17   company in management and also an air conditioning firm that he

18   owned.

19             THE COURT:  What is your -- what about kids?

20             PROSPECTIVE JUROR:  I have twin boys that are 38.

21             THE COURT:  Twin.  I thought you said 20.  I was trying

22   to figure out how you did that.  More power to you but -- and

23   what age are your twins?

24             PROSPECTIVE JUROR:  The oldest has his own air

25   conditioning business owns and operates that and the youngest

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

109

1    works with AT&T fiberoptics.

2         THE COURT:  That's the only two kids you got?

3         PROSPECTIVE JUROR:  Yes.

4         THE COURT:  Did you ever serve in the military?

5         PROSPECTIVE JUROR:  No, I did not.

6         THE COURT:  And have you ever been involved in a civil

7    lawsuit as a plaintiff, defendant or witness?

8         PROSPECTIVE JUROR:  Yes.

9         THE COURT:  What tell me about it?

10        PROSPECTIVE JUROR:  It was a wrongful death.  My mother

11   was one of the Vioxx victims.

12        THE COURT:  Okay.  So you were involved as part of the

13   family in the lawsuit?

14        PROSPECTIVE JUROR:  Yes.

15        THE COURT:  And is there anything about your

16   involvement in that lawsuit that would make it difficult for you

17   to be fair and impartial in this case?

18        PROSPECTIVE JUROR:  Absolutely not.

19        THE COURT:  Anything else?  Any other lawsuits?

20        PROSPECTIVE JUROR:  No.

21        THE COURT:  How about any members of your immediate

22   family other than that in any lawsuits?

23        PROSPECTIVE JUROR:  Not that I know of.

24        THE COURT:  Do you have any physical, emotional or

25   language problems that would make it difficult for you to

```
 1    participate as a juror?

 2              PROSPECTIVE JUROR:  No.

 3              THE COURT:  Have you ever served on a jury before?

 4              PROSPECTIVE JUROR:  No.

 5              THE COURT:  Can you think of any reason why you could

 6    not sit on this jury and render a fair verdict based on the

 7    evidence and the law as I will instruct you?

 8              PROSPECTIVE JUROR:  None.

 9              THE COURT:  Thank you.  Pass the microphone please.

10              Yes, sir.  Please tell us your name.

11              PROSPECTIVE JUROR:  Rick Reiter.

12              THE COURT:  Mr. Reiter, what is your occupation?

13              PROSPECTIVE JUROR:  I work for the postal service.

14              THE COURT:  How long have you work for the postal

15    service?

16              PROSPECTIVE JUROR:  Way too damn long. 35 years.

17              THE COURT:  And what part of the community do you live

18    in?

19              PROSPECTIVE JUROR:  Port St. Lucie.

20              THE COURT:  How long have you lived in the area?

21              PROSPECTIVE JUROR:  11 years.

22              THE COURT:  And what is your marital status?

23              PROSPECTIVE JUROR:  I'm married.

24              THE COURT:  Does your wife work outside the home?

25              PROSPECTIVE JUROR:  Yes, she does.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
1              THE COURT:  What does she do?

2              PROSPECTIVE JUROR:  She's an administrator for St.

3    Jean's Kids Academy.

4              THE COURT:  What about kids?

5              PROSPECTIVE JUROR:  Altogether, eight.

6              THE COURT:  Yours, hers and your both?

7              PROSPECTIVE JUROR:  Hers and mine.

8              THE COURT:  Okay.  How many?

9              PROSPECTIVE JUROR:  Eight.

10             THE COURT:  And tell me.  This is a good test?

11             PROSPECTIVE JUROR:  You're going to ask the ages,

12   aren't you?  I've been thinking about that.

13             THE COURT:  Ages and occupation and if you don't know

14   we're going to tell them.

15             PROSPECTIVE JUROR:  I don't care.  The oldest is 47,

16   he's a mortgage broker.  That's my wife's.

17             The next one down is her daughter, she's 43 but don't

18   tell her I told you her age.

19             THE COURT:  Okay.

20             PROSPECTIVE JUROR:  She's the head administrator for

21   St. Jean's Kids Academy.  Her oldest daughter, youngest daughter

22   is a housewife in Chicago.  Her youngest son is a retail manager

23   for Target in Port St. Lucie.

24             My oldest boy has passed away, he would have been 42

25   this year.  My oldest -- my two daughters are both unemployed.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    My youngest son is 28, no, he's 29, sorry, he's a retail manager

2    up in Deltona, Florida.

3            THE COURT:  That's all of them?

4            PROSPECTIVE JUROR:  That's all of them.

5            THE COURT:  Okay.  Have you ever served in the

6    military?

7            PROSPECTIVE JUROR:  Yes, sir.

8            THE COURT:  What branch?

9            PROSPECTIVE JUROR:  US Army.

10           THE COURT:  Have you ever been involved in a civil

11   lawsuit as a plaintiff, defendant or witness?

12           PROSPECTIVE JUROR:  I was involved in an automobile

13   accident which I sued.

14           THE COURT:  Okay.  How many times once?

15           PROSPECTIVE JUROR:  Once.

16           THE COURT:  Any members of your immediate family been

17   involved in litigation?

18           PROSPECTIVE JUROR:  Not to my knowledge.

19           THE COURT:  Do you have any physical, emotional or

20   language problems that would make it difficult for you to

21   participate as a juror?

22           PROSPECTIVE JUROR:  Right now I'm a little bit sick, my

23   left ear is totally clogged.

24           THE COURT:  Keep your head turned the other way.

25           PROSPECTIVE JUROR:  No problem.  That's what my wife

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    says.

2            THE COURT:  Have you ever served on a jury before?

3            PROSPECTIVE JUROR:  No, sir.

4            THE COURT:  Can you think of any reason why you could

5    not sit on this jury and render a fair verdict based on the

6    evidence and the law as I will instruct you?

7            PROSPECTIVE JUROR:  No, sir.

8            THE COURT:  Thank you sir.  Pass the microphone please.

9            Hi there.  What's your name?

10           PROSPECTIVE JUROR:  My name is Peter Freudenberg.

11           THE COURT:  Mr. Freudenberg, what is your occupation?

12           PROSPECTIVE JUROR:  I'm a retired professional artist.

13           THE COURT:  And how long have you been retired?

14           PROSPECTIVE JUROR:  20 years.

15           THE COURT:  And what part of the community do you live

16   in?

17           PROSPECTIVE JUROR:  In Sewall's Pointe, sir.

18           THE COURT:  How long have you lived in this area?

19           PROSPECTIVE JUROR:  Nine years.

20           THE COURT:  What is your marital status?

21           PROSPECTIVE JUROR:  I'm married.

22           THE COURT:  Does your wife work outside the home?

23           PROSPECTIVE JUROR:  She's a retired physician.

24           THE COURT:  How long have you been -- I'm sorry.  Do

25   you have children?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1                 PROSPECTIVE JUROR:  No, sir.

 2                 THE COURT:  Have you ever served in the military?

 3                 PROSPECTIVE JUROR:  Yes, in the United States Army.

 4                 THE COURT:  How long -- excuse me.  Have you ever been

 5      involved in a civil lawsuit as a plaintiff, defendant or

 6      witness?

 7                 PROSPECTIVE JUROR:  In divorce court and workman's comp

 8      court.

 9                 THE COURT:  Okay.  How about members of your immediate

10      family, have they been involved in litigation?

11                 PROSPECTIVE JUROR:  My wife was involved in a

12      malpractice suit.

13                 THE COURT:  Okay.  Do you have any physical, emotional

14      or language problems that would make it difficult for you to

15      participate as a juror?

16                 PROSPECTIVE JUROR:  I was just going to say I caught a

17      cold from him.

18                 THE COURT:  It's going around.  I don't think you don't

19      need to catch it from him.  There's plenty of other places.

20                 Have you ever served on a jury before?

21                 PROSPECTIVE JUROR:  No, sir.

22                 THE COURT:  Can you think of any reason why you could

23      not sit on this jury and render a fair verdict based on the

24      evidence and the law as I will instruct you?

25                 PROSPECTIVE JUROR:  No, sir.
```

```
1              THE COURT:  All right.  Thank you.  Pass the microphone
2      please.
3              Hi there.  What's your name?
4              PROSPECTIVE JUROR:  My name is Kerryann Bess.
5              THE COURT:  Ms.  Bess, what is your occupation?
6              PROSPECTIVE JUROR:  I'm a registered nurse.
7              THE COURT:  How long have you been a registered nurse?
8              PROSPECTIVE JUROR:  Ten years.
9              THE COURT:  What part of the community do you live in?
10             PROSPECTIVE JUROR:  In Port St. Lucie.
11             THE COURT:  How long have you lived in the area?
12             PROSPECTIVE JUROR:  Four and a half years.
13             THE COURT:  And what is your marital status?
14             PROSPECTIVE JUROR:  Married.
15             THE COURT:  Does your husband work?
16             PROSPECTIVE JUROR:  He does.
17             THE COURT:  What does he do?
18             PROSPECTIVE JUROR:  He is the housekeeping supervisor
19     at an assisted living community.
20             THE COURT:  What about children?
21             PROSPECTIVE JUROR:  One stepson.
22             THE COURT:  And how old and what does he do if he
23     works?
24             PROSPECTIVE JUROR:  He's 13 and he is in middle school.
25             THE COURT:  Okay.  How about have you ever served in
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1      the military?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  Have you ever been involved in a civil

4      lawsuit as a plaintiff, defendant or witness?

5              PROSPECTIVE JUROR:  Two, one directly and one

6      indirectly.

7              THE COURT:  All right.  Tell me about it.

8              PROSPECTIVE JUROR:  The direct one was I was a

9      plaintiff from an automobile accident and the indirect one was

10     my husband got sued by the credit card company in December, they

11     garnished our bank account so we had to go to court to try to

12     recover some of the money.

13             THE COURT:  All right.  How about any members of your

14     immediate family, you already told me about your husband but

15     anybody else?

16             PROSPECTIVE JUROR:  Yeah.  Well, he again had a child

17     support case and another credit card case.

18             THE COURT:  Okay.  He was defending?

19             PROSPECTIVE JUROR:  Yes.

20             THE COURT:  All right.  And do you have any physical,

21     emotional or language problems that would make it difficult for

22     you to participate as a juror?

23             PROSPECTIVE JUROR:  I do not.

24             THE COURT:  Have you ever served on a jury before?

25             PROSPECTIVE JUROR:  No.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          THE COURT:  Can you think of any reason why you could

2     not sit on this jury and render a fair verdict based on the

3     evidence and the law as I will instruct you?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  Thank you.  Pass the microphone please.

6          Hi there.  What's your name?

7          PROSPECTIVE JUROR:  Hello.  I'm Janice Guarino.

8          THE COURT:  Ms.  Guarino, what is your occupation?

9          PROSPECTIVE JUROR:  I'm an interior designer.

10         THE COURT:  Boy, there's more interior designers than

11    there are interiors.

12         How long have you been an interior designer?

13         PROSPECTIVE JUROR:  15 years.

14         THE COURT:  What part of the community do you live in?

15         PROSPECTIVE JUROR:  I live in Palm City.

16         THE COURT:  How long have you lived in the area?

17         PROSPECTIVE JUROR:  20 years.

18         THE COURT:  And what is your marital status?

19         PROSPECTIVE JUROR:  I'm married.

20         THE COURT:  Does your husband work?

21         PROSPECTIVE JUROR:  Yes, he's a realtor.

22         THE COURT:  And how long -- I'm sorry, what about

23    children?

24         PROSPECTIVE JUROR:  No children.

25         THE COURT:  And have you ever served in the military?

1          PROSPECTIVE JUROR:  No.

2          THE COURT:  Have you ever been involved in a civil

3  lawsuit as a plaintiff, defendant or witness?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  Have any members of your immediate family

6  been involved in litigation?

7          PROSPECTIVE JUROR:  Not that I know of.

8          THE COURT:  Do you have any excuse me, physical,

9  emotional or language problems that would make it difficult for

10  you to participate as a juror?

11          PROSPECTIVE JUROR:  No.

12          THE COURT:  Have you ever served on a jury before?

13          PROSPECTIVE JUROR:  No, sir.

14          THE COURT:  Can you think of any reason why you could

15  not sit on this jury and render a fair verdict based on the

16  evidence and the law as I will instruct you?

17          PROSPECTIVE JUROR:  No, sir.

18          THE COURT:  Thank you.  Pass the microphone please.

19          Yes, sir.  What is your name?

20          PROSPECTIVE JUROR:  Carl Leibe.

21          THE COURT:  And Mr. Leibe, what is your occupation?

22          PROSPECTIVE JUROR:  I'm in the construction industry.

23          THE COURT:  What do you do in the construction

24  industry?

25          PROSPECTIVE JUROR:  I'm a crew foreman.

119

```
1              THE COURT:  How long have you been doing that?

2              PROSPECTIVE JUROR:  30 years.

3              THE COURT:  And what part of the community do you live

4       in?

5              PROSPECTIVE JUROR:  Port St. Lucie.

6              THE COURT:  How long have you lived in the area?

7              PROSPECTIVE JUROR:  11 years.

8              THE COURT:  And what is your marital status?

9              PROSPECTIVE JUROR:  Married.

10             THE COURT:  Your wife work outside the home?

11             PROSPECTIVE JUROR:  Yes, she does.

12             THE COURT:  What does she do?

13             PROSPECTIVE JUROR:  She's assistant store manager for

14      Blockbuster video.

15             THE COURT:  Do you have children?

16             PROSPECTIVE JUROR:  Yes, three.

17             THE COURT:  How old?

18             PROSPECTIVE JUROR:  23, 21 and 17.

19             THE COURT:  Are any of them working?

20             PROSPECTIVE JUROR:  One works.

21             THE COURT:  Which one?

22             PROSPECTIVE JUROR:  The 21 year old.

23             THE COURT:  What does he or she do?

24             PROSPECTIVE JUROR:  He's in retail.

25             THE COURT:  Okay.  And how about have you ever served
```

1    in the military?

2           PROSPECTIVE JUROR:  Yes, I have.

3           THE COURT:  What branch?

4           PROSPECTIVE JUROR:  The Navy.

5           THE COURT:  Have you ever -- let me ask you, were you

6    in the shore patrol at any point?

7           PROSPECTIVE JUROR:  No.

8           THE COURT:  Did you ever have any disciplinary action

9    taken against you?

10          PROSPECTIVE JUROR:  Yes, I did.

11          THE COURT:  What was the nature of it?

12          PROSPECTIVE JUROR:  Captain's mast.

13          THE COURT:  Okay.  Have you ever been involved in a

14    civil lawsuit as a plaintiff, defendant or witness?

15          PROSPECTIVE JUROR:  No, I have not.

16          THE COURT:  And any members of your immediate family

17    been involved in civil litigation?

18          PROSPECTIVE JUROR:  No.

19          THE COURT:  Do you have any physical, emotional or

20    language problems that would make it difficult for you to

21    participate as a juror?

22          PROSPECTIVE JUROR:  No, sir.

23          THE COURT:  Have you ever served on a jury before?

24          PROSPECTIVE JUROR:  No.

25          THE COURT:  Can you think of any reason why you could

1    not sit on this jury and render a fair verdict based on the

2    evidence and the law as I will instruct you?

3              PROSPECTIVE JUROR:  No, sir.

4              THE COURT:  Thank you, sir.  Pass the microphone back

5    to Randy.

6              This side.  Brenda Pardo.  There you go.  Hi there.

7    What's your name?

8              PROSPECTIVE JUROR:  Brenda Pardo.

9              THE COURT:  And tell me what do you do for a living,

10   Ms.  Pardo?

11             PROSPECTIVE JUROR:  I'm a senior ASC at Memorial

12   Medical Center.

13             THE COURT:  I don't know what that means.  Tell me what

14   that means.

15             PROSPECTIVE JUROR:  Active senior coordinator.

16             THE COURT:  What does that -- do what do you do?

17             PROSPECTIVE JUROR:  I admit patients from the emergency

18   room.

19             THE COURT:  Okay.  How long have you been doing that?

20             PROSPECTIVE JUROR:  Six years.

21             THE COURT:  And what part of the community do you live

22   in?

23             PROSPECTIVE JUROR:  Port St. Lucie.

24             THE COURT:  How long have you lived in the area?

25             PROSPECTIVE JUROR:  Six years.

```
 1                    THE COURT:  And what is your marital status?

 2                    PROSPECTIVE JUROR:  Married.

 3                    THE COURT:  Does your husband work?

 4                    PROSPECTIVE JUROR:  Yes.

 5                    THE COURT:  What does he do?

 6                    PROSPECTIVE JUROR:  Hockey referee.

 7                    THE COURT:  What?

 8                    PROSPECTIVE JUROR:  Hockey referee.

 9                    THE COURT:  Oh, a hockey referee.  I thought that's

10       what you said.  And what part -- I'm sorry, what about kids?

11                    PROSPECTIVE JUROR:  No kids.

12                    THE COURT:  And have you ever served in the military?

13                    PROSPECTIVE JUROR:  No.

14                    THE COURT:  And have you ever been involved in a civil

15       lawsuit as a plaintiff, defendant or witness?

16                    PROSPECTIVE JUROR:  Auto.

17                    THE COURT:  Auto case, you were a Plaintiff?

18                    PROSPECTIVE JUROR:  Yeah I was a pedestrian.

19                    THE COURT:  You were a pedestrian, somebody ran in to

20       you?

21                    PROSPECTIVE JUROR:  Yes.

22                    THE COURT:  That's awfully rude.  Tell me other than

23       that, any other lawsuits?

24                    PROSPECTIVE JUROR:  No.

25                    THE COURT:  How about any members of your immediate
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1  family ever been involved in lawsuits?

2            PROSPECTIVE JUROR:  Not that I'm aware of.

3            THE COURT:  Do you have any physical, emotional or

4  language problems that would make it difficult for you to

5  participate as a juror?

6            PROSPECTIVE JUROR:  No.

7            THE COURT:  Have you ever served on a jury before?

8            PROSPECTIVE JUROR:  No.

9            THE COURT:  Can you think of any reason why you could

10 not sit on this jury and render a fair verdict based on the

11 evidence and the law as I will instruct you?

12           PROSPECTIVE JUROR:  No, sir.

13           THE COURT:  Thank you.  Pass the microphone please.

14           Hi there.  What's your name?

15           PROSPECTIVE JUROR:  Jean Marie Bishop.

16           THE COURT:  Ms.  Bishop, what is your occupation?

17           PROSPECTIVE JUROR:  I'm the payroll coordinator for

18 Indian River County clerk of court.

19           THE COURT:  How long have you been doing that?

20           PROSPECTIVE JUROR:  17 years.

21           THE COURT:  What part of the community do you live in?

22           PROSPECTIVE JUROR:  Indian River.

23           THE COURT:  And how long have you lived in the area?

24           PROSPECTIVE JUROR:  60 years.

25           THE COURT:  What is your marital status?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1                    PROSPECTIVE JUROR:  Married.

 2               THE COURT:  Does your husband work?

 3               PROSPECTIVE JUROR:  Yes.

 4               THE COURT:  What does he do?

 5               PROSPECTIVE JUROR:  He's an engineer,

 6      telecommunications.

 7               THE COURT:  And what about children?

 8               PROSPECTIVE JUROR:  Three daughters.

 9               THE COURT:  How old?

10               PROSPECTIVE JUROR:  43, 39 and 35.

11               THE COURT:  What do they do for a living, if anything?

12               PROSPECTIVE JUROR:  The oldest one is title abstract

13      insurance, she owns her own company.  Medical coder is the

14      middle one and a homemaker for the young one.

15               THE COURT:  All right.  Have you ever been in the

16      military?

17               PROSPECTIVE JUROR:  No.

18               THE COURT:  Have you ever been involved in a civil

19      lawsuit as a plaintiff, defendant or witness?

20               PROSPECTIVE JUROR:  No.

21               THE COURT:  Have any members of your immediate family

22      been involved in civil litigation?

23               PROSPECTIVE JUROR:  Not that I'm aware of.

24               THE COURT:  You have any physical, emotional or

25      language problems that would make it difficult for you to
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1     participate as a juror?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  Have you ever served on a jury before?

4              PROSPECTIVE JUROR:  Yes.

5              THE COURT:  How many times?

6              PROSPECTIVE JUROR:  One with your --

7              THE COURT:  By my definition, one.  Was it federal or

8     state?

9              PROSPECTIVE JUROR:  State.

10             THE COURT:  Was it criminal or civil?

11             PROSPECTIVE JUROR:  Criminal.

12             THE COURT:  Was the jury able to reach a verdict?

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Were you the foreperson?

15             PROSPECTIVE JUROR:  No.

16             THE COURT:  Okay.  Can you think of any reason why you

17    could not sit on this jury and render a fair verdict based on

18    the evidence and the law as I will instruct you?

19             PROSPECTIVE JUROR:  No.

20             THE COURT:  All right.  Thank you very much.  Pass the

21    microphone.

22             Yes, ma'am.  Please tell us your name.

23             PROSPECTIVE JUROR:  Annita Ferrante.

24             THE COURT:  Ms. Ferrante, what is your occupation?

25             PROSPECTIVE JUROR:  Housewife.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1       THE COURT:  What part of the community do you live in?

2       PROSPECTIVE JUROR:  Fort Pierce.

3       THE COURT:  How long have you lived in the area?

4       PROSPECTIVE JUROR:  27 years.

5       THE COURT:  And what is your marital status?

6       PROSPECTIVE JUROR:  Married.

7       THE COURT:  Does your husband work?

8       PROSPECTIVE JUROR:  Yes.

9       THE COURT:  What does he do?

10      PROSPECTIVE JUROR:  He works for Advantage Sales and

11   Marketing.

12      THE COURT:  How about children?

13      PROSPECTIVE JUROR:  two.  I have a daughter that's 17

14   and a son that's 15.

15      THE COURT:  They're both still in school?

16      PROSPECTIVE JUROR:  Yes.

17      THE COURT:  Have you ever served in the military?

18      PROSPECTIVE JUROR:  No, sir.

19      THE COURT:  Have you ever been involved in a civil

20   lawsuit as a plaintiff, defendant or witness?

21      PROSPECTIVE JUROR:  Two, civil as plaintiff, car

22   accidents.

23      THE COURT:  Two car accidents that you sued.  How long

24   ago were they?

25      PROSPECTIVE JUROR:  One was 2002 and one was 2009.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1                    THE COURT:  And have any members of your immediate

2      family been involved in civil litigation?

3                    PROSPECTIVE JUROR:  Not that I'm aware of.

4                    THE COURT:  Do you have any physical, emotional or

5      language problems that would make it difficult for you to

6      participate as a juror?

7                    PROSPECTIVE JUROR:  No, sir.

8                    THE COURT:  Can you think of any reason why you could

9      not sit on this jury and render a fair verdict based on the

10     evidence and the law as I will instruct you?

11                   PROSPECTIVE JUROR:  No, sir.

12                   THE COURT:  Thank you.  Pass the microphone please.

13                   Yes, sir.  Please tell us your name.

14                   PROSPECTIVE JUROR:  Donald Green.

15                   THE COURT:  Mr. Green, what is your occupation?

16                   PROSPECTIVE JUROR:  I'm a semiretired from the

17     electrical industry and do mostly volunteer electrical for

18     Habitat for Humanity.

19                   THE COURT:  How long have you been doing that?

20                   PROSPECTIVE JUROR:  30 years.

21                   THE COURT:  How long have you been retired?

22                   PROSPECTIVE JUROR:  At the birth of our first son we

23     decided I would be the stay at home father, parent rather, and

24     -- economic reasons.

25                   THE COURT:  All right.  And what does your wife make a

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    lot of money doing?

2           PROSPECTIVE JUROR:  Unfortunately she doesn't make a

3    lot but she's a local government attorney for Martin County.

4           THE COURT:  Okay.  What about how many children?

5           PROSPECTIVE JUROR:  I'm sorry.

6           THE COURT:  How many children?

7           PROSPECTIVE JUROR:  Three boys.  20, 17 and 13.

8           THE COURT:  And do they have any occupation?

9           PROSPECTIVE JUROR:  No.  One is graduating from UF this

10   fall, one is going to UF this fall and one may make it through

11   high school.

12          THE COURT:  Yeah, I know the routine.  Have you ever

13   served in the military?

14          PROSPECTIVE JUROR:  I did, sir.  Two years United

15   States Army, 101st Airborne Division.

16          THE COURT:  Let me ask you, were you in the military

17   police at all?

18          PROSPECTIVE JUROR:  I'm sorry?

19          THE COURT:  Were you in the military police when you

20   were in the service?

21          PROSPECTIVE JUROR:  I was not.

22          THE COURT:  Were you the subject of any disciplinary

23   action?

24          PROSPECTIVE JUROR:  Article 15.

25          THE COURT:  And have you ever been involved in a civil

1    lawsuit as a plaintiff, defendant or witness?

2         PROSPECTIVE JUROR:  I was a defendant in two.  My dog

3    bit my friend and I pulled out in front of a girl.

4         THE COURT:  Your dog bit your ex-friend?

5         PROSPECTIVE JUROR:  He's still a friend.

6         THE COURT:  Okay.  How about anybody in your family

7    been involved in litigation?

8         PROSPECTIVE JUROR:  No.

9         THE COURT:  You have any physical, emotional or

10   language problems that would make it difficult for you to

11   participate as a juror?

12        PROSPECTIVE JUROR:  None.

13        THE COURT:  Can you think of any reason why have you

14   ever served on a jury before?

15        PROSPECTIVE JUROR:  I have, sir.

16        THE COURT:  How many times?

17        PROSPECTIVE JUROR:  One time state, criminal, locally

18   here.

19        THE COURT:  Were you the foreperson?

20        PROSPECTIVE JUROR:  I was.

21        THE COURT:  Was the jury able to reach a verdict?

22        PROSPECTIVE JUROR:  We were.

23        THE COURT:  And can you think of any reason why you

24   could not sit on this jury and render a fair verdict based on

25   the evidence and the law as I will instruct you?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1              PROSPECTIVE JUROR:  I cannot, sir.

 2              THE COURT:  Thank you sir.  Pass the microphone please.

 3              Yes, ma'am.  Tell us your name.

 4              PROSPECTIVE JUROR:  Telisha Richmond.

 5              THE COURT:  What is your occupation?

 6              PROSPECTIVE JUROR:  I'm unemployed.

 7              THE COURT:  What are you unemployed from?

 8              PROSPECTIVE JUROR:  I was a dog groomer.

 9              THE COURT:  A what?

10              PROSPECTIVE JUROR:  A dog groomer.

11              THE COURT:  And what how long did you do that?

12              PROSPECTIVE JUROR:  I did it for 12 years.

13              THE COURT:  And how long have you been unemployed?

14              PROSPECTIVE JUROR:  Two and a half years for medical

15      condition.

16              THE COURT:  And what part of the community do you live

17      in?

18              PROSPECTIVE JUROR:  Fort Pierce.

19              THE COURT:  How long have you lived in the area?

20              PROSPECTIVE JUROR:  48 years.

21              THE COURT:  What is your marital status?

22              PROSPECTIVE JUROR:  Single.

23              THE COURT:  Any children?

24              PROSPECTIVE JUROR:  No.

25              THE COURT:  Have you ever served in the military?
```

1          PROSPECTIVE JUROR:  No.

2          THE COURT:  Have you ever been involved in a civil

3     lawsuit as a plaintiff, defendant or witness?

4          PROSPECTIVE JUROR:  No, sir.

5          THE COURT:  And do you have any physical, emotional or

6     language problems that would make it difficult for you to

7     participate as a juror?

8          PROSPECTIVE JUROR:  I'm recently on medication for

9     anxiety and a walking condition.

10         THE COURT:  A what?

11         PROSPECTIVE JUROR:  Walking condition, gout.

12         THE COURT:  I promise you there's no heavy lifting and

13     no long walks involved in this.

14         And have you ever served on a jury before?

15         PROSPECTIVE JUROR:  No, sir.

16         THE COURT:  Did I ask you about litigation?  Civil

17     litigation?

18         PROSPECTIVE JUROR:  Yes, sir.

19         THE COURT:  Okay.  Can you think of any reason why you

20     could not sit on this jury and render a fair verdict based on

21     the evidence and the law?

22         PROSPECTIVE JUROR:  No, sir, I cannot.

23         THE COURT:  Thank you, ma'am.  Pass the microphone

24     please.

25         Yes, ma'am.  Tell us your name?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
1              PROSPECTIVE JUROR:  Elaine Schultz.

2              THE COURT:  Ms.  Schultz, what do you do for a living?

3              PROSPECTIVE JUROR:  I'm a registered nurse.

4              THE COURT:  How long have you been a registered nurse?

5              PROSPECTIVE JUROR:  30 years.

6              THE COURT:  What part of the community do you live in?

7              PROSPECTIVE JUROR:  Port St. Lucie.

8              THE COURT:  How long have you lived in the area?

9              PROSPECTIVE JUROR:  Six years.

10             THE COURT:  Where did you live before then?

11             PROSPECTIVE JUROR:  Silver Springs, Maryland.

12             THE COURT:  What is your marital status?

13             PROSPECTIVE JUROR:  I'm married.

14             THE COURT:  Does your husband work?

15             PROSPECTIVE JUROR:  He's retired.

16             THE COURT:  Retired what?

17             PROSPECTIVE JUROR:  He was outside sales.

18             THE COURT:  And what about children?

19             PROSPECTIVE JUROR:  Three children, three stepchildren.

20             THE COURT:  All right.  Tell us about all of them.

21             PROSPECTIVE JUROR:  Don't ask me, okay?

22             THE COURT:  Tell me what they all do.

23             PROSPECTIVE JUROR:  The oldest one is 50 and he's an

24   engineer for King County in out in Seattle, Washington.  Then

25   the next one down my husband's son, is I don't know, 48,
```

133

```
 1                    THE COURT:  Ballpark is good enough.
 2                    PROSPECTIVE JUROR:  That's right.  The --
 3                    THE COURT:  What does he do?
 4                    PROSPECTIVE JUROR:  He's a prison guard in
 5     Pennsylvania.  And then the daughter is a nursing assistant at a
 6     nursing home in Pennsylvania.
 7                    THE COURT:  That's three.
 8                    PROSPECTIVE JUROR:  Then all right.  And my son is 45,
 9     he is an executive vice president of IT for Constellation
10     Energy Group in Baltimore, Maryland and my middle daughter is a
11     director for a company that runs housing programs for children
12     who are not able to mainstream into schools.
13                    THE COURT:  Okay.
14                    PROSPECTIVE JUROR:  And then the youngest one is a
15     legal counsel for Dade County school districts.
16                    THE COURT:  Okay.  That's good.  You did good.
17                    All right.  Have you ever served in the military?
18                    PROSPECTIVE JUROR:  No.
19                    THE COURT:  Have you ever been involved in a civil
20     lawsuit as a plaintiff, defendant or witness?
21                    PROSPECTIVE JUROR:  No.
22                    THE COURT:  And have you ever served in the military --
23     I'm sorry.  I already asked you.
24                    PROSPECTIVE JUROR:  Now you're really mixing me up.
25                    THE COURT:  I lost my place.  I'm sorry.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1           PROSPECTIVE JUROR:  That's a bad sign if you're losing

2      your place.

3           THE COURT:  I've only done it --

4           PROSPECTIVE JUROR:  I'm the last one.

5           THE COURT:  I know I've only done it 50 times.  After

6      you do it a while, it gets a little bit difficult to keep track.

7           Have you ever served on a jury before?

8           PROSPECTIVE JUROR:  No.

9           THE COURT:  Can you think of -- do you have any

10     physical, emotional or language problems?

11          PROSPECTIVE JUROR:  No.

12          THE COURT:  Can you think of any reason why you could

13     not sit on this jury and render a fair verdict based on the

14     evidence and the law as I instruct you?

15          PROSPECTIVE JUROR:  No.

16          THE COURT:  Thank you, ma'am.  Pass the microphone back

17     to Randi.

18          Now what I'd like to do at this point is I would like

19     to talk to those persons that have had some exposure to this

20     case individually, which means I'll have to ask the rest of you

21     if you'll go back to the jury assembly room and we will start

22     with one of them -- and you took notes on who they were, right?

23     Let me make sure that we are clear.  As far as I am concerned I

24     think that the people that told us that they knew a little bit

25     about this was Mr. Crompton number two, Ms.  Kravitz number 11,

1    Mr. Hatch number 20, and Ms. Bensley. And also Heidi Lemberg.

2    Is that correct?  Is there anyone else that has had exposure to

3    this case in any way prior to today?  Because we'll call you

4    back in individually.

5         All right.  In the meanwhile I would ask all of you to

6    please go to the jury room and remember where you are because

7    when we call you back, we would like you to go back into the

8    same places.

9         All right?  Thank you.  All of you must go.

10        (Panel out at 12:15 p.m.).

11        THE COURT:  Be seated please.  Before we call the

12   people back in that had the publicity, I'd like to discuss a few

13   of the people with you to see if we have any problems because it

14   would seem to me that juror number eight, Mr. Ammerman, who

15   needs to be in Salt Lake City next week, I don't see how he

16   could concentrate on this.  We have a lot of jurors.  Is there

17   any objection to excusing him?

18        MR. HESS:  None.

19        MR. CEDERBERG:  None, Your Honor.

20        THE COURT:  Okay.  Then I'm going to excuse number

21   eight, Mr. Ammerman.

22        Number ten, Ms. Kesselring.  Long distance truck

23   driver.  She makes money when she's on the road.  She does not

24   make money sitting in a jury room.  I would like to excuse her.

25   Is there any objection?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1      MR. HESS:  None.

2      MR. CEDERBERG:  No, Your Honor.

3      THE COURT:  So we'll excuse Ms.  Kesselring.

4      Number 20, Mr. Hatch.  I have a lot of problems keeping

5  him here with his wife just having had some sort of a problem,

6  health problem.  Does anyone disagree with that?

7      MR. HESS:  No, Judge.

8      MR. CEDERBERG:  No, Your Honor.

9      THE COURT:  Number 22, I don't remember why my comments

10  or my notes are money and illness.  I don't remember what that

11  means though.

12      MR. HESS:  That was the bladder she needs to --

13      THE COURT:  Is there any objection to excusing her?  I

14  don't think we want to break every 20 minutes.

15      MR. CEDERBERG:  None, Your Honor.

16      THE COURT:  All right.

17      Ms.  Hinefelt, number 36, she has a child that she

18  tutors every afternoon.  I'm having a problem figuring out how

19  we can keep her.  Does anyone have any objection to excusing

20  her?

21      MR. HESS:  No objection, Judge.

22      MR. CEDERBERG:  None.

23      THE COURT:  All right.  Mr. Meehan has this monstrous

24  thing attached to his ear so that he can maybe hear.  I don't

25  think he can hear.  Is there any objection to excusing him?

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          MR. HESS:  No, Judge.

2          MR. CEDERBERG:  No, Your Honor.

3          THE COURT:  All right.  We will excuse Mr. Meehan if we

4     can actually get him to listen to us long enough to excuse him.

5          Is there anyone else that we can deal with on that

6     basis so we don't have to go much further?  Because we have

7     plenty of jurors, I deliberately brought in extras.

8          MR. HESS:  Ms. Bensley, Judge.

9          THE COURT:  Which one is she?

10          MR. HESS:  She is number 34.

11          MR. CEDERBERG:  She's the former client.

12          THE COURT:  Oh.  Yeah.  Any problem with excusing her?

13          MR. HESS:  No, Judge.

14          MR. CEDERBERG:  No.

15          COURTROOM DEPUTY:  What number?

16          THE COURT:  Number 34, Ms. Bensley.  Anybody else?

17     Okay.  Then do we agree that the people that said that they had

18     some prior knowledge of this are the people whose names I read

19     off, did you catch anyone that I didn't?  I just want to make

20     sure.  And then what I propose to do is call them individually

21     back in to hear what they would have to say, put them on the

22     witness stand because it's easier and just ask them tell me what

23     you read and then is there anything about that.  Then I propose

24     to give each of you 10 minutes to question.  And then what I

25     will do is send them all out and then we can start our

1    selection.

2           I will take first challenges for cause by the Plaintiff

3    then by the defendant on the entire panel, then once we have

4    finish with those, I will put, we decide we should start with

5    eight?  Or do we want to start with more?  All right.  Let's

6    seat ten.  We can make a jury as big or small as we want as long

7    as we're within in statutory limits and the physical

8    capabilities of the courtroom.  So I say we seat ten and then

9    we'll just start going back and forth until you've used up your

10   challenges and we'll see what's left.

11          Then what we'll do is we'll break for lunch, come back,

12   have opening statements and put your first witness on.  Anything

13   else we need to talk about before we start bringing the

14   individuals back in?  All right.  Remember, 10 minutes, it's not

15   a suggestion, it's a limit.  Anything else?

16          MR. CEDERBERG:  No, Your Honor, except we would like to

17   address the Court before opening statements.

18          THE COURT:  Okay.  We can do that.  We got time.

19          MR. CEDERBERG:  By my calculation, we only have three

20   witnesses we need to examine on the stand though with Mr. Hatch

21   and the former client gone; is that correct?

22          THE COURT:  Okay.  Who is that?  Well, you got -- so we

23   have Mr. Crompton is the first one, please ask you bring

24   Mr. Crompton in?  I may permit you to ask a question or to

25   follow-up after I've asked him so bear that in mind and write

1   down what you're going to ask him if you feel like you want to.

2   Over here, sir.  Mr. Crompton, you told -- I'm sorry,

3   this awkward machine I'm not tall enough to look over it very

4   well.

5   You told us that you had read something about this in

6   the paper.  I believe you said last Friday, although it's my

7   understanding it's been in the paper a couple of times.  Can you

8   tell us what you saw in the paper?

9   PROSPECTIVE JUROR:  I just skimmed over an article, I

10  was over to dinner with my father and he had mentioned reading

11  the article and showed it to me because of my background you

12  know, involved submersibles.

13  THE COURT:  All right.  Have you been -- you do

14  understand that I don't know if you've been in the papers a lot,

15  but a lot of times, what's in the paper isn't necessarily

16  everything about it.  You understand how that works sometimes?

17  PROSPECTIVE JUROR:  Yes.  I understand that, and the

18  most I got out of it that Dubai was involved and parties

19  involved but it's just over contracts on some submersible

20  submarines.

21  THE COURT:  The government of Dubai, I do not believe,

22  is a party to this case.  What I'm saying to you is you might

23  have gotten that impression, but I'm telling you they're not a

24  party to this case.  You understand that.  All right.

25  Is there anything about what you read that would make

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

140

 1    it difficult for you to be fair and impartial in this case?

 2              PROSPECTIVE JUROR:  I don't think so.

 3              THE COURT:  Okay.  Gentlemen, Plaintiff first?

 4              MR. CEDERBERG:  Just briefly, Your Honor.

 5              THE COURT:  Very briefly.

 6              MR. CEDERBERG:  When you said your background in

 7    submersibles, that's why your father brought it to your

 8    attention?

 9              PROSPECTIVE JUROR:  Yes.  I've been -- well I am a BS

10    in oceanography, aquaculture background, zoology, worked in

11    marine biology all my life.  Scuba diver, I've never had any

12    experience with submersibles, but hard helmet, super light,

13    certified commercial diver, anything that involves the ocean I'm

14    pretty well piques my interest.

15              MR. CEDERBERG:  That's the reason your father brought

16    it to your attention?

17              PROSPECTIVE JUROR:  Yeah.

18              MR. CEDERBERG:  Okay.  There probably will be evidence

19    about submersibles in this case.  Can you keep an open mind?

20    There will be evidence of how they performed and things like

21    that?

22              PROSPECTIVE JUROR:  Yeah, I believe so.  I haven't

23    heard any evidence yet.  I mean, I can keep an open mind.  Yes.

24              MR. CEDERBERG:  Thank you.

25              MR. HESS:  Nothing, Judge.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

 1          THE COURT:  All right.  Thank you, Mr. Crompton.  I

 2    appreciate your coming appreciate your coming in.  Could you

 3    please bring in --

 4          THE CLERK:  The next person is Ms.  Kravitz.

 5          THE COURT:  All right, ma'am.

 6          Ms. Kravitz, you told us that you had been exposed to

 7    something in the paper.  Tell us what you saw and when you saw

 8    it.

 9          PROSPECTIVE JUROR:  I believe it was Thursday or Friday

10    and I think it was on the front page, probably right on the

11    bottom.

12          THE COURT:  And you saw one article?

13          PROSPECTIVE JUROR:  One article.

14          THE COURT:  That's the first time that you've seen

15    anything about this case?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  And what do you remember it saying?

18          PROSPECTIVE JUROR:  I only remembered the heading, it

19    said something about a former spy about owing money to the Dubai

20    firm, and I looked down and I noticed it said something about

21    Monday, Fort Pierce and I knew I had to go there so I kind of

22    just briefly looked at it.

23          THE COURT:  Okay.  You understand that the people that

24    write the headlines aren't even the people that write the story

25    most of the time, and that I don't know what it said because I

1    haven't seen it.  But that you can't go by what you see in the

2    paper --

3              PROSPECTIVE JUROR:  I know.

4              THE COURT:  You have to go by what's proven or not

5    proven in court.  Is there anything about what you read that

6    would make it difficult or impossible for you to be fair and

7    impartial in this case?

8              PROSPECTIVE JUROR:  To be honest, I don't recall a lot

9    of the article.

10             THE COURT:  All right.

11             PROSPECTIVE JUROR:  Briefly, I read it very briefly.

12             THE COURT:  The question is whatever it says -- is

13   there anything about what was said that would make it difficult

14   for you to be fair and impartial in this case?

15             PROSPECTIVE JUROR:  No, because a lot of what I read in

16   the paper I don't necessarily --

17             THE COURT:  And you understand that you're going to be

18   bound by what comes from the witness stand where you are and

19   what is introduced in documents and papers and whatever is

20   stipulated to between the parties, and not what you may see in

21   the papers or hear outside this courtroom.  You understand that?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  And you think you're able to do that?

24             PROSPECTIVE JUROR:  Yes.

25             THE COURT:  Separate and only decide the case based on

1    what you see in the courtroom?

2            PROSPECTIVE JUROR:  Yes.

3            THE COURT:  Okay.  Any questions?  Counsel?

4            MR. CEDERBERG:  Just so I'm clear, you started reading

5    the paper, then realized you could be a potential juror and

6    stopped reading?

7            PROSPECTIVE JUROR:  Well, I saw the Monday and the Fort

8    Pierce and I knew that was my date into the two week period.  So

9    I kind of skimmed the article because I didn't want to know too

10   much, I had a feeling that it could be the one that I was going

11   to be on the jury.

12           MR. CEDERBERG:  Great.  Thank you very much.

13           MR. HESS:  Nothing, Judge.

14           THE COURT:  All right.  Well, thank you very much,

15   ma'am.

16           Can we get who is next?  Lemberg.  She's the one

17   wearing wooden shoes.  Shouldn't have any trouble finding her at

18   all.

19           Come on up please.  Up here to the witness stand.

20           Ms.  Lemberg, you said you saw something in the paper

21   at some point about this case.  Or what might have been this

22   case.  Tell me what you saw and when.

23           PROSPECTIVE JUROR:  Well, I didn't know if I should

24   mention it all, but it wasn't in the paper.

25           THE COURT:  Oh, that's right.  Okay.  Tell me about it.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1              PROSPECTIVE JUROR:  Maybe like it could have been
 2    yesterday or the day before, I said oh, I have to go to jury
 3    duty on Monday.  I was talking to my dad and my dad said oh,
 4    there's a big trial just about to start and that's probably what
 5    it's all about.  Something about Dubai and submarines is
 6    basically all I retained.
 7              THE COURT:  You do understand that you're kind of
 8    supposed to decide the case based only on what happens in the
 9    courtroom.  You understand that?
10              PROSPECTIVE JUROR:  Uh-huh.
11              THE COURT:  And that anything you might have seen or
12    heard outside the courtroom you have to ignore and base your
13    decision only on what happens in the courtroom.  Do you think
14    you can do that?
15              PROSPECTIVE JUROR:  Yeah.  Because honestly, it was
16    just kind of like, you know, it didn't really pique my interest
17    when he was saying it.  I was probably doing 12 other things too
18    so yeah, I understand.
19              THE COURT:  All right.  You don't remember any details
20    about what was said?
21              PROSPECTIVE JUROR:  Dubai and submarines is basically
22    all I retained.
23              THE COURT:  I'm telling you that the government of
24    Dubai has nothing to do with this case.  You understand that?
25              PROSPECTIVE JUROR:  Oh, sure.
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
 1            THE COURT:  I'll tell you now the parties to the case
 2    are corporations and individuals, not any government agency.
 3            PROSPECTIVE JUROR:  I retained that much that it was
 4    probably civil in nature and you know...
 5            THE COURT:  Okay.
 6            PROSPECTIVE JUROR:  Not involving a country.
 7            THE COURT:  Let me see if any of the lawyers want to
 8    ask you any questions.
 9            MR. CEDERBERG:  None, Your Honor.
10            MR. HESS:  Nothing, Judge.
11            THE COURT:  All right.  Thank you very much.
12            PROSPECTIVE JUROR:  Thank you.
13            THE COURT:  Is that the last one we need to talk to?
14    Okay.
15            Then when she's out, what I propose to do is to bring
16    them all back in, give you ten minute a piece, when we are
17    finished, I will then ask them again if there is anything that
18    they can think of as a reason why they could not sit on this
19    jury and render a fair and impartial verdict based on the
20    evidence that is presented and the law as I instruct them, just
21    to see if something has come up during any of your examinations
22    that would do that.
23            All right?  Is there anything else that you suggest
24    that I do?  Remember, your time is limited so be careful on how
25    much time you spend following up on any one particular thing or
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    you might leave something else that you think is important out.

2          All right.  Please bring them back.

3          MR. HESS:  There is one other point.  I'm requesting

4    that the court equalize the challenges in this case.  I don't

5    know if they're seeking three peremptories for each party.

6          THE COURT:  I don't care what they're seeking, they're

7    getting three per side.  That's what I told everybody.

8          MR. HESS:  I wasn't sure.

9          THE COURT:  They can seek all they want.  They have a

10   tough time finding them.

11         Oh yeah, I didn't tell you to put those away.  I wasn't

12   paying attention.

13         Did they run away already?

14         COURTROOM DEPUTY:  No, I just have a question for you

15   --

16         THE COURT:  Is it all right if we just excuse the ones

17   that we've agreed to excuse rather than have them come back in?

18   So they'll not be in the mix, but up here we'll leave an empty

19   seat, okay?  Yes.  Excuse them and then bring them in.  Because

20   I don't want any of them to starve to death while we're waiting

21   for lunch.  Although anorexia has been ruled out, I do like to

22   eat regularly.

23         (Panel in at 12:35 PM)

24         THE COURT:  You all can be seated.  We're standing for

25   you.  You can't be seated, they can be seated.  All right.  Be

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1    seated, please.  All right.

2            Plaintiff?  You may proceed.  You have 10 minutes.

3            MR. CEDERBERG:  Thank you, Your Honor.

4            THE COURT:  At which time you turn into a pumpkin.

5            MR. CEDERBERG:  I think I'm halfway there.  I had a

6    specific question of juror number 13, Mr. Patti.  Thank you.

7    You said you were in the Italian military?

8            PROSPECTIVE JUROR:  Yeah.

9            THE COURT:  What branch of the military were you in?

10            PROSPECTIVE JUROR:  In the Army.

11            MR. CEDERBERG:  Okay.  I want to just check.  Any

12    familiarity with boats?

13            PROSPECTIVE JUROR:  No.

14            MR. CEDERBERG:  Do any of you -- are you boat owners or

15    -- wow.

16            THE COURT:  We're in a boating community.

17            MR. CEDERBERG:  I understand that.  Mr. Crompton, boat

18    owner?

19            PROSPECTIVE JUROR:  I'm not an owner, but I'm an

20    operator and that's what I do for my job is operate boats.

21            MR. CEDERBERG:  Okay.  Who else I saw some hands.  Sir?

22    Mr. Mowatt.

23            PROSPECTIVE JUROR:  I guess it's technically not a

24    boat, but I've got a jet ski.

25            MR. CEDERBERG:  Okay.  And --

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

```
1              PROSPECTIVE JUROR:  My husband and I just have a little
2    fiberglass deck boat.
3              MR. CEDERBERG:  Have you had it long?
4              PROSPECTIVE JUROR:  Yeah.  Six years.
5              MR. CEDERBERG:  Okay.  Anyone else?
6              PROSPECTIVE JUROR:  I have a private boat at my home
7    but I also was in partially in a dive shop business operated a
8    larger boat, dive boat.
9              MR. CEDERBERG:  Are you a certified diver?
10             PROSPECTIVE JUROR:  Yes.
11             PROSPECTIVE JUROR:  My husband and I own, I don't know
12   what year, a 17 and a half foot center console.
13             MR. CEDERBERG:  Okay.  Anyone else?  There's so many
14   here, I only have 10 minutes.  Any of you serious boaters, are
15   out every day?  Why don't we check in the back, do it that way.
16             PROSPECTIVE JUROR:  I have a sailboat and two power
17   boats.
18             MR. CEDERBERG:  Okay.  That's a serious boater.  What
19   about other people who are certified scuba divers?  Okay.  Let
20   me also ask, I had a specific question for Mr. Santiago, I
21   thought I heard that you were in the pharmaceutical sales for
22   eight months?
23             PROSPECTIVE JUROR:  Yes, eight months.
24             MR. CEDERBERG:  What did you do before that?
25             PROSPECTIVE JUROR:  Bank.  I was in the banking, I did
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    fixed annuities and business accounts.

2            MR. CEDERBERG:  How long?

3            PROSPECTIVE JUROR:  three years.

4            MR. CEDERBERG:  Three years?  Okay.

5            Now a more general question to everybody here.  As you

6    can tell from the list of witnesses in this case, there are a

7    lot of foreign names.  My client is from the UAE, the United

8    Arab Emirates, Mr. Jaubert is originally French.  Is there

9    anything that anybody feels because there are foreign nationals

10   involved that would affect your ability to be fair and treat

11   their testimony the same as somebody who is American born or

12   from South Florida?  I know it's hard to answer that question in

13   front of a group of people, but we all really want to, you know,

14   to make sure this case is decided on what you hear from the jury

15   box and what the documents.

16           Anybody have any feelings negative about that at all

17   that they feel they can't be fair?  Anybody had any particular

18   bad experience for example with someone from the Middle East

19   that would affect their ability to be fair?

20           Anyone traveled to the Middle East?  Yes, sir.

21           PROSPECTIVE JUROR:  I've been to Dubai.

22           MR. CEDERBERG:  Okay.  How many times have you been to

23   Dubai?

24           PROSPECTIVE JUROR:  Once.

25           MR. CEDERBERG:  How long ago was that?

```
1              PROSPECTIVE JUROR:  Five months ago.

2              MR. CEDERBERG:  Was there anything about your

3    experience traveled -- how long were you there, I guess?

4              PROSPECTIVE JUROR:  For four days.

5              MR. CEDERBERG:  Business or pleasure?

6              PROSPECTIVE JUROR:  Pleasure.

7              MR. CEDERBERG:  Anything about that experience that

8    would affect your ability to be fair and impartial?

9              PROSPECTIVE JUROR:  No.

10             MR. CEDERBERG:  Do you think you can keep your personal

11   experiences out of the decision-making in this case and base it

12   upon the witnesses and how they come across and any evidence

13   that you see?

14             PROSPECTIVE JUROR:  Certainly.

15             MR. CEDERBERG:  Anybody have any friends whose had

16   positive or negative experience with people from the Middle East

17   that they can't want to share with us?

18             What about the fact that there's going to be for some

19   of these witnesses religious differences, some people are going

20   to be Muslim.  Any feelings about that one way or the other that

21   would affect your ability to treat them as any other witness?

22   Examine their testimony the same way?  See no hands.

23             All right.  May I just have a moment, Your Honor?

24             THE COURT:  Yes, sir.

25             MR. CEDERBERG:  Mr. Mowatt, did you raise your hand as
```

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    being in the Middle East?

2            PROSPECTIVE JUROR:  Uh-huh.

3            MR. CEDERBERG:  Can you tell us about that experience?

4            PROSPECTIVE JUROR:  Well, I was in the Air Force so I

5    was air crew.  So I was always going to the Middle East to drop

6    off cargo and stay there for like maybe two or three days at the

7    time, then fly to another country and back to the states.

8            MR. CEDERBERG:  What countries?

9            PROSPECTIVE JUROR:  I went to Saudi Arabia, Turkey and

10    Egypt once, that's it.

11            MR. CEDERBERG:  Anything about your experience going

12    over there and dealing with the people over there that would

13    affect your ability to be fair and impartial in this case?

14            PROSPECTIVE JUROR:  Never really had a problem over

15    there.  Just went over there to do my job then flew back home.

16            MR. CEDERBERG:  Appreciate your candor.  Thank you.

17            Nothing else, Your Honor.

18            THE COURT:  All right, sir.  Your turn.

19            MR. HESS:  Thank you, Judge.

20            Likewise, has anyone traveled to and been to France?

21    Okay.  Anyone here that's had a bad experience in France that

22    would somehow impact on your ability to maintain your

23    impartiality today and make a decision?  No?

24            Has anyone, aside from the people obviously that have

25    raised their hands that have traveled to the Middle East and to

1    France, anyone else have a possess a US passport?  Possess a US

2    passport?  Yes, a passport.  Yes.

3         The people that -- well, most of you have been here for

4    a while, how many of you have been here since 2003 in the South

5    Florida Treasure Coast area?  And of the people that raised your

6    hands, how many people did not go through the dual hurricanes

7    that we had back in 2004?  Did not go through.

8         PROSPECTIVE JUROR:  I was in Maine.

9         MR. HESS:  The lucky two.  The lucky one then.  Okay.

10   If I may, Judge, confer?

11        THE COURT:  Yes.

12        MR. HESS:  Nothing further, Judge.

13        THE COURT:  All right.  Ladies and gentlemen, I hate to

14   bring you back in and then send you back out, but we need to

15   send you back out to the jury assembly room and we'll call you

16   back in in just a couple minutes.  Thank you very much.

17        (Jury out at 12:42 p.m.).

18        THE COURT:  Be seated, please.  Start looking because

19   I'm going to give you about a minute to give me your challenges

20   for cause.  On the entire panel.  Challenges for cause on the

21   entire panel.

22        MR. CEDERBERG:  Pass for cause on Dubai World.

23        MR. HESS:  Same with defense, Judge.

24        THE COURT:  All right.  Peremptory challenges on the

25   first ten, which will be through number 12.  If you understand

1   what I'm saying.  In other words, we have excused two people in

2   the first group already, so one through ten will extend through

3   juror number 12 Richard McSweeney.  Mr. Ammerman and Ms.

4   Kesselring having already been excused.  Peremptory challenges

5   on any of those persons?

6          MR. CEDERBERG:  Yes, Your Honor.  On behalf of Dubai

7   World we would request the Court to thank and excuse juror

8   number three Barbara Jean Cooper.

9          THE COURT:  All right.  Plaintiff's first challenge

10  Barbara Jean Cooper.  Anyone else in that group?  I understand

11  you will then be tendering the remaining 11 to the defense and

12  you will not be permitted to challenge them again unless

13  something comes up about them, okay?

14         MR. CEDERBERG:  Just clarification, we don't go

15  challenge, challenge.

16         THE COURT:  No.  You go through the first 12 people,

17  you challenge anybody in there that you want.  When you finish,

18  you tender the remainder of them to them, then they get to

19  challenge, they tender them back.  You cannot later challenge

20  anyone that you've had an opportunity to challenge and have not

21  challenged, okay?

22         MR. CEDERBERG:  May I confer then?

23         THE COURT:  Yes, of course.  That's why I want to make

24  sure we're clear.

25         Yes, sir.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1          MR. CEDERBERG:  We'd ask the Court to thank and excuse

2     juror number 11, Ms.  Kravitz.

3          THE COURT:  All right.  Plaintiff's second challenge

4     will be to Ms.  Kravitz.  You tender the remaining jurors?

5          MR. CEDERBERG:  Up to -- now it would be through Number

6     13?

7          THE COURT:  No, we're still through McSweeney.

8          MR. CEDERBERG:  Yes.

9          THE COURT:  All right.  To the defendant number one,

10    two, four, five, six, seven, nine, 12, and now we will add 13

11    and 14.  To the defendant.  Challenges peremptory challenges.

12         MR. HESS:  Yes, Judge.  Juror four.

13         THE COURT:  All right.  Defense first challenge goes to

14    juror number four.

15         MR. CEDERBERG:  Your Honor, in light of the make-up of

16    the panel, we would do the equivalent of a Batson challenge as

17    to juror number four and ask for a proffer.

18         THE COURT:  All right.  Can you give me a nonracially

19    based reason for excusing juror number four?

20         MR. HESS:  Yes, Judge.  His experiences in the military

21    and travelling in the Mid East.

22         THE COURT:  Okay.

23         MR. CEDERBERG:  Your Honor, I would not think someone

24    who represented our country and traveled in the Middle East, I'm

25    sure not voluntarily would qualify as I think an origin neutral

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1    reason.

2           MR. HESS:  If I may Judge, discussed this in many ways

3    and the experience of a person, I agree, a person serving our

4    country in the military is an honorable function.  But

5    experience of the military in the Middle East is far different

6    than the typical experience, and we believe that it will

7    prejudice this individual and his abilities to maintain his

8    impartiality in the case.

9           THE COURT:  Explain that to me.

10          MR. HESS:  Just they have a different -- while in the

11   military they are treated in a different way and they have

12   access to -- they're treated in a different way.

13          THE COURT:  This guy was going over there as a medical

14   guy, and taking people over there and picking people up and

15   bringing them back.  It's not like he was even stationed there.

16   But I think it is a racially neutral reason, although I may not

17   agree with it, I don't think that the position of Batson is

18   requires me to agree with it, and it doesn't have to be a good

19   reason, but it just has to be a racially nonracial reason and I

20   suspect that probably is good enough.  I'll hear from the other

21   side though.  Let me hear from you.

22          MR. CEDERBERG:  Yes, Your Honor.  I would just point

23   out to the Court that out of 50 potential jurors, juror number

24   four has the only Middle Eastern or possibly Muslim name of the

25   jurors and --

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

1          THE COURT:  I think that's true but I will say that in

2      my years of trying cases in Fort Pierce, he might be the only

3      one that I've had on the panel that had an apparently Islamic or

4      Middle Eastern name.  So I'm not sure that that's -- but I

5      believe that it's a racially neutral reason, therefore I will

6      permit the challenge.

7          MR. CEDERBERG:  I do respect the Court's decision and

8      the names of all the jurors will be part of the record then?

9          THE COURT:  Yes, of course.

10          MR. HESS:  As the Court is aware exercising these

11      challenges there is often a gut feeling.  I would state for the

12      record and for the Court I didn't even notice the person's name

13      when I made the challenge.  Judge, I swear I didn't.

14          THE COURT:  You had to read it to tell me who it was.

15          MR. HESS:  I said juror number four, Judge, and that's

16      how I looked at the juror.

17          THE COURT:  I've accepted it.  Let's not go any further

18      than that.

19          Any others?  Any others in those first ten?

20          MR. HESS:  Juror five.

21          THE COURT:  Juror number five, Doris Heading.  This is

22      defense two.  Any others?

23          MR. HESS:  No, Judge.

24          THE COURT:  Okay.  That means that juror number one is

25      Laurie Pautenis, juror number two is William Crompton, juror

1    number three is William Payne, juror number four is Muriel

2    Ramos, juror number five is Patricia Selmer.  Juror number six

3    is Richard McSweeney.  And to the defense excuse me, to the

4    Plaintiff, we tender now or we offer now Domenico Patti, Henry

5    Doiron, George Altomaro and Charla.

6              MR. CEDERBERG:  May I have a moment, Your Honor?

7              THE COURT:  Yes, sir.  Of course.

8              MR. CEDERBERG:  Yes, Your Honor.  Thank you.  We would

9    thank and excuse -- we'd ask the Court to thank and excuse juror

10   number 15, George Altomaro.

11             THE COURT:  All right.  Plaintiff has used its third

12   and final strike on George Altomaro.  That means that juror

13   number -- well, back to the defense with 16 and 17, I think are

14   the only two that you have available for you.  Means juror

15   number seven is Domenico Patti, juror number eight is Henry

16   Doiron and juror number nine is Charla Minson.  I'm sorry.

17   Lemberg is the only one you have.  I'm sorry, Minson and Lemberg

18   to you.  Minson and Lemberg.  I'll get it right eventually.

19             MR. HESS:  I have available 16 and 17, correct, Judge?

20             THE COURT:  Correct.  No.  I'm sorry.  Hold on a

21   second.  Yes.  That's correct.  16 and 17.  So we only have

22   eight jurors seated.

23             MR. HESS:  Judge, I would exercise on 17.

24             THE COURT:  All right.  Daniel Dimon is therefore juror

25   number ten.  Everyone agree that our jurors are Laurie L.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    Pautenis, William Crompton, William Payne, Muriel Ramos,

2    Patricia Selmer, Richard McSweeney, Domenico Patti, Henry

3    Doiron, Charla Minson and Daniel Dimon.  Okay?

4          I'm going to call them in, I'm going to swear them and

5    send them to lunch.  I will tell them to be back at 2:30.  At

6    2:30, I will give them the remainder of the instructions, permit

7    you your opening statements.  We should talk before then.  And

8    we will talk before they come back into the courtroom and we'll

9    start and we'll go until about maybe 10 minutes of five to give

10   some of them, I don't know for sure but some of them usually are

11   from pretty far places, and they need to get back home and so I

12   want to give them an opportunity.  After today, if they want to

13   they can stay in a local hotel and the government will reimburse

14   them.  But I want them to be able to go back to their homes

15   today and let them get out of hear a little bit before 5.

16         All right?  Want to go get them, Wanda?

17         MR. CEDERBERG:  Your Honor, we have a short brief we

18   would like to tell the Court before.

19         THE COURT:  Sure, I'll take whatever paper you give me.

20   I love to kill trees.

21         MR. CEDERBERG:  Thank you, Your Honor.

22         THE COURT:  I'm in favor of deforestation.

23         (Jury in at 1 p.m.)

24         THE COURT:  All right.  Be seated, please.

25         All right.  Ladies and gentlemen, you've been selected

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

1    as the jury for this case.  What we're going to do now since

2    it's 1:00 and I am afraid that I might blow away in the wind if

3    I don't eat soon, we're going to take a break and we're going to

4    -- usually what we'll do is take an hour and a half for lunch

5    because I have other cases that are going on at the same time

6    and I have to get back into the office and log into Miami and

7    figure out what's going on.  And so, we'll break now until,

8    let's say 2:15.  And then what we'll do, I don't know if any of

9    you are from far enough away that you might be spending the

10   night at a hotel locally, I don't know, but let you leave by

11   quarter of 5 this afternoon so you can get home and make plans

12   for the rest of the week.

13            As far as I know, we will be here for the entire this

14   week and next week.  We're going to break a little bit early

15   Friday.  I have to be back in Miami before 6:00 on Friday

16   afternoon, so I'm going to try to brake at about 2 on Friday.

17   Next week, as far as I know we'll just be going regular, we

18   might be finished.  Monday is a federal holiday so bear that in

19   mind.  And we'll do the best we can to get through this

20   together.

21            When you come back, I will give you your initial

22   instructions and then I will let the parties have -- what do you

23   need, 20 minutes, 30 minutes per side for openings?

24            MR. CEDERBERG:  No, Your Honor.  We talked in

25   conference about an hour and 15.

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**

 1          THE COURT:  An hour and 15?  If I fall off my chair and

 2     hurt myself from you guys boring me to death, I'm going to be

 3     really angry so you better make it interesting.  Okay?  All

 4     right.

 5          What we'll do then is we'll only do the opening

 6     statements.  Then after the opening statements, we'll break for

 7     the day and our first evidence will be tomorrow morning.

 8          So I'll let you go to lunch now.  There's a little

 9     place right across the street, there's one down that way, called

10     -- what is it called?  Pot Belly Deli, which is supposed to be

11     pretty good and decent.  There's several other places within

12     walking distance, so I hope that you all have a nice lunch.

13          If you'll follow the court security officer, he'll show

14     you where the jury room is.  When you come back, go straight

15     into the jury room, use the bathrooms in there.  I think that

16     there's coffee and whatever else.  I don't know what they have

17     here.  I never been in the jury room.  I haven't paid attention.

18     But come back and go in there because there's a limited number

19     of bathrooms out here.  Everybody else has to use them and I'll

20     give you instructions on what you do, but the main thing at this

21     point is don't talk to anybody about this, don't talk about the

22     case even among yourselves.  Because in order to talk, in order

23     to articulate words about it, you have to make up your mind

24     about something.  Don't do that.  Talk about spring training,

25     baseball, talk about the nice weather there is today, talk about

1   how pretty the sky is, about what a lovely place you live, don't

2   talk about the case.  It will be over soon enough and I will do

3   my very best to get this case over soon and maybe we can finish

4   it up in less time than we think.

5         So if you'll follow the court security officer, show

6   you how to get into the jury room and when we come back go

7   straight in there.  We'll start again at 2:15.

8         (Panel out at 1:05 p.m.)

9         THE COURT:  All right.  We'll be in recess until, let's

10   say, 2:00 so that we can talk about whatever we might want to

11   talk about at 2:00.  All right?  Have a good lunch.

12         (Lunch recess)

13         (See Volume 2, page 162 for continuation)

                 * * * * *

14

               C E R T I F I C A T E

15   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

16

17

18

19
    _____         /s/ Dawn M. Whitmarsh
20   Date                DAWN M. WHITMARSH, RPR

21

22

23

24

25

**PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY**
**TRANSCRIPT PRODUCED BY COMPUTER**